**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DR. JOHN ROE, PH.D.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 5:22-CV-00869-JKP-HJB** |
| | ) | |
| **UNITED STATES OF AMERICA, et. al.,** | ) | |
| | ) | |
| **Defendant(s)** | ) | |

_____

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL ACCESS TO THE CLASSIFIED INFORMATION IN PLAINTIFF'S MIND (HEARING REQUESTED)

Plaintiff, Dr. John Roe, Ph.D., in this *Bivens* and Federal Tort Claims Act ("FTCA") case seeks damages and injunctive relief for tortious acts taken by a number of federal government officers and employees by, *inter alia*, constructively debarring him from employment and identity within the Government arising from his work in a classified program, inflicting severe emotional distress, and abusing the process of the Air Force OSI investigation powers to unlawfully target him without cause to induce the debarment. Given that all pertinent and alleged acts occurred within a classified government program, the need to access and properly manage classified facts will be central to this litigation.

### Conference Statement

Undersigned counsel has raised the relief herein to Government counsel who has denied the requests and objects to the relief herein.

### Supplemental Facts

Dr. Roe is a longtime public servant in the Intelligence Community who holds a security clearance at the TS//SCI level. Plaintiff's counsel are two former Marine officers who have long held security clearances at the SECRET or TS // SCI level. Ex. 1, Decl. of Attorney Jason

Wareham, at 1.; Ex. 2, Decl. of Attorney John Hodges, at 1-2. Undersigned counsel's last duty prior to his separation from active duty was defending capital cases in Guantanamo Bay, Cuba carrying special access program levels of classification. Ex. 1, at 1. Early in the litigation, Dr. Roe identified to his counsel that he possessed knowledge of classified facts in his own mind necessary to include in the Complaint (and later respond to the Defendants' Motion to Dismiss). *Id.*, at 2. As early as November 2022, undersigned counsel engaged Defendants' counsel on the need for discussions with Plaintiff that he believed were classified. *Id.*; Att. A to Ex. 1. Learning nothing had been done with that inquiry in February 2023, undersigned counsel submitted a letter applying for access to the necessary classified material. *Id.*; Att. B to Ex. 1.

While that application was pending, Government counsel took the position in the R. 26(f) conference that, since Plaintiff's facts were classified, that accessing those facts was impermissible discovery since they filed their motion to dismiss asserting various immunities from suit. *Id.* Government counsel communicated via email that the request for access to the classified material in Plaintiff's mind was denied by the relevant federal agencies. Att. C, to Ex. 1. Despite a request for a written decision (as required by the Executive Order, *infra.*), Government counsel stated that Plaintiff must take only his representations as counsel for the Government. *Id.* Neither Plaintiff nor counsel were given the basis for this denial nor the ability to appeal it, nor even the knowledge of the identities of the Classification Authorities who denied the request. This Motion to Compel Access to the Classified Information in Plaintiff's Mind follows.

*Framework for Access to Classified Information by Non-DoD Attorneys*

Executive Order 13526 - Classified National Security Information is the foundational document that establishes the guidance surrounding access to classified information. Access is granted provided that: 1) a favorable determination of eligibility for access has been made by an agency head or the agency head's designee; 2) the person has signed an approved nondisclosure agreement, and (3) the person has a need-to-know the information. Most commonly, these requirements are fulfilled within the scope of employment within the Executive Branch, however,

there are express provisions and procedures for the access to and use of classified information in Federal Court. *See Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury,* 686 F.3d 965, 982-83 (9th Cir. 2012)*; See also Stillman v. Department of Defense,* 209 F. Supp. 2d 185 (D.D.C. 2002) (discussed *infra.*).

Both §§ 17.17 and 17.46 of Title 28 of the Code of Federal Regulations and DoDM 5200.02, "Procedures for the DoD Personnel Security Program," provide the framework for granting access to classified information to persons outside the Executive Branch, including attorneys representing clients in cases involving classified information. According to these regulations, the General Counsel or Judge Advocate General of the DoD Component involved in the litigation must cerify that attorney access to specified classified information is <u>necessary to adequately represent the client</u>. DoDM 5200.02 at 24, *Procedures for the DoD Personnel Security Program (PSP)* dated April 3, 2017 with changes through October 29, 2020 (attached as Ex. 3 to this Memorandum). Once this need-to-know is satisfied, then the implementation of access in the court is governed by § 17.46. *See* §17.46 ("(d) Access to classified information by individuals involved in judicial proceedings other than employees of the Department is governed by § 17.46(c).").

Part 5 of Executive Order 12968 governs what occurs if these applications for access are denied. In summary, Sec. 5.2 of E.O. 12968 requires a detailed writing as to the basis of the denial, the records that support the denial, and the method of appealing that decision.

<u>*Other Courts' Treatment of Access to Classified Information in Litigation*</u>

While there does not appear to be a case regarding the propriety of compelling access to classified information to litigants and cleared counsel within the 5th Circuit, other district and circuit courts have dealt with the issue. *Khaled A.F. Al Odah v. United States*, 385 U.S. App. D.C. 110, 115, 559 F.3d 539, 544 (2009)("Hence, before the district court may compel the disclosure of classified information, it must determine that the information is both relevant and material… the court must further conclude that access by petitioner's counsel (pursuant to a court-approved

protective order) is necessary to facilitate such review."); *Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 686 F.3d 965, 983 (9th Cir. 2012)("We find significant that there may be means of providing information to the potential designee that do not implicate national security. For example, an unclassified summary, by definition, does not implicate national security because it is unclassified. Similarly, a lawyer for the designated entity who has the appropriate security clearance also does not implicate national security when viewing the classified material because, by definition, he or she has the appropriate security clearance."); *Latif v. Lynch*, No. 3:10-cv-00750-BR, 2016 U.S. Dist. LEXIS 40177, at *57 (D. Or. Mar. 28, 2016); *Pollard v. United States Parole Comm'n*, No. 15-cv-9131 (KBF), 2016 U.S. Dist. LEXIS 73332, at *25 (S.D.N.Y. June 6, 2016). Without question, the court that has done the most exhaustive analysis of this issue is *Stillman v. DOD*, 209 F. Supp. 2d 185 (D.D.C. 2002) (ruling that Plaintiff's counsel should be evaluated for a proper clearance and granted access to the classified discovery).

However, upfront, the *Stillman* opinion is not without its problems. Namely, it was reversed "on grounds different from, but related to, that court's [exhaustive] treatment" of this instant issue. *Pollard*, at *21. Specifically, the circuit court concluded that the district court had abused its discretion by deciding the First Amendment claim before determining whether the government had classified the information properly, thereby violating the constitutional avoidance doctrine. *Stillman v. CIA*, 319 F.3d 546, 355 U.S. App. D.C. 96 (D.C. Cir. 2003). "Nonetheless, the district court's analysis in *Stillman* offers some guidance." *Pollard* at *22. In short, the circuit court didn't disapprove of Judge Stillman's substantive analysis on the apposite issues in that case.

As aligned with the facts of this case, *Stillman* provides more than guidance on the issues, it is practically on all fours. Most importantly, the ways in which *Stillman* aligns with this instant issue was not the basis of reversal and is good law that this Court can look to as strong persuasive evidence as the *Pollard* court did.

In pertinent part, *Stillman* involved a case where Plaintiff challenged the publication restriction by the Dept. of Energy of a manuscript he had written describing his nine trips to China

and their nuclear program. *Stillman* at 188. The DoD and CIA classified the manuscript and suit followed. *Id.* At a status hearing, government counsel represented that Plaintiff's counsel, Mr. Zaid, was being denied access to the classified information because lacked "need to know." *Id.* Mr. Zaid appealed to both the DoD and the CIA under Part 5 of the Executive Order 12968, but ultimately received written notice from an Associate General Counsel of the CIA as well as an Associate Deputy General Counsel of the DoD denying his appeal. *Id.* Plaintiff then moved to compel his counsel's clearance and access. *Id.*

Judge Sullivan began analyzing the disparity in the statements made by the two general counsels regarding need-to-know determinations. He noted that private counsel had been provided classified access in other cases involving classified manuscripts. *Stillman* at 191. Then he further noted DoD 5200.2-R (the predecessor to DoDM 5200.02) permitted release of classified material to attorneys representing DoD personnel "necessary to adequately represent his or her client." *Id.* Judge Sullivan ultimately determined that the general counsel's rationales for denying access "were neither compelling nor deserve deference by this Court." *Id.* at 197 (going so far as to say the "inconsistencies by the government in explaining its decision are, to say the least, suspect" when analyzing their assertions that counsel was not serving a governmental function nor had a need to know). *Id.*

Judge Sullivan then turned his attention to the Government's contention that the issue was solely in the discretion of the Executive Branch and not subject to judicial review. Following a detailed analysis not in need of repeating herein, Judge Sullivan declared

> To be clear, the government's argument that its actions are beyond the review of this Court rests on a theory of separation of powers that is not and has never been the law. The implications of the arguments put forth by the government in this case are stunning. The government argues here that any and all conflicts between national security interests and individual constitutional rights can not be resolved by the Article III courts because the Constitution commits the protection of national security to the Executive Branch. If this were the law, the Pentagon Papers case, *New York Times Co. v. United States*, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971), which allowed the publication of classified material, was wrongly decided. If this were the law, *Snepp*, 444 U.S. at 513 n.8, and *McGehee*, 718 F.2d at 1141, which require judicial review of pre-publication classification

decisions, were wrongly decided. If this were the law, the provision of the Freedom of Information Act that allows judicial review of documents withheld for national security purposes, 5 U.S.C. § 552(b)(1), would be unconstitutional. If this were the law, the provisions of the Classified Information in Prosecutions Act, 18 U.S.C. App. 3, §§ 1-16, that require disclosure of classified information to criminal defense counsel, would be unconstitutional. Finally, if the government's theory of separation of powers carried the day, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 72 S. Ct. 863, 96 L. Ed. 1153 (1952), in the Supreme Court held that the President unconstitutionally assumed the legislative power in the name of national security, was wrongly decided. *Id.* at 212-13.

This view was ratified by the *Pollard* court in its conclusion that it was appropriate for the court to review the Government's determination that "counsel did not need to know the [classified] information contained within *ex parte* filings. *Pollard* at *26 citing *United States v. Libby*, 429 F. Supp. 2d 18, 25 (D.D.C. 2006).

Judge Sullivan then conducted the First Amendment analysis that the appeals court ultimately ruled was to be avoided, to the extent possible, before turning to his analysis of the state secrets privilege. *Stillman* at 222-223. Identical to this case, the U.S. Government had not asserted the state secrets privilege in any of its denials or proceedings. *Id.* "With respect to the privilege, that Court stated: 'it is not to be lightly invoked. There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" *Id.* citing *United State v. Reynolds*, 345 U.S. 1, 7, 73 S. Ct. 528, 97 L. Ed. 727 (1953). "Furthermore, the assertion of state secrets privilege must be subject to judicial review." *Id.* Ultimately, Judge Sullivan ruled that the constitutional issues at play outweighed the shifting arguments by the Government and ordered that Plaintiff's counsel be assessed for clearance and granted access to classified information in the manuscript commensurate with that clearance. *Id.* at 232.

### *Application to Dr. Roe's Case*

While the principles above are sound, the Government's arbitrary and capricious restriction in Dr. Roe's case is much worse: the Government is muzzling his ability to speak to his lawyers those facts, which Dr. Roe contends, will resolve the case in his favor. Ex. 4, Decl. of Plaintiff Dr.

Roe, Ph.D., at 2. This is unconstitutional prior restraint of the highest order weaponized all the more by the fact that it directly aids Defendants in blocking opposition to their Motion to Dismiss; the Government muzzles Plaintiff (without any process due under their own regulations) then demands that he responds or face dismissal. Further, the Government blocks his counsel, Marine officers entrusted with the same level of secrets throughout their very recent military careers, from even appraising the necessary facts able to rebut their motion. It's unconscionable and violates not only his First Amendment rights but also his due process rights under the Fifth Amendment.

### *There is no risk of harm to national security in Dr. Roe's case.*

Unlike *Stillman's* counsel, Plaintiff and counsel have long histories of being trusted by the same Government that now rebuffs them, to its benefit. Both Plaintiff and counsel have been entrusted with this nation's highest secrets (Plaintiff is still currently entrusted with those same secrets *in similar programs* as a commercial contractor working in AI/ML). Both Plaintiff and counsel have risked their lives on behalf of this same Government. Yet now, when it tips the scales in favor of winning a lawsuit, Plaintiff and counsel are unsuited to even orally utter need facts in a secure room. Given Plaintiff and counsels' histories, there is little (read, none) potential risk to national security. *Al Haramain Islamic Found., Inc.*, 686 F.3d at 983 ("a lawyer for the designated entity who has the appropriate security clearance also does not implicate national security when viewing the classified material because, by definition, he or she has the appropriate security clearance.").

### *Restricting Plaintiff's communications with his attorneys is an unconstitutional prior restraint on speech and right to obtain legal advice under the First Amendment.*

Interestingly, *Stillman* yet again renders a dynamically reasoned treatment of this exact issue. Judge Sullivan took the Government to task for restricting Plaintiff's ability to communicate with his attorney. *Stillman* at 214. "These holdings are buttressed by Supreme Court precedent recognizing a constitutional right of unfettered access to counsel. It has long been recognized by the Supreme Court that the First Amendment prohibits the government from interfering with

collective action by individuals to seek legal advice and retain legal counsel." *Id.* citing *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585-86, 91 S. Ct. 1076, 28 L. Ed. 2d 339 (1971) ("Collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment."); *United Mine Workers of Am. v. Illinois State Bar Ass'n*, 389 U.S. 217, 221-22,  88 S. Ct. 353, 19 L. Ed. 2d 426 (1967) ("The freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."); *see also Brotherhood of R.R. Trainmen v. Virginia*, 377 U.S. 1, 6, 84 S. Ct. 1113, 12 L. Ed. 2d 89, 27 Ohio Op. 2d 365, 94 Ohio L. Abs. 33 (1964); *NAACP v. Button*, 371 U.S. 415, 429-30, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963). *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 376 n.32, 97 S. Ct. 2691, 53 L. Ed. 2d 810, 51 Ohio Misc. 1, 5 Ohio Op. 3d 60 (1977) ("Underlying [the collective action cases] was the Court's concern that the aggrieved receive information regarding their legal rights and the means of effectuating them. This concern applies with at least as much force to aggrieved individuals as it does to groups."); *Trainmen*, 377 U.S. at 7 ("A State could not … infringe in any way the right of individuals and the public to be fairly represented in lawsuits….").

To capriciously deny three previously vetted persons from meeting to discuss this case unfairly denies Dr. Roe the fair ability to litigate his claims before this Court. The Government, already injuring him through the alleged acts, seeks to further gag Dr. Roe from his cries for redress. Dr. Roe is to take what the Government doles out and remain quiet. Worse yet, the Government has done something similar to the Court as well.

*The Government's summary denial of access without explanation or required documentation obstructs this Court's review.*

What is present in nearly every case cited herein is that the Government provided (or was ordered to provide) a record of their decision denying counsel access. Yet, in this case, despite the requirements of E.O. 12968 giving clear instruction that denied applicants should be given as much of the denial details and records as possible, the Government asserts that the Court and litigants

must rest on their one-line emailed denial. This offends the regulations and the solemnity of the proceedings. At a minimum, as both the *Stillman* and *Pollard* courts did, this Court should review the decision to summarily deny Plaintiff and counsels' access to classified information in this case.

<u>*The DoD regulation specifically grants need-to-know to Plaintiff and counsel.*</u>

Another beneficial distinguishment of Dr. Roe's case is that he (and counsel) fit directly within DoD regulation. Namely, the regulation establishing the DoD clearance program, states clearly: "h. <u>Attorneys representing contractor personnel</u> who require access to DoD classified information <u>to properly represent their clients</u> will normally be investigated and cleared in accordance with Title 18, U.S.C. DoDM 5200.02, at 24.[1]  This identical provision exists in Air Force Defendants' own regulation found on Page 42 of DoDM 5200.02_AFMAN 16-1405, 1 August 2018.[2]

These regulations solve the need-to-know problem. Plaintiff and counsel are directly envisioned as the appropriate litigants who should have access to the classified information necessary to "properly represent their clients." Yet, before we even get to discovery, the Government is looking to step from its own regulations to prevent the proper representation of Dr. Roe.

*Conclusion*

Plaintiff and counsel are asking little at this stage: the ability to meet in a SCIF together and discuss and draft amendments to the Complaint and responses to Defendants' Motion to Dismiss in a way that securely and properly protects the national security interests at play. Dr. Roe is entitled to seek redress and remedy from this Court. Moreover, he is entitled by our constitution to consult with, and retain the assistance of counsel to effectuate this redress. Yet, the Government's seemingly uninformed actions regarding its own classification regulations has resulted in a presumptive prejudice and denial of a fair adjudication in this matter. Dr. Roe's representation is being actively obstructed by the Government's summary denial of access by his vetted attorneys to the contents of his own mind (the concept that knowledge by Plaintiff is

---

[1] (available at https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/520002m.PDF).
[2] (available at https://static.e-publishing.af.mil/production/1/saf_aa/publication/dodman5200.02_afman16-1405/dodm5200.02_afman16-1405.pdf).

"discovery" is wholly unsupported within the law). Dr. Roe respectfully requests that this Court clear those obstructions and allow him to fairly, fully, and safely share those facts he deems central to his claims and responses.

WHEREFORE, Plaintiff respectfully requests that this Court ORDER:

1) That the Government be directed to properly answer Plaintiff and counsels' application for access to the relevant classified material.

2) That the Government be ordered to produce discovery related to the denial of classified access related to the Government counsel's summary denial email so that the Court may possess a proper record for review.

3) That Plaintiff and counsel's eligibility for classified access be fully investigated and established (with requisite renewals or upgrades of that eligibility executed as necessary);

4) That once eligibility is favorably determined, Plaintiff and counsel be granted access to the relevant classified programs and properly "read on" to all necessary "tickets" (code word programs) relevant to Plaintiff's case;

5) That once access has been properly granted, Plaintiff and counsel be given reasonable access to a Secured Compartmentalized Information Facility (SCIF) reasonably near Plaintiff's residence to discuss relevant and necessary classified fact and draft classified supplements or responses (Motion to Adopt CIPA-like procedures forthcoming).

6) That this access be continued throughout the pendency of the litigation.


[INTENTIONALLY LEFT BLANK]

Respectfully submitted,

/s/ John W. Hodges, Jr.
John W. Hodges, Jr., #2409167
Hendley & Hodges Law
29710 US Hwy 281 North, Ste 300
Bulverde TX 78163
Phone: (210) 714-0924

/s/ Jason R. Wareham
Jason R. Wareham, CO Bar No: 56974
*Pro Hac Vice*
The Law Center P.C.
300 Plaza Dr., Ste 200
Highlands Ranch CO 80129
303-991-5200
Litigation@thelawcenterpc.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on April 28, 2023, I filed the foregoing *Memo/Motion* and served the same on all counsel of record via the same.

/s/ Jason R. Wareham
Jason R. Wareham, CO Bar No: 56974
*Pro Hac Vice*
The Law Center P.C.
300 Plaza Dr., Ste 200
Highlands Ranch CO 80129
303-991-5200
Litigation@thelawcenterpc.com