**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**FILED**

August 04, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
NM

DEPUTY

DR. JOHN ROE,

        Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

        Defendants.

Civil Action No. 5:22-CV-00869-JKP-HJB

## <u>DEFENDANTS' MOTION TO DISMISS</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch

REGINALD M. SKINNER
Senior Trial Attorney
Virginia State Bar. No. 48785
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-3111
Fax: (202) 616-4314
Email: reginald.m.skinner@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

THE COMPLAINT'S ALLEGATIONS ...................................................................................... 2

ARGUMENT .............................................................................................................................. 6

I.   Roe Is Not Entitled to Relief for De Facto Debarment. ....................................................... 6

    A.   Roe has not alleged sufficient facts to establish a plausible de facto debarment claim. ...... 6

    B.   Even if Roe plausibly alleged de facto debarment, he is not entitled to relief because the complaint fails to allege a due process violation ........................................................... 10

    C.   Roe is not otherwise entitled to equitable relief for de facto debarment. ......................... 13

II.  Qualified Immunity Bars Roe's Damages Claims under the Privacy Act. ........................... 16

III. Sovereign Immunity Forecloses Roe's FTCA Claims Against the United States. ................. 17

    A.   Discretionary Function Exception .................................................................................. 17

    B.   Intentional Tort Exception ............................................................................................. 19

IV.  Roe Fails to State a Valid Claim for Relief under the FTCA. ............................................. 21

    A.   Abuse of Process .......................................................................................................... 21

    B.   Intentional Infliction of Emotional Distress .................................................................. 22

    C.   Malicious Prosecution ................................................................................................... 24

    D.   Conspiracy ................................................................................................................... 24

CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Art Metal-U.S.A., Inc. v. United States,*
   753 F.2d 1151 (D.C. Cir. 1985) ........................................................................20

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ...........................................................................................16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................................9

*Atorie Air, Inc. v. F.A.A. of U.S. Dep't of Transp.,*
   942 F.2d 954 (5th Cir. 1991) ........................................................................19, 20

*Baker v. Carr,*
   369 U.S. 186 (1962) ................................................................................15, 16, 24

*Bannum, Inc. v. Samuels,*
   221 F. Supp. 3d 74 (D.D.C. 2016) .............................................................. passim

*Bd. of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972) ...........................................................................................11

*Becerra v. Dalton,*
   94 F.3d 145 (4th Cir. 1996) ...............................................................................14

*Berkovitz v. United States,*
   486 U.S. 531 (1988) ...........................................................................................18

*Bosco v. U.S. Army Corps of Engineers, Fort Worth Dist.,*
   611 F. Supp. 449 (N.D. Tex. 1985)................................................................19, 21

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
   70 F.4th 914 (5th Cir. 2023) ..............................................................................13

*Brown v. Nationsbank Corp.,*
   188 F.3d 579 (5th Cir. 1999) .............................................................................22

*Caiola v. Carroll,*
   851 F.2d 395 (D.C. Cir. 1988).............................................................................6

*Campos v. United States,*
   888 F.3d 724 (5th Cir. 2018) ........................................................................17, 18

*Connelly v. Comptroller of the Currency,*
   876 F.2d 1209 (5th Cir. 1989) ...........................................................................16

*Cooper v. Am. Auto. Ins. Co.,*
   978 F.2d 602 (10th Cir. 1992) ...........................................................................21

*Dep't of Navy v. Egan,*
   484 U.S. 518 (1988) .......................................................... 14, 15, 16, 24

*Dorfmont v. Brown,*
   913 F.2d 1399 (9th Cir. 1990) ...........................................................................14

*Dynamic Aviation v. Dep't of Interior,*
   898 F. Supp. 11 (D.D.C. 1995)............................................................................8

*El-Ganayni v. U.S. Dep't of Energy,*
   591 F.3d 176 (3d Cir. 2010) ..............................................................................14

*Garcia v. United States,*
   776 F.2d 116 (5th Cir. 1985) .............................................................................20

*Gonzalez v. Freeman*,
  334 F.2d 570 (D.C. Cir. 1964) ...................................................................................11

*Hebert v. United States*,
  438 F.3d 483 (5th Cir. 2006) ....................................................................................17

*Hegab v. Long*,
  716 F.3d 790 (4th Cir. 2013) ...............................................................................14, 15

*Hestia Educ. Grp., LLC v. King*,
  No. 15-CV-01463-DMR, 2016 WL 362226 (N.D. Cal. Jan. 29, 2016)......................9

*Highview Eng'g, Inc. v. U.S. Army Corps of Engineers*,
  864 F. Supp. 2d 645 (W.D. Ky. 2012) ........................................................................8

*Hill v. Dep't of Air Force*,
  844 F.2d 1407 (10th Cir. 1988) ................................................................................14

*Hill v. White*,
  321 F.3d 1334 (11th Cir. 2003) ................................................................................14

*Hoffmann-La Roche Inc. v. Zeltwanger*,
  144 S.W.3d 438 (Tex. 2004)......................................................................................23

*IFONE NEDA Internet Serv., Inc. v. Army & Air Force Exch. Serv.*,
  No. 4:21-CV-330, 2021 WL 1148345 (S.D. Tex. Mar. 25, 2021) .........................7, 8

*In re Katrina Canal Breaches Litig.*,
  696 F.3d 436 (5th Cir. 2012) ....................................................................................18

*John Carlo, Inc. v. Corps of Engineers of U. S. Army, Fort Worth Div.*,
  539 F. Supp. 1075 (N.D. Tex. 1982)............................................................................9

*Kjellvander v. Citicorp*,
  156 F.R.D. 138 (S.D. Tex. 1994)..........................................................................22, 24

*Lipka v. United States*,
  249 F. Supp. 213 (N.D.N.Y. 1965) ...........................................................................19

*MacArthur v. Univ. of Texas Health Ctr. at Tyler*,
  45 F.3d 890 (5th Cir. 1995) ......................................................................................23

*Meadows v. Hartford Life Ins. Co.*,
  492 F.3d 634 (5th Cir. 2007) ....................................................................................24

*Mitchell Eng'g v. City & Cnty. of San Francisco*,
  No. C 08-04022 SI, 2009 WL 440486 (N.D. Cal. Feb. 23, 2009)...............................8

*Old Dominion Dairy Prod., Inc. v. Sec'y of*,
  Def., 631 F.2d 953 (D.C. Cir. 1980) ...........................................................................9

*Ortega v. Ocwen Loan Servicing, LLC*,
  No. 5:16-CV-00566-XR, 2016 WL 5794803 (W.D. Tex. Oct. 3, 2016) ...................13

*Paul v. Davis*,
  424 U.S. 693 (1976) ..................................................................................................11

*Perez v. F.B.I.*,
  71 F.3d 513 (5th Cir. 1995) ......................................................................................14

*Peter B. v. United States*,
  579 F. Supp. 2d 78 (D.D.C. 2008) ............................................................................21

*Phillips v. Mabus*,
  894 F. Supp. 2d 71 (D.D.C. 2012) ..............................................................................7

*Phillips v. Spencer*,
  390 F. Supp. 3d 136 (D.D.C. 2019) ......................................................................9, 10

*Quijano v. United States*,
   325 F.3d 564 (5th Cir. 2003) ................................................................................17
*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*,
   421 F.3d 1 (1st Cir. 2005)...............................................................................8, 10
*Ryan v. Reno*,
   168 F.3d 520 (D.C. Cir. 1999) .............................................................................14
*San Jacinto Sav. & Loan v. Kacal*,
   928 F.2d 697 (5th Cir. 1991) ................................................................................11
*Siegert v. Gilley*,
   500 U.S. 226 (1991) .......................................................................................11, 12
*Smart v. United States*,
   No. EP-10-CV-85-KC, 2011 WL 13324308 (W.D. Tex. July 19, 2011)................................22
*Snyder v. Byrne*,
   770 S.W.2d 65 (Tex. App.—Corpus Christi 1989, no writ)....................................22
*Southwestern Bell Mobile Sys., Inc. v. Franco*,
   971 S.W.2d 52 (Tex. 1998) ..................................................................................23
*Tilton v. Marshall*,
   925 S.W.2d 672 (Tex. 1996)................................................................................24
*TLT Const. Corp. v. United States*,
   50 Fed. Cl. 212 (2001).............................................................................................7
*Trifax Corp. v. District of Columbia*,
   314 F.3d 641 (D.C. Cir. 2003) ........................................................................7, 10
*Tsolmon v. United States*,
   841 F.3d 378 (5th Cir. 2016) ................................................................................19
*Twyman v. Twyman*,
   855 S.W.2d 619 (Tex. 1993)................................................................................22
*United States v. Mitchell*,
   463 U.S. 206 (1983) ...............................................................................................17
*Val-Com Acquisitions Trust v. Chase Home Fin., L.L.C.*,
   434 Fed. App'x. 395 (5th Cir. 2011)....................................................................13
*Vander Zee v. Reno*,
   73 F.3d 1365 (5th Cir. 1996) ................................................................................11
*Wright v. Wyndham Resort Dev. Corp.*,
   No. A-09-CV-444-JRN, 2009 WL 10699497 (W.D. Tex. Aug. 19, 2009).......................22, 23
*Zummer v. Sallet*,
   37 F.4th 996 (5th Cir. 2022) .................................................................................15

**Statutes**

5 U.S.C. § 552a(g) ..................................................................................................17
28 U.S.C. § 2680(a)-(n)..........................................................................................17
28 U.S.C. § 2680(h) ................................................................................................19

**Regulations**

48 C.F.R. § 9.402 .................................................................................................6, 18
48 C.F.R. § 9.406-2 ...................................................................................................6

48 C.F.R. § 9.406-3 ................................................................................................................. 6

75 Fed. Reg. 707 ................................................................................................................... 15

## INTRODUCTION

Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, by counsel, respectfully move to dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction, failure to state a claim for relief, and qualified immunity.

In this lawsuit, "Dr. John Roe"—an alleged expert in the field of Artificial Intelligence and Machine Learning—pursues claims for damages and equitable relief against the United States and various government officials. Roe's claims all arise out of the termination of his subcontract with a private commercial firm doing business with the military after an investigation supposedly labeled him a "scam artist," "fraud," and insider security threat.

Roe's claims in this action are without merit and should be dismissed. First, his allegations do not meet the "high standard" for establishing a de facto debarment. For one thing, Roe fails to allege that he *actually bid* on and was denied any government contracts after his alleged debarment in August of 2020, an obvious and fatal flaw in his de facto debarment claim. Moreover, the key feature of de facto debarment is that the plaintiff has been broadly shut out of opportunities to contract *government-wide*. A de facto debarment claim cannot be premised on a plaintiff's supposed lack of access to a special subclass of contract work, such as Roe's claim here that he was barred from "offensive cyber work" and is now "strictly relegated to cyber defense work." First Am. Compl. ¶ 148. And, in any event, the Court lacks subject matter jurisdiction to order the remedy Roe seeks: a decree compelling an Executive Branch agency to reinstate him to a position that involves access to classified information.

Second, qualified immunity bars Roe's damages claims against Air Force officials under the Privacy Act because that statute authorizes a cause of action only against federal agencies, not individual government employees. Finally, Roe's damages claims against the United States

under the Federal Tort Claims Act ("FTCA") are subject to dismissal on the basis of sovereign immunity and Roe's failure to state a claim for relief. For these reasons, and as discussed more fully below, the Defendants respectfully request that the Court grant their motion to dismiss.

<u>**THE COMPLAINT'S ALLEGATIONS**</u>

Roe alleges that he is an expert in the field of Artificial Intelligence and Machine Learning and that he has made significant contributions to the United States' intelligence and national security capabilities. First Am. Compl. at ¶¶ 9, 16, 27-59.  In 2019, Roe was a civilian employee of the National Security Agency ("NSA"). *Id*. ¶ 62. He alleges that the United States Air Force (specifically, an information warfare command known as "Air Forces Cyber") invited him to serve as a part-time consultant on a special classified project known as "Project A." *Id*. ¶¶ 65, 69. Roe performed this work as a subcontractor to a private commercial firm known as Global Infotek, Inc. ("GiTi"), a prime contractor providing services to the United States military. *Id*. Roe alleges he received the NSA's approval to undertake this outside employment. *Id*. ¶¶ 66-67.

Roe alleges that after about a year of consulting on Project A, his achievements "created animosity" among Air Force officials "whose own projects were being eclipsed by his specialized knowledge and success." *Id*. ¶ 70. Roe claims that one such resentful officer was Air Force Captain William McVeigh, who was in charge of classified "Project B" for the Air Force Life Cycle Management Center ("AFLCMC")—a think tank charged with developing and implementing Air Force weapons systems. *Id*. ¶¶ 71-72. An organization allegedly known only by the acronym "HNCO" is the procurement office of AFLCMC. *Id*. ¶¶ 12, 74.

Roe claims that "Dan Brown," allegedly a program manager at HNCO, warned Roe that Captain McVeigh "has an extensive history of targeting government personnel or projects" that

he sees as competitors to his own. *Id.* ¶ 85. Roe alleges that on two occasions, he told Air Force officials that Captain McVeigh's Project B was not viable. Specifically, during a February 2020 classified briefing, Roe told Dan Brown and Danny Burghard (Director of Special Projects) that Project B was "way out of scope," had not provided a usable product in more than 10 years and was therefore obsolete. *Id.* ¶ 78-79.

Roe claims that his assessment "engendered significant resentment and derision within the insular AFLCMC and HNCO community" and the antipathy "continued to build as his evaluation was communicated to" Captain McVeigh. *Id.* ¶ 81. On August 13, 2020, Roe again expressed his view—this time in private to Mr. Brown and Mr. Burghard—that Project B was no longer productive. *Id.* ¶ 89, 91. Roe alleges that, as a result of this meeting, which was to determine funding for various AFLCMC projects, Roe's Project A "received additional funding while [Captain McVeigh's] Project B still received funding but at a reduced level compared to" Project A. *Id.* ¶ 92.

Roe alleges, on information and belief, that several Air Force officials (including Captain McVeigh, Mr. Burghard, Lt. Col. Jared Ekholm and "various Defendant John Does") "were furious at [Roe's] assessment and additional funding," and so they "began working collectively to destroy Dr. Roe." *Id.* ¶ 93. He claims these officials combined and collaborated "to undermine his role and eligibility as a subcontractor, cancel his program, and de facto debar him from further government consulting of any kind in the field of offensive cyber AI/ML." *Id.* According to Dr. Roe, these "Defendant Officers" hatched a scheme to leverage Captain McVeigh's association with an agent in the Air Force Office of Special Investigations ("OSI") in order "to engineer a knowingly specious and unsupported criminal investigation into Dr. Roe." *Id.* ¶ 94. Roe claims that to achieve the conspirators' "collective goal," Captain McVeigh convinced an

OSI agent "to open a knowingly false investigation into Dr. Roe in bad faith and without probable cause for the sole purpose of injuring Dr. Roe." *Id*. ¶ 95. Roe claims that Captain McVeigh falsely alleged to the OSI agent that Roe was a "scam artist," his proposed solutions "were not possible," and that Roe "was an insider threat attempting to wrongfully gain access to another classified TS/SCI – Special Access Program." *Id*. ¶ 98.

Roe claims that the very next day after the August 13, 2020, meeting (at which he gave his "unpopular assessment" of Project B), he was notified that the Air Force would terminate his program and subcontract. *Id*. ¶ 104. Roe alleges he was not provided any notice or basis for the termination or an opportunity to respond. *Id*. He alleges the termination of his AFLCMC subcontractor role was completed on August 18, 2020. *Id*.

The OSI investigation into Roe apparently continued. On August 24, 2020, the OSI agent notified him to report to Joint Base San Antonio-Lackland in two days for an interview, during which Roe faced "accusations that he was an insider security threat and/or operating in violation of federal law." *Id*. ¶¶ 105-107. At this meeting, Dr. Roe was "read out" of the classified Special Access Program—an action he claims effectively "terminat[ed] him from access of any kind to his pending projects or the CyberAI field . . . that he had developed." *Id*. ¶ 106. The OSI agent also advised Roe that the Office of Personnel Management ("OPM") had opened an administrative adjudication to remove Roe's security clearance. *Id*. ¶ 109. Dr. Roe alleges that the OSI agent channeled investigative materials to Captain McVeigh, and that Captain McVeigh "broadcasted this information" to others in HNCO who did not have a "need to know." *Id*. ¶ 114-118. Roe claims that both the OSI investigation and OPM adjudication ultimately resolved in his favor. *Id*. ¶ 112.

Still, Roe claims that he is "*persona non grata*" and "blackballed" at HNCO. *Id*. ¶ 12.

Dan Brown allegedly told Roe, "'[Y]ou can never work in HNCO again,' or words to that effect." *Id*. ¶ 129. Roe claims he has been de facto debarred "from further government consulting of any kind in the field of offensive cyber AI/ML." *Id*. ¶ 93. Roe is barred from "offensive cyber work" and "is strictly relegated to cyber defense work" unless he hides any association he has to the project. *Id*. ¶ 148. According to Roe, the debarment is analogous to "a firearms manufacturer who is only permitted to develop bullet-proof vests, or a missile designer who is restricted to creating radars and tracking algorithms." *Id*. ¶ 149. The supposed debarment prohibits Roe from engaging "in his specific offensive cyber field." *Id*.

Roe's First Amended Complaint asserts ten causes of action:

- Count 1 asserts a claim for de facto debarment and seeks purely equitable relief under the Declaratory Judgment Act, the Administrative Procedure Act ("APA"), and the Fifth Amendment. *Id*. ¶¶ 159-191.

- Count 2 asserts a damages claim against Captain McVeigh and "Defendant OSI Agent" in their personal capacities for an alleged violation of the Privacy Act. *Id*. ¶¶ 192-207.

- Count 3 asserts a damages claim against Captain McVeigh, Lt. Col. Ekholm, and "Defendant John Does" in their personal capacities for an alleged violation of the Privacy Act. *Id*. ¶¶ 208-216.

- Count 4 asserts a damages claim against the United States under the FTCA for abuse of process. *Id*. ¶¶ 217-233.

- Count 5 asserts a damages claim against the United States under the FTCA for conspiracy to abuse the OSI criminal investigation process. *Id*. ¶¶ 234-244.

- Count 6 asserts a damages claim against the United States under the FTCA for intentional infliction of emotional distress. *Id*. ¶¶ 245-253.

- Count 7 asserts a damages claim against the United States under the FTCA for "civil conspiracy for IIED." *Id*. ¶ 254-262.

- Count 8 asserts a claim for "unreasonable interference with employment" and seeks purely equitable relief under the Declaratory Judgment Act, the APA, and the Fifth

Amendment. *Id.* ¶¶ 263-270.

- Count 9 asserts a damages claim against the United States under the FTCA for malicious prosecution. *Id.* ¶¶ 271-285.

- Finally, Count 10 asserts a damages claim against the United States under the FTCA for "conspiracy to maliciously prosecute." *Id.* ¶¶ 286-296.

## <u>ARGUMENT</u>

**I.    <u>Roe Is Not Entitled to Relief for De Facto Debarment.</u>**

### A.    Roe has not alleged sufficient facts to establish a plausible de facto debarment claim.

Count 1 of Roe's First Amended Complaint asserts a de facto debarment claim and seeks purely equitable relief under the Declaratory Judgment Act, the APA, and the Fifth Amendment. First Am. Compl. ¶¶ 159-191.

"Debarment is an administrative action which excludes nonresponsible contractors from government contracting." *Caiola v. Carroll*, 851 F.2d 395, 397 (D.C. Cir. 1988). Government regulations specify that "[a]gencies shall solicit offers from, award contracts to, and consent to subcontracts with responsible contractors only. Debarment and suspension are discretionary actions that . . . effectuate this policy." 48 C.F.R. § 9.402. A "debarring official" may formally debar a contractor for a variety of reasons, including an "offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a [G]overnment contractor or subcontractor." 48 C.F.R. § 9.406-2. A debarment action must follow the procedural requirements in 48 C.F.R. § 9.406-3, including notice to the contractor of the proposed debarment and the reasons why the action is being considered.

Courts have recognized that "there are circumstances when the government could effectively bar a contractor from receiving government business without invoking formal debarment proceedings . . . ." *Bannum, Inc. v. Samuels*, 221 F. Supp. 3d 74, 86 (D.D.C. 2016).

So-called "constructive" or "de facto" debarment involves "government stigmatization that broadly precludes individuals or corporations from a chosen trade or business" and thereby "depriv[es] them of liberty in violation of the Due Process Clause." *Id.* (quoting *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003)).

Courts "have established a high standard for plaintiffs to meet when trying to establish a de facto debarment claim." *TLT Const. Corp. v. United States*, 50 Fed. Cl. 212, 215 (2001); *IFONE NEDA Internet Serv., Inc. v. Army & Air Force Exch. Serv.*, No. 4:21-CV-330, 2021 WL 1148345, at *4 (S.D. Tex. Mar. 25, 2021) (the "standard for proving de facto debarment is high") (alteration and citation omitted). The core of a de facto debarment claim is statements or conduct that show the plaintiff has been functionally "disqualified from government contracts on a systematic basis." *TLT Const. Corp.*, 50 Fed. Cl. at 216. "Two options exist to establish a de facto debarment claim: 1) by an agency's statement that it will not award the contractor future contracts; or 2) by an agency's conduct demonstrating that it will not award the contractor future contracts." *Phillips v. Mabus*, 894 F. Supp. 2d 71, 81 (D.D.C. 2012) (quoting *TLT Const. Corp.*, 50 Fed. Cl. 212, 215-216).

In this case, Roe's de facto debarment claim is premised primarily on the following allegations:

- Captain McVeigh convinced an OSI agent to begin a "knowingly false" investigation based on spurious allegations that Roe was a "scam artist," his CyberAI solutions were not feasible, and that Roe was an insider security threat. First Am. Compl. ¶¶ 95-100.

- In August of 2020, the Air Force terminated Roe's program and subcontract, and he was "read out" of the classified Special Access Program, functionally debarring him from CyberAI opportunities with HNCO. *Id.* ¶¶ 104-106, 124.

- Dan Brown, an HNCO program manager, said "'[Roe] can never work in HNCO again,' or words to that effect." *Id.* ¶ 129.

- "Roe has not been awarded any additional contract work since that time and has been

permanently and continually barred from contracting with (or even being associated with contracts), entering the offices of, consulting for, associating his name with his work, or otherwise having any interaction with HNCO or its parent organizations. Dr. Roe further alleges this debarment is growing into other areas of the [Intelligence Community] as well." *Id.* ¶ 169.

For two independent reasons, these allegations do not meet the "high standard" for establishing a de facto debarment. For one thing, Roe fails to allege that he *actually bid* on and was denied any government contracts after his alleged debarment in August of 2020. This is an obvious and fatal flaw in Roe's de facto debarment claim. He cannot establish "a systematic effort by the agency to reject all of [his] bids" if he never submitted any post-debarment. *Highview Eng'g, Inc. v. U.S. Army Corps of Engineers*, 864 F. Supp. 2d 645, 653 (W.D. Ky. 2012). In similar situations, courts have observed that this means the plaintiff has failed to plausibly allege a de facto debarment claim. *See Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 9 (1st Cir. 2005) (construction contractor could not establish a "pattern or practice of exclusion" necessary for a de facto debarment claim given contractor's failure to allege that it bid on any government contracts post suspension); *IFONE NEDA Internet Serv., Inc.*, 2021 WL 1148345, at *5 (refusing to infer "that the government was prohibiting IFONE from all or virtually all future government work … without knowing, for example, if a bid by IFONE was rejected by the government following th[e] termination decision"); *Mitchell Eng'g v. City & Cnty. of San Francisco*, No. C 08-04022 SI, 2009 WL 440486, at *3 (N.D. Cal. Feb. 23, 2009) ("[P]laintiff has not pled a 'systematic effort' to reject all of its bids. Indeed, plaintiff does not allege that the City has rejected any of its bids. Plaintiff cites no authority establishing that a contractor can be constructively debarred when none of its bids has been rejected."); *Dynamic Aviation v. Dep't of Interior*, 898 F. Supp. 11, 13 (D.D.C. 1995) ("The government points to the fact that plaintiff has not bid on any formal contract since the date his suspension was lifted . . .

and argues correctly that de facto debarment has generally been found only where the party claiming debarment bid on and was denied more than one contract.").

To be sure, Roe makes vague and amorphous allegations that he is now "*persona non grata*" and "blackballed" at HNCO. First Am. Compl. ¶ 12. But those are no more than "a formulaic recitation of the elements of a [de facto debarment] cause of action" and "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). And for purposes of establishing a de facto debarment claim, the question is not whether he is physically welcome in "[HNCO] spaces." *Id.* ¶ 180. Roe's critical failure to allege that he actually submitted bids and lost out on government contracts after August 2020 necessarily means he has not plausibly alleged a systemic exclusion from government contracts necessary to support a claim for de facto debarment.

Second, the key feature of de facto debarment is that the plaintiff has been broadly shut out of opportunities to contract *government-wide*. *See Bannum, Inc.*, 221 F. Supp. 3d at 86 (de facto debarment "only implicate[s] the constitution if a contractor is effectively barred from 'virtually all Government work'") (quoting *Old Dominion Dairy Prod., Inc. v. Sec'y of Def.*, 631 F.2d 953, 955 (D.C. Cir. 1980)) (alteration omitted); *Phillips v. Spencer*, 390 F. Supp. 3d 136, 157 (D.D.C. 2019) ("When a party is debarred, that party cannot seek to enter into any contract with any federal agency."); *Hestia Educ. Grp., LLC v. King*, No. 15-CV-01463-DMR, 2016 WL 362226, at *7 (N.D. Cal. Jan. 29, 2016) (same); *John Carlo, Inc. v. Corps of Engineers of U. S. Army, Fort Worth Div.*, 539 F. Supp. 1075, 1080 (N.D. Tex. 1982) ("A finding of nonresponsibility does not constitute a de facto debarment unless the contracting officer's decision was effectively used to bar [plaintiff] from any further government contract work.") (internal quotation marks omitted).

Roe does not allege that he has been effectively barred from virtually all Government work. Instead, he claims exclusion from a subset of special projects he calls "offensive cyber operations." First Am. Compl. ¶¶ 14, 73-75, 93, 147-148. Roe likens his alleged debarment to "a firearms manufacturer who is only permitted to develop bullet-proof vests, or a missile designer who is restricted to creating radars and radar tracking algorithms." *Id.* ¶ 149. In other words, Roe claims de facto debarment based on allegations that "[h]e is strictly relegated to cyber defense work" now and is supposedly barred "from engaging in his specific offensive cyber field without any due process." *Id.* ¶¶ 148-149. As discussed above, there are no allegations in the complaint even showing that Roe bid on and was denied contracts in his specialized area of "offensive" cyber operations. But in any event, a de facto debarment claim must be supported by allegations of "broad preclu[sion]." *Trifax Corp.*, 314 F.3d at 644; *Phillips*, 390 F. Supp. 3d at 156. It cannot be premised on a plaintiff's supposed lack of access to a special subclass of contract work. For these reasons, Roe has failed to allege a plausible de facto debarment claim and Count 1 must be dismissed.

**B.    Even if Roe plausibly alleged de facto debarment, he is not entitled to relief because the complaint fails to allege a due process violation.**

In Count 1, Roe claims he was functionally debarred without notice or an opportunity to be heard, in violation of the Fifth Amendment's due process guarantee. ¶¶ 168, 181, 187-91. At the outset, because Roe fails to adequately allege any debarment at all, the Court need not decide whether his claimed debarment comported with due process. *See Redondo-Borges*, 421 F.3d at 8 ("It is unnecessary for us to reach the issue of whether there is a constitutionally protected property interest associated with effective debarment because the plaintiffs have not alleged sufficient facts to establish the underlying debarment."). In any event, Roe fails to plausibly allege a due process violation.

The Fifth Amendment prohibits the government from depriving an individual of "life, liberty, or property, without due process of law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-72 (1972). Roe claims that Air Force officials induced a bad faith investigation that tarnished his reputation and infringed his liberty interest in pursuing government contracting opportunities in his field of offensive cyber operations. First Am. Compl. ¶¶ 10, 265.[1]

But an individual does not have a constitutional "liberty" interest in his reputation alone. *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976). Even when an individual claims that defamatory comments rendered him "unable to obtain other appropriate employment" in his field, no liberty interest is infringed if the damage strictly "flows from injury caused by the defendant to a plaintiff's reputation." *Siegert v. Gilley*, 500 U.S. 226, 229, 234 (1991). Accordingly, a plaintiff claiming he was deprived of an employment-related liberty interest must "satisfy what has sometimes been referred to as the 'stigma plus infringement' test." *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996). To fulfill the "stigma" part of the equation, the plaintiff must allege "concrete, false factual representations or assertions, by a [government official], of wrongdoing on the part of the [plaintiff.]" *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). Meanwhile, the "infringement" aspect of the "stigma plus infringement" test requires plausible allegations that the government official "significantly alter[ed] a life, liberty, or property interest" protected by law. *Id*. at 701-702.

---

[1] Roe's original complaint also asserted a deprivation of a "property interest," which he said the defendants caused "by refusing to purchase [his] groundbreaking solutions." Original Compl., Dkt. No. 1, ¶ 141. Roe has apparently abandoned this claim. And for good reason, because "no citizen has a 'right' . . . to do business with the government." *Gonzalez v. Freeman*, 334 U.S. 570, 574 (D.C. Cir. 1964). Rather, a property interest must rest upon "a legitimate claim of entitlement" created by some source of law independent of the Constitution. *Roth*, 408 U.S. at 577. Roe has identified no law guaranteeing him the right to continue his subcontract work or to have the Government purchase his solutions.

Here, Roe alleges that Captain McVeigh falsely claimed he was a "scam artist," his CyberAI solutions were not feasible, and that Roe was an insider security threat. First Am. Compl. ¶¶ 95-100. Even assuming this allegation meets the "stigma" element of the "stigma plus infringement test," Roe's due process claim still falters at the "infringement" stage because he fails to plausibly allege that Captain McVeigh, Mr. Burghard, Lt. Col. Ekholm, or the OSI agent took any adverse employment action against him. Again, Roe alleges these defendants "were furious" at him for suggesting the Captain McVeigh's Project B was obsolete and wasteful. *Id.* ¶ 93. And so, Roe says they engineered a plan to open a baseless criminal investigation to tarnish his reputation and ostracize him from the field of offensive cyber operations. *Id.* ¶¶ 93-94. But nowhere does Roe allege that Captain McVeigh, Mr. Burghard, Lt. Col. Ekholm, or the OSI agent had the power to (or did, in fact) cancel his projects, terminate his subcontract, or otherwise take any tangible employment action against him. Without such allegations, Roe's due process claim is staked solely on injury to his reputation and therefore fails to give rise to a constitutional due process violation.[2]

For similar reasons, Roe's putative Fifth Amendment claim for "unreasonable interference with employment" (Count 8) warrants dismissal. This claim similarly asserts a due process violation based on the theory that Air Force officials infringed his liberty interest in pursuing the "range of [employment] opportunities within offensive cyber operations." First Am. Compl. ¶ 266. Here again, Roe improperly seeks to transform an ordinary common law tort into a constitutional deprivation. *Siegert*, 500 U.S. at 234. The claim fails, in any event, as Roe alleges no facts to support the bald assertion that Air Force officials cut off his employment

---

[2] Roe's APA claim, which appears to be premised on an alleged Fifth Amendment violation, likewise fails in the absence of facts plausibly making out a due process claim.

opportunities by "essentially block[ing] him from ever starting his own business in this field or serving as a consultant without the mask of another employer shielding his name." First Am. Compl. ¶ 268.

**C.    Roe is not otherwise entitled to equitable relief for de facto debarment.**

Count 1 seeks declaratory and injunctive relief. Roe is entitled to neither because, as detailed above, his underlying claim for de facto debarment is without merit. The Declaratory Judgment Act is a procedural device only and creates no "independent cause of action." *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 932 (5th Cir. 2023). Given Roe's failure to plausibly allege an underlying debarment claim, his declaratory judgment action must be dismissed. *See Val-Com Acquisitions Trust v. Chase Home Fin., L.L.C.*, 434 Fed. App'x. 395, 395-396 (5th Cir. 2011) (district court did not err in dismissing request for a declaratory judgment where plaintiff failed to state a viable substantive claim for relief). Similarly, absent a viable substantive legal claim, Roe is not entitled to injunctive relief. *See Ortega v. Ocwen Loan Servicing, LLC*, No. 5:16-CV-00566-XR, 2016 WL 5794803, at *2 (W.D. Tex. Oct. 3, 2016) ("without a viable claim, there is no basis for injunctive relief.").

Apart from his failure to allege facts establishing a plausible claim for debarment, there is another important reason why Roe is not entitled to declaratory or injunctive relief. The Court lacks subject matter jurisdiction to order the particular remedy he seeks — reinstatement to a position or status in the Executive Branch that involves access to classified information. Roe's debarment theory hinges on the allegation that "without hearing or notice of any kind, [he] was 'read out' of the classified Special Access Program (SAP), functionally terminating him from access of any kind to his pending projects or the CyberAI field within the IC that he had developed." First Am. Compl. ¶ 106. For a remedy, he requests an order compelling the

Government to reinstate

> all rights and opportunities afforded to him prior to the debarment . . ., including but not limited to: being treated as any other contractor would without the stigma of Defendants' unlawful conduct, being allowed to associate his name with his products and tools that the Government wants to buy, being allowed to brief on those same products and tools as required, and any other injunctive or equitable relief this Court deems necessary.

*Id.* ¶ 190.

Given that Roe alleges he was effectively debarred from HNCO once he was "read out" of the classified Special Access Program, a request for an injunction restoring him to all rights he previously held as a subcontractor with HNCO necessarily requests an order compelling the Executive Branch to restore his access to classified information. That a federal court may not do. It is well-established, in the Fifth Circuit and others, that courts may not review an Executive Branch determination to revoke a security clearance. *See Perez v. F.B.I.*, 71 F.3d 513, 514-15 (5th Cir. 1995) (per curiam); *El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176, 182 (3d Cir. 2010); *Becerra v. Dalton*, 94 F.3d 145, 148-49 (4th Cir. 1996); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990); *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1413 (10th Cir. 1988); *Hill v. White*, 321 F.3d 1334, 1335-36 (11th Cir. 2003) (per curiam); *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999). Those decisions extend the Supreme Court's holding in *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), that separation of powers concerns foreclosed the Merit Systems Protection Board from exercising authority to review Executive Branch security clearance determinations. *Id.* at 527-29. A claim that would similarly require a court to review the merits of a security clearance determination is likewise not reviewable; indeed, it raises a nonjusticiable political question. *See Hegab v. Long*, 716 F.3d 790, 800 (4th Cir. 2013) (Davis, J., concurring) ("[T]he requirement that a security clearance be afforded a government employee only where it is 'clearly consistent with the interests of national security' simply does not admit of judicial

14

determination; it is a political question, not a judicially reviewable question.").

The same principles govern here. Although Roe alleges that he never lost his security clearance, he nonetheless complains that Air Force officials determined that he no longer should have access to classified information or the programs on which he had been working, *see* First Am. Compl. ¶¶ 105-106. He acknowledges that a clearance alone does not entitle him to access classified information. *See id.* ¶ 105 & n.6. Access also depends on a "need-to-know" classified information in order to perform official duties. Classified National Security Information, 75 Fed. Reg. 707, 720 (Dec. 29, 2009). That underscores the justiciability problem with Roe's claim. Like a claim that would require a court to review a security clearance determination, a claim that requires a court to review the merits of whether someone holding a clearance should receive access to particular classified information or programs raises a non-justiciable political question. *See Baker v. Carr*, 369 U.S. 186, 217 (1962). First, there is "a textually demonstrable constitutional commitment of the issue" to "a coordinate political department," here the Executive Branch. *Id.*; *see also Egan*, 484 U.S. at 527. "The Constitution textually commits to the President the 'authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to . . . access . . . such information.'" *Zummer v. Sallet*, 37 F.4th 996, 1005 (5th Cir. 2022) (*quoting Egan*, 484 U.S. at 527) (citations omitted), *cert. denied,* 215 L. Ed. 2d 188 (Mar. 20, 2023). Like the decision to grant or deny a security clearance, a decision whether or not a cleared employee, contractor, or subcontractor requires access to classified information is a quintessentially executive function involving the Executive's management of classified information and programs. Second, there are no "judicially discoverable and manageable standards" by which courts may assess an Executive Branch official's determination whether an individual has a need to know and handle classified

information. *Baker*, 369 U.S. at 217; *see also Egan*, 484 U.S. at 528-29. Finally, it would make little sense to say that an Executive Branch agency's security clearance determination is not subject to judicial review but that decisions on whether to allow cleared individuals access to particular classified information or programs are reviewable. The latter decision may be inextricable from the former and in all events judicial review would entangle courts in day-to-day decisions over the handling and management of classified information and programs.

It follows then that a court cannot order that an individual, like Roe here, be "reinstated" to some position or status in the Executive Branch that involves accessing classified information. For these reasons, Roe's claim for declaratory and injunctive relief should be dismissed for lack of subject matter jurisdiction.

**II.      Qualified Immunity Bars Roe's Damages Claims under the Privacy Act.**

Counts 2 and 3 of the First Amended Complaint assert claims for damages against Captain McVeigh, Mr. Burghard, Lt. Col. Ekholm, and the OSI agent (the "Individual-Capacity Defendants") under the Privacy Act. First Am. Compl. ¶¶ 192-216. These appear to be the only personal-capacity damages claims asserted in the operative complaint. *Id.* ¶¶ 206, 215. Qualified immunity protects a government official from personal damages liability unless the plaintiff can establish that (1) the defendant violated statutory or constitutional rights, and (2) the right was clearly established at the time the defendant acted. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Here, the Individual-Capacity Defendants are entitled to qualified immunity on Counts 2 and 3 because Roe fails to state a valid claim for relief under the Privacy Act. The Act does not authorize a cause of action against individual government officials. Rather, a cause of action under the Privacy Act may only be asserted against federal government agencies. *See Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989) (defendants were entitled to

qualified immunity on "Privacy Act claim because individuals are not liable for damages under the Act. A plaintiff may only file civil actions against 'the agency' for which 'the United States' is liable.") (quoting 5 U.S.C. § 552a(g)). For these reasons, Counts 2 and 3 must be dismissed.

**III.    Sovereign Immunity Forecloses Roe's FTCA Claims Against the United States.**

In Counts 4-7, 9 and 10, Roe asserts claims for damages against the United States under the FTCA.[3] The United States is immune from suit unless it has expressly waived such immunity and consented to be sued. *Hebert v. United States*, 438 F.3d 483, 487 (5th Cir. 2006). Sovereign immunity is jurisdictional in nature. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA waives sovereign immunity and permits "civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable." *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003).

There are several exceptions to the waiver of sovereign immunity in the FTCA, *see* 28 U.S.C. § 2680(a)-(n). If any exception applies, the court lacks subject matter jurisdiction over the claim. Two exceptions are relevant here.

**A.    Discretionary Function Exception**

Section 2680(a), "commonly referred to as the 'discretionary function exception,' … excepts any claim that is based upon a Government employee's performance of a 'discretionary function or duty ... whether or not the discretion involved be abused.'" *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018) (quoting 28 U.S.C. § 2680(h)). The purpose of the

---

[3] *See* First Am. Compl. Count 4 (Abuse of Process), Count 5 (Conspiracy to Abuse OSI Investigation Process), Count 6 (Intentional Infliction of Emotional Distress), Count 7 (Civil Conspiracy for IIED), Count 9 (Malicious Prosecution), and Count 10 (Conspiracy to Maliciously Prosecute).

discretionary function exception "is to prevent judicial second-guessing of legislative and

administrative decisions grounded in social, economic, and political policy through the medium

of an action in tort." *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 449 (5th Cir. 2012)

(citation omitted). Accordingly, this exception to the FTCA's waiver of sovereign immunity

"insulates the Government from liability if the action challenged in the case involves the

permissible exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531,

537 (1988).

Courts "use a two-part test to determine whether government officials' actions fall within

the discretionary function exception," and "[t]he plaintiff has the burden of establishing that the

test is not satisfied." *Campos*, 888 F.3d at 731 (citation omitted). "First, the relevant employees'

conduct must be a matter of choice." *Id.* (internal quotation marks and citation omitted). In other

words, "the discretionary function exception will not apply when a federal statute, regulation, or

policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S.

at 536. "Second, the choice or judgment must be of the kind that the discretionary function

exception was designed to shield." *Campos*, 888 F.3d at 731 (internal quotation marks and

citation omitted).

Here, both tests are easily met regarding the alleged decision by Air Force officials to

debar Roe from certain contracting opportunities. The conduct at issue was a matter of choice, as

reflected in the very regulation governing debarment proceedings: "*Debarment and suspension

are discretionary actions* that . . . are appropriate to effect th[e] policy" that government agencies

only contract with responsible contractors. 48 C.F.R. § 9.402 (emphasis added). And in similar

contexts, courts have found that the determination of whether or not an entity or individual is a

responsible contractor is the kind of judgment the discretionary function exception is designed to

shield. *See Bosco v. U.S. Army Corps of Engineers, Fort Worth Dist.*, 611 F. Supp. 449, 455 (N.D. Tex. 1985) ("[T]he Court . . . finds merit in Defendants' argument that the [alleged de facto debarment] actions of which Plaintiffs complain fall within the scope of the discretionary function exception.") (second alteration omitted); *accord Lipka v. United States*, 249 F. Supp. 213, 216-217 (N.D.N.Y. 1965) ("The award of a contract by government officials is the exercise of a discretionary function which is excepted from the governmental waiver of immunity . . . embodied in the [FTCA] . . . . [T]he picking and choosing involved in the selection process is the very essence of a discretionary function."). The same is true to the extent Roe complains of internal government investigations, such as an OSI investigation and OPM security clearance review. *See, e.g.*, First Am. Compl. ¶¶ 109, 112, 291. "Decisions on when, where, and how to investigate and whether to prosecute have long been found to be core examples of discretionary conduct for which the United States maintains its immunity." *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) (cleaned up and citation omitted). Roe's FTCA claims are thus barred by the discretionary function exception.

### B.    Intentional Tort Exception

The second FTCA exception relevant here is 28 U.S.C. § 2680(h): the intentional tort exception. Section 2680(h) retains the Government's sovereign immunity for any claim arising out of "libel, slander . . . or interference with contract rights." *Id.* By its plain language, the intentional tort exception bars not only express claims against the United States for libel, slander, or interference with contract rights, but also any claim "arising out of" a set of facts that would support such an action. *Id.* For this reason, "it is the underlying character of the claim that is determinative, not the label utilized by the plaintiff," that determines whether the intentional tort exception applies. *Bannum, Inc.*, 221 F. Supp. 3d at 84; *Atorie Air, Inc. v. F.A.A. of U.S. Dep't of*

*Transp.*, 942 F.2d 954, 958 (5th Cir. 1991) ("[C]auses of action distinct from those excepted under section 2680(h) are nevertheless deemed to be barred when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action.") (internal quotation marks and citation omitted). A plaintiff cannot avoid the jurisdictional limitations of § 2680(h) by artful pleading or rebranding claims to skirt immunity. *See Garcia v. United States*, 776 F.2d 116, 118 (5th Cir. 1985) (rejecting plaintiff's attempt to evade the jurisdiction exception for assault and battery by labeling his claim as one for "negligence.").

Here, notwithstanding the specific labels attached to Roe's FTCA claims, the gravamen of his complaint is that Air Force officials induced a baseless investigation that labeled him a "scam artist" and insider security threat and ultimately led to the cancellation of Roe's existing subcontract and loss of future opportunities to contract with the Air Force. Like the contractor in *Bannum*, Roe's "amended complaint is centered entirely upon alleged interference with existing and prospective contract rights, claims which are specifically barred under the FTCA." *Bannum, Inc.*, 221 F. Supp. 3d at 85. While Roe variously casts his claims as "abuse of process," "infliction of emotional distress," and "malicious prosecution," his claims fall squarely within the exception in § 2680(h) for "interference with contract rights" because the basic core theory of Roe's complaint relates directly to the alleged interference with his ability to contract with the government. *See id.*; *Atorie Air, Inc. v. F.A.A. of U.S. Dep't of Transp.*, 942 F.2d 954, 957 (5th Cir. 1991) (interference with contract exception barred FTCA suit alleging government officials made misrepresentations which resulted in plaintiff's loss of contracts, despite plaintiff's recasting the claim as one for "negligence"); *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1154-55 (D.C. Cir. 1985) (applying contract exception to bar claim that misrepresentations

by government officials caused plaintiff's unlawful de facto debarment from government contracting); *Peter B. v. United States*, 579 F. Supp. 2d 78, 82-83 (D.D.C. 2008) (interference with contract rights exception barred emotional distress, negligence, and other claims of CIA contractor who fundamentally alleged wrongful termination of his contractor status).

Similarly, Roe's fundamental theory that Air Force officials disseminated false information, causing harm to his reputation and loss of esteem, directly implicates the FTCA's exception to liability for libel and slander. *See Bosco*, 611 F. Supp. at 452-453 (applying § 2680(h)'s libel-slander exception to bar claims alleging invasion of privacy and tortious interference with business relations where gravamen of plaintiff's complaint was injury to reputation); *Cooper v. Am. Auto. Ins. Co.*, 978 F.2d 602, 613 (10th Cir. 1992) (libel-slander and interference with contracts exceptions barred contractor's FTCA suit alleging government officials conducted a negligent investigation that harmed the contractor's professional reputation and caused him to lose contracts). For these reasons, the United States retains immunity on all of Roe's FTCA claims, and therefore Counts 4-7, 9 and 10 must be dismissed.

## IV.    **Roe Fails to State a Valid Claim for Relief under the FTCA.**

Roe's FTCA claims against the United States for abuse of process (Count 4), intentional infliction of emotional distress (Count 6), and malicious prosecution (Count 9) fail to allege the essential elements of these torts and accordingly must be dismissed. For each of these substantive tort claims, Roe asserts a corresponding FTCA "conspiracy claim." *See* Counts 5, 7, and 10. However, without a viable underlying cause of action, the conspiracy claims fail too.

### A.    **Abuse of Process**

Under Texas law, the elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of process, a use neither warranted nor authorized by the process; (2)

the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 588 (5th Cir. 1999). "Process" is a term of art. It is "traditionally defined as the writ, summons, mandate, or other process which is used to inform the defendant of the beginning of judicial proceedings against him and to compel his appearance in court." *Snyder v. Byrne*, 770 S.W.2d 65, 69 (Tex. App.—Corpus Christi 1989, no writ). Accordingly, abuse of process under Texas law refers to a "perver[sion] [of] *the court process* to a different end than the purpose of the process itself." *Smart v. United States*, No. EP-10-CV-85-KC, 2011 WL 13324308, at *4 (W.D. Tex. July 19, 2011) (emphasis added). The issuance of legal process is a necessary precondition to the tort. Only after process issues can a defendant abuse it and the elements of the tort come into play. *See Kjellvander v. Citicorp*, 156 F.R.D. 138, 142 (S.D. Tex. 1994). Roe alleges no such issuance of process. He alleges at most an agency investigation. *See* First Am. Compl. ¶¶ 105-112. And so, he has not alleged abuse of process under Texas law.

**B.    <u>Intentional Infliction of Emotional Distress</u>**

Roe also has not sufficiently alleged intentional infliction of emotional distress. Under Texas law, the elements of that tort are: 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (citing Restatement (Second) of Torts § 46 (1965)). "Claims for intentional infliction of emotional distress are disfavored under Texas law . . . ." *Wright v. Wyndham Resort Dev. Corp.*, No. A-09-CV-444-JRN, 2009 WL 10699497, at *1 (W.D. Tex. Aug. 19, 2009). An intentional infliction claim is "a gap-filler claim only to be utilized in such rare instances which a defendant . . . has no other recognized theory of redress."

*Id.* (internal quotation marks and citation omitted). The "tort was never meant to supplant or duplicate existing statutory or common-law remedies." *Id.* (internal quotation marks and citation omitted). Rather, a claim for IIED is available "for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

These limitations on IIED claims under Texas law effectively foreclose Roe's IIED claim here. Roe alleges that Air Force officials "intentionally or recklessly acted to harass, humiliate, threaten, ostracize, and intimidate Dr. Roe to force Dr. Roe from his life work and the field of science and math that he created . . . ." First Am. Compl. ¶ 250. He says people "call[ed] him names" like "scam artist," "fraud," "traitor," and "insider threat." *Id.* ¶ 252. Further, Roe alleges the conduct was particularly outrageous in light of his brilliance as "the foundational creator" of the "new math" that makes AI possible. *Id.* These allegations describe no more than the kind of employment-related dispute that does not rise to intentional infliction of emotional distress. *See Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998) ("the mere fact of termination of employment, even if the termination is wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous under the rigorous standard" for intentional infliction claims); *see also MacArthur v. Univ. of Texas Health Ctr. at Tyler*, 45 F.3d 890, 898 (5th Cir. 1995). Furthermore, because the gravamen of Roe's complaint is a basic government contracting dispute, there is no remedial gap in this case to support the rare invocation of an IIED claim under Texas law.

### C.    <u>Malicious Prosecution</u>

"The tort of malicious prosecution is the malicious institution of a criminal prosecution or civil suit without probable cause." *Kjellvander v. Citicorp*, 156 F.R.D. 138, 143 (S.D. Tex. 1994). Here, Roe has alleged neither the commencement of a criminal prosecution nor a civil lawsuit against him. Rather, his malicious prosecution claim is premised on the alleged bad faith opening of an OSI investigation and alleged OPM security clearance review. *E.g.*, First Am. Compl. ¶¶ 109, 112, 281. An OSI investigation is plainly not a "malicious prosecution." Similarly, no authority supports the novel idea that an Executive Branch security clearance review is an "administrative proceeding" that can give rise to a malicious prosecution claim. Roe's unprecedented security-clearance-review theory of malicious prosecution is not a cognizable claim in any event. Just as there are no "judicially discoverable and manageable standards" by which courts may assess an Executive Branch official's determination to revoke a clearance, *see Baker*, 369 U.S. at 217; *see also Egan*, 484 U.S. at 528-29, there are no such standards by which a court could assess whether Executive Branch officials lack probable cause to initiate a clearance review. Roe thus fails, as a matter of law, to state a malicious prosecution claim under Texas law.

### D.    <u>Conspiracy</u>

Roe's various FTCA conspiracy claims warrant dismissal. *See* Counts 5, 7, and 10. "Under Texas law, civil conspiracy is a derivative tort. If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Because Roe has not alleged any viable underlying claim on which the Court can grant relief, his civil conspiracy claims likewise fail.

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court grant their

Rule 12(b)(1) and (12)(b)(6) motion to dismiss Roe's First Amended Complaint.

Dated: August 4, 2023                    Respectfully Submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney

                                         C. SALVATORE D'ALESSIO, JR.
                                         Director, Torts Branch

                                         RICHARD MONTAGUE
                                         Senior Trial Counsel, Torts Branch

                                         */s/ Reginald M. Skinner*
                                         REGINALD M. SKINNER
                                         Senior Trial Attorney
                                         Virginia State Bar. No. 48785
                                         United States Department of Justice
                                         Torts Branch, Civil Division
                                         P.O. Box 7146, Ben Franklin Station
                                         Washington, D.C. 20044
                                         Tel: (202) 616-3111
                                         Fax: (202) 616-4314
                                         Email: reginald.m.skinner@usdoj.gov

                                         *Counsel for Defendants*

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that, prior to the filing of Defendants' Motion to Dismiss the original complaint, the parties conferred in accordance with the Court's Standing Order in Civil Cases Assigned to Judge Jason Pulliam. Plaintiff did not amend his pleading prior to the filing of Defendants' Motion to Dismiss but filed a First Amended Complaint in lieu of responding to that Motion to Dismiss. Dkt. No. 39. In his First Amended Complaint, Plaintiff seeks relief based on the same factual allegations and legal theories previously addressed during the parties' conferrals and in Defendant's initial Motion to Dismiss. *See* Dkt. Nos. 19; 29.


/s/    *Reginald M. Skinner*
REGINALD M. SKINNER
Senior Trial Attorney
Virginia State Bar. No. 48785
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-3111
Fax: (202) 616-4314
Email: reginald.m.skinner@usdoj.gov