UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. JOHN ROE,

    *Plaintiff*,

v.                                                    Case No.  **SA-22-CV-00869-JKP**

UNITED STATES OF AMERICA,
FRANK KENDALL III, LT. GEN.
KEVIN KENNEDY, (USAF); LT. GEN.
SHAUN Q. MORRIS, (USAF); JOSEPH
DANIEL BURGHARD, (USAF); LT.
COL. JARED EKHOLM, (USAF);
CAPTAIN WILLIAM MCVEIGH,
(USAF); UNKNOWN NAMED USAF
OSI AGENT, JOHN DOES 1-50,

    *Defendants*.


## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a Motion to Dismiss filed by Defendants the United States of America, et al. (hereinafter "the Government"). *See* ECF No. 44. Plaintiff Dr. John Roe filed a response, the Government filed a reply, and Dr. Roe filed a sur-reply. *See* ECF Nos. 47, 50, 55. After due consideration of the parties' briefings and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's motion to dismiss. *See* ECF No. 44. Counts 1 and 8 of Dr. Roe's Amended Complaint (ECF No. 39) shall be allowed to proceed. Counts 2 and 3 are **DISMISSED WITHOUT PREJUDICE** because the individually-named defendants are not subject to suit under the Privacy Act; however, Dr. Roe's request to amend his complaint is

**GRANTED** with respect to Counts 2 and 3 only. Counts 4, 5, 6, 7, 9, and 10 are **DISMISSED WITHOUT PREJUDICE** because the Government is entitled to sovereign immunity.

## BACKGROUND

Plaintiff Dr. John Roe is a scientist who specializes in the fields of artificial intelligence and machine learning. Dr. Roe alleges that, in August 2020, after years of working for the federal government on cyber defense and intelligence projects, he was targeted by U.S. Air Force personnel who were threatened by his success and criticism of their work. Dr. Roe alleges he was invited to serve as a consultant on Air Force "Project A" as a subcontractor to a private commercial firm known as Global Infotek, Inc. ("GiTi"). Dr. Roe alleges that after about a year of consulting on Project A, his achievements threatened Air Force officials whose own projects were eclipsed by Project A. Specifically, Dr. Roe alleges Air Force Captain William McVeigh, who was in charge of "Project B," targeted Dr. Roe because of the comparative success of Project A.

Dr. Roe says Dan Brown, a program manager with an Air Force procurement office known as "HNCO," warned Dr. Roe that Captain McVeigh had a history of targeting government personnel or projects that he perceived threats to Project B. Dr. Roe says that on two occasions he shared his opinion with Air Force personnel that Captain McVeigh's Project B was not viable. In an August 13, 2020 meeting with Dan Brown and Danny Burghard, Director of Special Projects, in which Dr. Roe criticized Project B, Dr. Roe's Project A was selected to receive additional funding. Soon after, Dr. Roe alleges Air Force officials began a campaign to ruin his career. He says Captain McVeigh worked with an agent of the Air Force Office of Special Investigations (OSI) to manufacture a fraudulent criminal investigation into Dr. Roe. A day after the August 13, 2020 meeting, Dr. Roe was informed that the Air Force would terminate

his program and subcontract. Termination of his subcontractor role was completed on August 18, 2020. On August 24, 2020, the OSI agent directed Dr. Roe to report to Joint Base San Antonio-Lackland for an interview, during which Dr. Roe was accused of being an insider security threat and violating federal law. At the meeting, Dr. Roe was "read out" of his project and informed that the Office of Personnel Management (OPM) had opened an administrative adjudication to remove his security clearance. Dr. Roe further alleges the OSI agent shared information about the investigation with Captain McVeigh, who improperly shared the information with others in HNCO.

Dr. Roe alleges both the OSI investigation and OPM adjudication were ultimately resolved in his favor; however, he remains blacklisted from HNCO as a result. Dan Brown allegedly told Dr. Roe he could "never work in HNCO again," or words to that effect, and Dr. Roe alleges he has been de facto debarred from future government contracting ever since. Dr. Roe says he has been forced to work behind the scenes, allowing colleagues to present and take credit for his work because of his debarment.

Dr. Roe's amended complaint asserts ten causes of action which fit into three categories: (1) Counts 1 and 8 are claims for equitable relief under the Declaratory Judgment Act, the Administrative Procedure Act (APA), and the Fifth Amendment for de facto debarment and unreasonable interference with employment; (2) Counts 2 and 3 are claims for damages under the Privacy Act; (3) Counts 4, 5, 6, 7, 9, and 10 are claims for damages under the Federal Tort Claims Act (FTCA). The Government argues Dr. Roe's complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because: (1) Dr. Roe has failed to state a claim for either de facto debarment or unreasonable interference with employment; (2) qualified

immunity bars Dr. Roe's Privacy Act claims; and (3) sovereign immunity forecloses Dr. Roe's FTCA claims against the United States.

The Court finds Dr. Roe plausibly alleged his claims for equitable relief under Counts 1 and 8, so those claims shall proceed. The Court agrees with the Government, however, that Dr. Roe's remaining claims are barred by qualified immunity and sovereign immunity. The Court further grants Dr. Roe's request for leave to amend his complaint as to his Privacy Act claims only.

## LEGAL STANDARD

## I.      Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). But given overlap between the merits and jurisdiction in the FTCA context, courts may consider them together and may issue a decision under Rule 12(b)(1), 12(b)(6), or both. *Brownback v. King*, 141 S. Ct. 740, 750 & n.8 (2021).

Although "a federal court always has jurisdiction to determine its own jurisdiction," *United States v. Ruiz*, 536 U.S. 622, 628 (2002), it may not otherwise take judicial action in the

absence of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). With that said, however, "a federal court can decide an element of an FTCA claim on the merits if that element is also jurisdictional." *Brownback*, 141 S. Ct. at 750. When "a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim" and it does not matter whether the dismissal is under Rule 12(b)(1), Rule 12(b)(6), or both. *Id*. at 750 n.8. Naturally, when there is no such "overlap between merits and jurisdiction," subject matter jurisdiction might be lacking "for non-merits reasons, in which case [the court] must dismiss the case under just Rule 12(b)(1)." *Id*.

## II.     Rule 12(b)(6)

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate

"beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d at 324).

A Complaint should only be dismissed under Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately

dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## ANALYSIS

Dr. Roe asserts causes of action in three categories: (1) claims for equitable relief under the Declaratory Judgment Act, the APA, and the Fifth Amendment for de facto debarment and unreasonable interference with employment; (2) claims for damages under the Privacy Act; and (3) claims for damages under the FTCA. The Government argues Dr. Roe's complaint should be dismissed because: (1) Dr. Roe has failed to state a claim for either de facto debarment or unreasonable interference with employment; (2) qualified immunity bars Dr. Roe's damages claims under the Privacy Act; and (3) sovereign immunity forecloses Dr. Roe's FTCA claims against the United States. The Court considers each of these arguments, in turn, below.

## I.      Equitable Relief

Dr. Roe seeks injunctive relief and a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C §§ 2201, *et. seq.*, the Administrative Procedures Act (APA), 5 U.S.C. § 706, and the Fifth Amendment to the Constitution, alleging de facto debarment (Count 1) and unreasonable interference with employment (Count 8). The Court considers both counts together because they rely on the same factual allegations. The Government argues Dr. Roe fails to state a claim for equitable relief for the following reasons: (1) Dr. Roe has not alleged sufficient facts to establish a plausible de facto debarment claim; (2) Dr. Roe fails to allege a due process violation; and (3) Dr. Roe is not otherwise entitled to equitable relief for de facto debarment. The Court considers each of these reasons below, ultimately rejecting the Government's arguments and concluding Dr. Roe has alleged sufficient facts for his equitable relief claims to proceed.

A.     **De Facto Debarment**

The Government argues Dr. Roe's amended complaint fails to meet the standard for establishing a de facto debarment claim. "Debarment is an administrative action which excludes nonresponsible contractors from government contracting." *Caiola v. Carroll*, 851 F.2d 395, 397 (D.C. Cir. 1988). Government regulations specify that "[a]gencies shall solicit offers from, award contracts to, and consent to subcontracts with responsible contractors only. Debarment and suspension are discretionary actions that … effectuate this policy." 48 C.F.R. § 9.402. A "debarring official" may formally debar a contractor for a variety of reasons, including an "offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a government contractor or subcontractor." 48 C.F.R. § 9.406-2. A debarment action must follow the procedural requirements in 48 C.F.R. § 9.406-3, including notice to the contractor of the proposed debarment and the reasons why the action is being considered.

Courts have recognized that "there are circumstances when the government could effectively bar a contractor from receiving government business without invoking formal debarment proceedings…" *Bannum, Inc. v. Samuels*, 221 F. Supp. 3d 74, 86 (D.D.C. 2016). So-called "constructive" or "de facto" debarment involves "government stigmatization that broadly precludes individuals or corporations from a chosen trade or business" and thereby "depriv[es] them of liberty in violation of the Due Process Clause." *Id*. (quoting *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003)). Courts "have established a high standard for plaintiffs to meet when trying to establish a de facto debarment claim." *TLT Const. Corp. v. United States*, 50 Fed. Cl. 212, 215 (2001); *IFONE NEDA Internet Serv., Inc. v. Army & Air Force Exch. Serv.*, No. 4:21-CV-330, 2021 WL 1148345, at *4 (S.D. Tex. Mar. 25, 2021).

"Two options exist to establish a de facto debarment claim: 1) by an agency's statement that it will not award the contractor future contracts; or 2) by an agency's conduct demonstrating that it will not award the contractor future contracts." *Phillips v. Mabus*, 894 F. Supp. 2d 71, 81 (D.D.C. 2012) (quoting *TLT Const. Corp.*, 50 Fed. Cl. 212, 215–216).

In this case, Dr. Roe's amended complaint supports his claim for de facto debarment by alleging HNCO project manager Dan Brown stated, "you can never work in HNCO again," or words to that effect. *See* ECF No. 39 at ¶ 129. Dr. Roe further alleges that on multiple occasions Air Force officials indicated Dr. Roe could not be present or have his name associated with work presented to the agency. *See* ECF No. 47 at 23 (summarizing allegations). Taken together, Dr. Roe says these statements demonstrate his systemic exclusion from government contracting work.

The Government argues Dr. Roe failed to meet this "high standard" for plausibly alleging a de facto debarment claim because he does not allege he actually bid on and was denied any government contracts after being debarred. In so doing, the Government encourages the Court to apply a standard unsupported by the caselaw. Indeed, as Dr. Roe points out, courts have found "[a] claim for de facto debarment may be justiciable absent the formality of plaintiffs bidding on and being denied future contracts after the alleged debarment." *Phillips v. Mabus*, 894 F.Supp.2d at 84 (citing *Dynamic Aviation v. Dep't of Interior*, 898 F.Supp. 11, 13 (D.D.C.1995). To establish a viable claim for de facto debarment, a plaintiff must allege either an agency's statement that it will not award the contractor future contracts or agency conduct demonstrating that it will not award the contractor future contracts. *Id*. at 81. The disjunctive "or" means there are two independent bases upon which de facto debarment may be established. Here, Dr. Roe alleged Dan Brown made a statement that Dr. Roe can "never work in HNCO again," or words

to that effect, and was subsequently told he could not participate in meetings or have his name associated with his work. These allegations are sufficient to meet Dr. Roe's pleading burden, even in the absence of any allegations about denial of future bids.

The Government further argues Dr. Roe failed to allege he was broadly shut out of opportunities to contract government-wide. Here again, the Government invites the Court to apply a standard unsupported by the caselaw. "To show that an agency's conduct amounts to debarment, the plaintiff '[does] not have to prove that it [has] lost 100% of its work,' but only 'that the government's actions were aimed at the overall status of the plaintiff as a contractor, specifically at plaintiff receiving new contracts." *IFONE v. Army & Air Force Exch. Serv.*, 2021 WL 1148345, at *4. (citing *Phillips v. Mabus*, 894 F. Supp. 2d at 82 (emphasis added)). In other words, "de facto debarment may lie where there has been exclusion from virtually all government work for a fixed period of time, ... or where the government's conduct has the broad effect of largely precluding plaintiffs from pursuing government work." *Id.* (internal modifications and citations omitted). In this case, Dr. Roe alleges he "now stands barred from all interaction within the USG on offensive cyber work, regardless of agency." *See* ECF No. 39 at ¶ 148. The Court finds this allegation, taken together with alleged statements by Air Force officials that Dr. Roe's name cannot be associated with his work, is sufficient for Dr. Roe's claim to proceed at this stage of the litigation.

### B.   Due Process Violation

The Government argues Dr. Roe fails to allege his Fifth Amendment rights were violated. The Fifth Amendment prohibits the government from depriving an individual of "life, liberty, or property, without due process of law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–72 (1972) (quoting U.S. Const. amend. V). Dr. Roe claims Air Force officials induced a bad

faith investigation that tarnished his reputation and infringed his liberty interest in pursuing government contracting opportunities in his field of offensive cyber operations. *See* ECF No. 39 at ¶¶ 10, 295.1. The Government argues Dr. Roe's pleading is deficient because an individual does not have a constitutional "liberty" interest in his reputation alone. *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976).

Even when an individual claims that defamatory comments rendered him "unable to obtain other appropriate employment" in his field, no liberty interest is infringed if the damage strictly "flows from injury caused by the defendant to a plaintiff's reputation." *Siegert v. Gilley*, 500 U.S. 226, 229, 234 (1991). Accordingly, a plaintiff claiming he was deprived of an employment-related liberty interest must "satisfy what has sometimes been referred to as the 'stigma plus infringement' test." *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996). To fulfill the "stigma" part of the equation, the plaintiff must allege "concrete, false factual representations or assertions, by a [government official], of wrongdoing on the part of the [plaintiff.]" *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). Meanwhile, the "infringement" aspect of the "stigma plus infringement" test requires plausible allegations that the government official "significantly alter[ed] a life, liberty, or property interest" protected by law. *Id.* at 701–702.

Dr. Roe does not allege he suffered reputational damages alone. Indeed, Dr. Roe alleges he was subjected to a fraudulent investigation that harmed his reputation and resulted in de facto debarment, causing him to lose his ability to contract with the government. *See* ECF No. 39 at ¶¶ 95–100. Dr. Roe's alleged de facto debarment is sufficient to establish a due process violation. "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the Government is doing to him, notice and an opportunity to be heard are essential." *Bd. of Regents*

*v. Roth*, 408 U.S. at 573. The Court, therefore, finds Dr. Roe has alleged sufficient facts for his Fifth Amendment procedural due process claim to proceed at this stage of the litigation.

### C.    Available Relief

The Government finally argues the Court lacks subject matter jurisdiction to order the remedy Dr. Roe seeks. Specifically, the Government characterizes Dr. Roe's amended complaint as seeking reinstatement to a position or status in the Executive Branch that involves access to classified information. To support its argument, the Government cites caselaw indicating courts may not review an Executive Branch determination to revoke a security clearance. *See Perez v. F.B.I.*, 71 F.3d 513, 514–15 (5th Cir. 1995) (per curiam). Dr. Roe responds with caselaw supporting the premise that courts may review a government agency's decision not to grant access to classified program. *See Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003); *see also Greene v. McElroy*, 360 U.S. 474 (1959).

The Court need not reach the question, however, because Dr. Roe explicitly does not seek reinstatement to a classified program. Paragraph 161 of the amended complaint reads: "At the outset, Plaintiff's Count 1 does not complain of, or seek reinstatement to, a government agency or classified program." *See* ECF No. 39. That paragraph goes on to explain, "Count 1 seeks termination of an unlawful de facto debarment that violates the Fifth Amendment to the Constitution and the regular opportunities afforded all contractors to freely contract without an unlawful stigma attached." *Id*. Dr. Roe additionally requests alternative relief in the form of a debarment hearing where he could rebut any allegations lodged against him. Courts have granted similar relief when finding a plaintiff was constructively debarred. *See e.g. Leslie & Elliott Co. v. Garrett*, 732 F. Supp. 191 (D.D.C. 1990); *see also Art-Metal USA, Inc. v. Solomon*, 473 F. Supp.

1 (D.D.C. 1978). As Dr. Roe's requested relief fits squarely within the Court's authority, the Court rejects the Government's argument that Dr. Roe presents a nonjusticiable question.

## II.     Privacy Act

Counts 2 and 3 of Dr. Roe's complaint bring claims against individually-named Air Force officials for their alleged violations of the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1). The Government argues the individually-named defendants are entitled to qualified immunity because government officials cannot be sued in their individual capacity under the Privacy Act. Qualified immunity protects a government official from liability unless the plaintiff can establish: (1) the defendant violated the plaintiff's statutory or constitutional rights, and (2) the right was clearly established at the time the defendant acted. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). In this case, the Government argues Dr. Roe failed to adequately allege the individually-named defendants violated Dr. Roe's statutory rights, citing well established caselaw for the prospect that a cause of action under the Privacy Act can only be asserted against federal government agencies, not individuals. *See Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989). The Fifth Circuit has held that "individuals are not liable for damages under the [Privacy] Act. A plaintiff may only file civil actions against 'the agency' for which 'the United States' is liable." *Id*. (quoting 5 U.S.C. § 522a(g)).

Dr. Roe concedes that the individually-named defendants cannot be sued in their individual capacities. *See* ECF No. 47 at 7–8 (citing *Egbert v. Boule*, 142 S.Ct. 1793, 1823 (2022)). Dr. Roe explains that he attempted to cure this defect in his pleading by changing language in his amended complaint to clarify that the individually-named defendants are sued in their official, not individual capacities. *Id*. He further acknowledges that some ambiguity on this point remains in the amended complaint due to his failure to completely remove all references to

the individually-named defendants being sued in their individual capacities. *Id*. Dr. Roe asks that any potential ambiguity be construed in his favor and further requests that the Court grant him leave to amend his complaint, should it wish for the ambiguities to be clarified. *Id*. at n.5 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Dr. Roe argues that because an official-capacity suit is treated as a suit against the entity, his Privacy Act allegations are actually leveled against the United States even though the named defendants are individual officials. *Id*. at 8 (citing *Kentucky v. Graham*, 473 U.S. at 165).

The Government replies to Dr. Roe's argument by suggesting the Privacy Act includes no waiver of sovereign immunity allowing him to sue the United States. This argument by the Government is odd because the Government's own motion cites the section of the Privacy Act which subjects the United States to suit. Specifically, as Dr. Roe points out in his sur-reply, 5 U.S.C. § 522a(g)(4)(A)-(B) provides that: "In any suit brought under the [relevant provisions of the Privacy Act] in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual…" for actual damages and attorney fees. *See* ECF No. 55 at 2; *see also* ECF No. 44 at 23.

The Court finds the statute by its plain language includes a cause of action against the United States for Privacy Act violations. What is less clear is whether Dr. Roe has plausibly alleged such a claim. Dr. Roe's amended complaint as currently drafted alleges the individually-named Air Force defendants engaged in conduct violating the Privacy Act. Even if, as Dr. Roe suggests, the Court construes the amended complaint as an official-capacity suit against the United States, the complaint's allegations do not clearly describe how the United States is liable under § 522a(g). The Court is typically reluctant to give plaintiffs an additional opportunity to amend their complaints after the initial conference-and-amendment process established in the

Court's standing order. However, this is the rare case where it appears a more careful drafting might overcome the deficiencies on which dismissal is sought. *Hitt*, 561 F.2d at 608–09. The Court, therefore, will allow Dr. Roe one final opportunity to amend his complaint to clarify his Privacy Act claims only.

The parties agree the individually-named defendants are not subject to suit under the Privacy Act; therefore, the Court grants the Government's motion as to the individually-named defendants and dismisses Dr. Roe's claims against them. The Court will, however, grant Dr. Roe's request to amend his complaint to re-urge his Privacy Act claims against the Government. The Court also grants the Government leave to file a motion to dismiss those claims and establishes a briefing schedule for any such motion at the end of this opinion.

## III.   FTCA

Dr. Roe brings six counts against the Government under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et. seq*.: Count 4 (Abuse of OSI Investigation Process), Count 5 (Conspiracy to Abuse OSI Investigation Process), Count 6 (Intentional Infliction of Emotional Distress), Count 7 (Civil Conspiracy for IIED), Count 9 (Malicious Prosecution), and Count 10 (Conspiracy to Maliciously Prosecute). *See* ECF No. 39. The Government argues sovereign immunity forecloses Dr. Roe's FTCA claims, citing the discretionary function and intentional tort exceptions to the FTCA sovereign immunity waiver. The Government further argues Dr. Roe failed to state a valid claim for relief under the FTCA. Consistent with the standard practice of considering a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits, the Court begins its analysis with the Government's sovereign immunity argument. *See e.g. Wolcott v. Sebelius*, 635 F.3d at 762.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA provides consent to suit "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)). This waiver of sovereign immunity is subject to a number of exceptions. *See* 28 U.S.C. § 2680(a)-(n). If any exception applies, the Court lacks subject matter jurisdiction over the claim.

In general, courts "strictly construe" waivers of sovereign immunity and "resolv[e] all ambiguities in favor of the sovereign." *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020). Nevertheless, "unduly generous interpretations of the exceptions to the FTCA run the risk of defeating the central purpose of the FTCA, making application of the general rule improper in this context." *Id.* (internal quotations, brackets, and citation omitted). A court's "objective when construing an exception to the FTCA is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Id.* (omitting internal quotation marks) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)). Courts "do not construe exceptions to the FTCA in favor of any particular party." *Id.* Consistent with general jurisdictional principles, "plaintiffs bear the burden of showing Congress's unequivocal waiver of sovereign immunity." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010).

Here, the Government argues two exceptions to the FTCA's waiver of sovereign immunity apply: the discretionary function exception and the intentional tort exception. The discretionary function exception "excepts any claim that is based upon a Government

employee's performance of a 'discretionary function or duty … whether or not the discretion involved is abused.'" *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018) (quoting 28 U.S.C. § 2680(h)). The purpose of the discretionary function exception "is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *In re Katrina Canal Breachers Litig.*, 696 F.3d 436, 449 (5th Cir. 2012) (citation omitted). Accordingly, the discretionary function exception "insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988). Courts employ a two-part test to determine whether government officials' actions fall within the discretionary function exception: (1) "the relevant employees' conduct must be a matter of choice" and (2) "the choice or judgment must be of the kind that the discretionary function exception was designed to shield." *Campos*, 888 F.3d 731. The discretionary function exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536.

The Government argues the Air Force officials' alleged conduct in this case was a matter of choice because the regulations governing debarment proceedings explicitly say debarment is a discretionary function. *See* 48 C.F.R. § 9.402. The Government further cites cases finding alleged de facto debarment is within the scope of the discretionary function exception. *See e.g. Bosco v. U.S. Army Corps of Engineers, Fort Worth Dist.*, 611 F.Supp. 449, 455 (N.D. Tex. 1985); *accord Lipka v. United States*, 249 F.Supp. 213, 216–17 (N.D.N.Y. 1965). Dr. Roe does not dispute that debarment proceedings are discretionary functions which invoke the discretionary function exception; however, he challenges the application of the exception given his assertion that Air Force officials violated federal law, including federal whistleblower

statutes, Executive Branch anti-retaliation policies, and the Uniform Code of Military Justice. The Government correctly notes that these alleged violations of the law were not included in Dr. Roe's complaint and therefore cannot be considered by the Court on a motion to dismiss. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Jaraba v. Blinken*, 568 F.Supp. 3d 720, 727 (W.D. Tex. 2021) (alteration omitted) (collecting cases). Furthermore, none of the laws Dr. Roe cites apply because they fail to prescribe a course of action an employee must follow in awarding contracts. That being said, Dr. Roe is correct that the Government's alleged due process violation would vitiate the discretionary function exception. If Air Force officials failed to follow established debarment procedures in constructively debarring Dr. Roe without due process, as he alleges they did, they would not be protected by the discretionary function exception. The Court therefore turns its attention to the Government's next argument, regarding the intentional tort exception.

The intentional tort exception retains the Government's sovereign immunity for any claim arising out of "libel, slander … or interference with contract rights." 28 U.S.C. § 2680(h). The intentional tort exception bars not only express claims against the United States for libel, slander, or interference with contract rights, but also any claim "arising out of" a set of facts that would support such an action. *Id.* A plaintiff cannot through artful pleading avoid the jurisdictional limitations of § 2680(h). *See Garcia v. United States*, 776 F.2d 116, 118 (5th Cir. 1985). Courts look to the gravamen of the complaint to determine whether those limitations apply. *See Atorie Air, Inc. v. F.A.A. of U.S. Dep't of Transp.*, 942 F.2d 954, 958 (5th Cir. 1991). In this case, the gravamen of Dr. Roe's complaint sounds in contract: he alleges Air Force officials who were threatened by the success of his project and his criticism of their work initiated a baseless investigation to deprive him of the opportunity to contract with the

government. All of the torts Dr. Roe alleges—abuse of process, intentional infliction of emotional distress, malicious prosecution, and conspiracy to commit those torts—arise out of Dr. Roe's underlying claim that the Government improperly interfered with his right to contract with the federal government, which is explicitly barred under the FTCA. For this reason, the Court finds the Government is entitled to sovereign immunity on Dr. Roe's FTCA claims and dismisses those claims under Rule 12(b)(1) for want of jurisdiction.

Since the Court finds it lacks jurisdiction, it will not address the Government's merits-based Rule 12(b)(6) arguments regarding Dr. Roe's failure to state a viable claim. When jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

## CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's motion to dismiss. *See* ECF No. 44. The Court finds Dr. Roe has plausibly alleged sufficient facts for his de facto debarment (Count 1) and unreasonable interference with employment (Count 8) claims to proceed. The Court finds Dr. Roe failed to allege sufficient facts for his Privacy Act claims to proceed (Counts 2 and 3); however, the Court grants Dr. Roe's request to amend his complaint with respect to those claims only. Finally, the Court finds the Government is entitled to sovereign immunity with respect to Dr. Roe's claims under the FTCA and, accordingly, dismisses with prejudice Counts 4, 5, 6, 7, 9, and 10.

**IT IS THERERFORE ORDERED THAT** the Government's motion is **DENIED** with respect to Counts 1 and 8 of Dr. Roe's Amended Complaint. *See* ECF No. 39. Counts 1 and 8 shall be allowed to proceed.

**IT IS FURTHER ORDERED THAT** the Government's motion is **GRANTED** with respect to Counts 2 and 3 of Dr. Roe's Amended Complaint. The Court **DISMISSES WITHOUT PREJUDICE** Counts 2 and 3 because the individually-named defendants are not subject to suit in their individual capacities under the Privacy Act.

**IT IS FURTHER ORDERED THAT** the Court **GRANTS** Dr. Roe's request to amend his complaint with respect to Counts 2 and 3 only. Dr. Roe may file an amended complaint, **on or before March 18, 2024**, alleging his Privacy Act claims against the Government. The Court grants the Government leave to file a Rule 12 motion to dismiss Dr. Roe's Privacy Act claims, **on or before April 1, 2024**. Any response to any such motion shall be filed by Dr. Roe **on or before April 8, 2024**. Any reply shall be filed by the Government **on or before April 15, 2024**.

**IT IS FINALLY ORDERED THAT** Counts 4, 5, 6, 7, 9 and 10 are **DISMISSED WITHOUT PREJUDICE** because the Government is entitled to sovereign immunity and the Court lacks jurisdiction.

It is so ORDERED.
SIGNED this 4th day of March, 2024.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE