UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DR. JOHN ROE,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>      Defendants. | Civil Action No. 5:22-CV-00869-JKP-HJB |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY**

The United States Defendants reply in support of their Motion to Exclude Plaintiff's Expert Testimony (ECF No. 103) and state as follows:

**I.      Plaintiff's methodology is unreliable.**

Defendants established in their motion that Plaintiff used a methodology devoid of reliability. Mot. at 14-19. First, his methodology lacked any external validation. Plaintiff could not identify a single journal article, textbook, or other scholarly resource that had ever implemented or even discussed his damages methodology in any context. Second, the methodology itself is flawed. Inputting the same search parameters Plaintiff used for his calculation produced contracts not attributable to HNCO, and thus undermined the foundation of his damages conclusion. Finally, Plaintiff incorporated into his analysis self-serving assumptions that run counter to common sense and transgress basic precepts of market analysis. Nothing in Plaintiff's opposition overcomes any of these defects and the attending result—exclusion of the proposed expert testimony.

### A. Plaintiff has not met his burden to validate his methodology.

Plaintiff does not squarely address the absence of validation to support his methodology. Instead, he side-steps the issue with an incorrect legal premise. He argues that "independent validation is only a factor that is helpful in determining reliability, but it is not outcome determinative." Plaintiff's Response to Defendants' Motion to Exclude Plaintiff's Expert Testimony at 11, ECF No. 107 (Opp'n). The Fifth Circuit explicitly holds the opposite. Rule 702 "requires some objective, independent validation of the expert's methodology" to "demonstrate that the expert's findings and conclusions are based on the scientific method[.]" *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("[T]he party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.") (on remand)).

Plaintiff hedges his misstatement of the law with generalities that expose his failure to grasp the "based on sound science" or other technical knowledge requirement. He asserts that he "researched hundreds of marketing analysis techniques" and ultimately used a "fairly common method" that is "generally recognized by the industry[.]" Opp'n at 9-10. But critically absent is any discussion of *who* uses this purportedly "common method," *what* makes it is "generally recognized," and *when* has anyone ever implemented the methodology. *See Sportsband Network Recovery Fund, Inc. v. PGA Tour, Inc.*, 136 F.3d 1329 (5th Cir. 1998) (affirming exclusion of expert based on district court's "determin[ation] that there was no evidence that [the expert's lost profit] methodology had been authoritatively expressed by other proclaimed experts in the field"). As a result, Plaintiff falls short of his burden to demonstrate that his methodology is "ground[ed] in the methods and procedures of science," *Daubert v. Merrell Dow Pharms., Inc.*,

2

509 U.S. 579, 590 (1993), or other technical or specialized knowledge, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). His assurances otherwise are classic examples of insufficient efforts to meet that burden. *See Moore*, 151 F.3d at 276 ("The expert's assurances that he has utilized generally accepted scientific methodology is insufficient.").

### B.    Plaintiff's methodology is flawed.

Plaintiff argues that "[t]here is no evidence – even a shred – that Dr. Roe's methodology is incorrect or otherwise unreliable." Opp'n at 10. Not so. The methodology relies upon intrinsically flawed methods or procedures that, by virtue of their imprecision, capture irrelevant contracts that pad the damages figures. Analysis of Kudu Dynamics LLC proved the point. Inputting the exact search parameters Plaintiff used captured contracts not with HNCO and contracts that were not necessarily for offensive CyberAI tools. *See* Mot. at 16. This reveals a fatal "analytical gap between the data and the opinion proffered," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), and thus undermines the foundation of the damages opinion.[1]

Plaintiff ultimately conceded the data disconnect in his deposition. *See* Defs.' Ex. 6, Dep. at 86:21-23 ("Q: [] Am I correct that your forecast [of] damages is based in part on contracts that were not with HNCO? A: Correct."); 70:19-21 ("Q: [] So, none of that information on USA Spending tells you whether it's defensive or offensive, is that correct? A: That's correct."). And in his opposition, he failed to directly address it, which also functions as a concession. *See Ross v. Baylor Coll. of Med.*, No. CIV. A. H-08-3080, 2010 WL 2710397, at *8 n. 54 (S.D. Tex. July 7,

---

[1]    Likewise, Plaintiff's assertion that "his testimony is necessary to help the trier of fact understand the issues," Opp'n at 9, falters due to this disconnect. *See Daubert*, 509 U.S. at 591 (requiring that the "expert testimony proffered in the case is sufficiently tied to the facts of the case").

Case 5:22-cv-00869-JKP   Document 109   Filed 06/25/25   Page 4 of 8

2010) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (collecting cases).

The closest Plaintiff comes to a response is his analysis of *Sulak v. American Eurocopter Corp.*, 2012 WL 6567237 (N.D. Tex. 2012). *See* Opp'n at 11. In *Sulak*, the defendant argued that an expert "did not subject his opinions to appropriate scientific testing in developing his theory, which renders them inadmissible." *Id.* at *9. The court disagreed, holding that "testing is only one factor listed in *Daubert*." *Id*. Plaintiff asserts that Defendants have made the same reasoning error. Opp'n at 12. But Plaintiff has missed the point. Defendants did not argue that Plaintiff's failure to test his methodology invalidated his opinion. Instead, Defendants argued that the testing of his methodology *that did occur* revealed fundamental flaws in its construction. Mot. at 16. This testing, unlike the *Daubert* factor at issue in *Sulak*, invalidates the report's methodology because it shows that Plaintiff's results could not be replicated. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("Someone else using the same data and methods must be able to replicate the result.") (Easterbrook, J.). Replication of results is "a key inquiry illuminating whether a methodology is reliable." *Bibbs v. Molson Coors Beverage Co., USA, LLC*, 699 F. Supp. 3d 509, 512 (N.D. Tex. 2023).

### C. Plaintiff has incorrectly minimized his burden to avoid Rule 702's admissibility requirements.

Plaintiff's reliability argument contains two overarching assertions. He claims that Defendants have "confused weight of evidence [with] admissibility of evidence" and have "not offer[ed] any evidence or competing theory" that would undermine Plaintiff's methodology. Opp'n at 10, 12. Those assertions betray a misunderstanding of the standard and burden of proof, which the 2023 amendments to Rule 702 clarify. Now the rule explicitly states that the proponent of an expert must "demonstrate[] to the court that it is more likely than not" that the proposed

opinion meets the enumerated reliability requirements. Fed. R. Evid. 702.; *see* Fed. R. Evid. 702 advisory committee's note to 2023 amendment. "This is [a] preponderance of the evidence standard" that Plaintiff, *id*., not Defendants, must satisfy through affirmative evidence. Plaintiff's attempt to characterize that burden as an issue of weight as opposed to admissibility disregards the purpose of the amendment:

> [M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a).

*Id*. Here, Plaintiff invites the same error by characterizing his burden as merely a weight issue for trial when in fact he must establish a valid methodology before trial and by a preponderance of the evidence.

Plaintiff's argument also fails on its own terms. Defendants have elicited "competing evidence" that invalidates the methodology. During Plaintiff's deposition, Defendants established that Plaintiff's methodology lacked basic features that would accompany any market analysis or damages opinion:

  i. <u>No record of market participation</u>. Plaintiff assumed he would have been a market participant even though he has never bid on a prime contract, let alone any of the 77 contracts in his report. Def.'s Ex. 6, Dep. at 101:16 ("I have never bid on a prime contract."); 91:15-17 ("Q: [] Of the 77 contracts in this expert report, how many did you bid on? A: Zero.").

  ii. <u>Total absence of competition</u>. Plaintiff not only assumed that he could compete with the five companies in his market analysis, but also that "[h]ead to head, every time" he would have won each of the 77 contracts held by them. *Id*. at 94:25 – 95:2.

  iii. <u>No barriers to entry</u>. *Id*. at 43:18-22 ("Q: Does your expert report include any information about barriers to entry? A: No. Q: Do you think that was necessary to include? A: No.").

   iv.  <u>No discounting of income</u>. Plaintiff did not believe his income the year before his damages or the first year of his damages had any bearing on his analysis. *Id.* at 106:24 – 107:5. ("Q: You're also forecasting your anticipated earning in this expert report, is that correct? A: That's correct. Q: Do you not think that it is important to know what someone made in order to forecast what they could have made? A: No.").

Plaintiff's failure to acknowledge and analyze these concepts in his report further invalidates his methodology.

**II.** **<u>Plaintiff fails to qualify as an expert in the field for which he offers an opinion.</u>**

  Expertise under Rule 702 is necessarily field specific. Only by reference to a field can a court ensure that an expert employs the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999); *see Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (expert must be "qualified to testify in a particular field or on a given subject"). Defendants established in their motion that Plaintiff failed to qualify as an economic expert for this reason. Mot. at 12-13. His expertise in developing CyberAI relates to a body of science distinct from the fields of economic modeling and damages forecasting. This holds true regardless of the fact that the modeling and forecasting concerned the CyberAI market. These fields still remain vastly different from the CyberAI field, and thus the "gulf between" them remains "wide." *See Jenkins v. Helmerich & Payne Int'l Drilling Co.*, 577 F. Supp. 3d 587, 593 (S.D. Tex. 2021) (collecting cases to analyze "[w]hat degree of fit is required between an expert's qualifications and the subject of their testimony").

  Plaintiff responds that he has an IQ of 174 and that "[t]here can be no doubt that [Plaintiff] is the most educated man in nearly every room that he enters." Opp'n at 6-7. He then points to vague recollections of his alleged experience at Leidos without addressing the deficits

in that experience, including its inapplicability, or its complete absence from his CV. *See* Mot. at 4 ("Neither [the export report or CV] reflects any training or experience in economics, business, accounting, or any related field."); *id.* at 14 ("The alleged marketing at Leidos had an entirely different focus than here" because the expert report "did not contain any competitive analysis."). As discussed in the opening brief, none of that buttresses Plaintiff's qualifications under Rule 702. *See* Mot. at 12-14.

Plaintiff also doubles down on these arguments with a new variation of them. He asserts that his background places him, and only him, uniquely "at the intersection of both fields[.]" Opp'n at 8. This makes his opinion more valuable than that of an "ordinary market analyst" because such an analyst lacks "the unique knowledge and experience necessary to understand the complexities of the contracts." *Id*. at 7. While the assertion is new, the tack is not. Once again Plaintiff attempts to circumvent Rule 702's requirements by proclaiming his own excellence.[2] But his belief that his experience is "exceptionally rare as compared to the rest of the world" is beside the point. *Id*. An expert "may be the world's leading student of [his field], but if he could or would not explain how his conclusions met the Rule's requirements, he was not entitled to give expert testimony." *Zenith Elecs. Corp.*, 395 F.3d at 419. Qualification under Rule 702 rests not on being special, but rather on satisfying recognized markers of expertise in the field at issue. Plaintiff has no such markers in market analysis or damages forecasting. *Compare* Mot. at 12 (outlining deficiencies) *with LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (witness did not qualify as a damages expert because "he took no accounting or finance

---

[2] *See, e.g.*, dep. at 63:11-12 (the "mechanism is my subject matter expertise in this arena"); 87:22-25 ("[the contracts] might state something that is strictly defensive, I know differently as a subject matter expert"); 132:23-25 ("Q: Given your work as a data scientist how hard is a market analysis for you? A: It's easy, trivial.").

courses, had no training in damage analysis, had never testified as a damages expert or prepared an expert damages report, had never taught a course or lectured on damages, and has never been published in the field"). Plaintiff is not qualified under Rule 702 to provide his proposed expert testimony.

## CONCLUSION

For these reasons and those set forth in Defendants' motion, the Court should preclude Plaintiff's expert opinion and testimony at trial.


Date:  June 25, 2025                                          Respectfully submitted,

                                                           BRETT A. SHUMATE
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Director, Torts Branch

*/s/ Joseph A. Gonzalez*
Joseph A. Gonzalez
D.C. Bar No. 995057
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 598-3888
joseph.a.gonzalez@usdoj.gov

*Counsel for Defendants*