UNCLASSIFIED/

# AIR FORCE OFFICE OF SPECIAL INVESTIGATION
# REPORT OF INVESTIGATIVE ACTIVITY

PRIVACY ACT NOTICE: WHEN FILLED IN, THIS FORM CONTAINS INFORMATION THAT MUST BE PROTECTED UNDER THE PRIVACY ACT OF 1974.

| 1. DATE OF INVESTIGATIVE ACTIVITY | 2. PLACE | 3. ACTIVITY NUMBER |
|---|---|---|
| 26 Aug 2020 | OSI PJ Det 8 OL-B, JBSA-Lackland, TX | N/A |

**4. REMARKS**

(U) On 26 Aug 2020, SA ALLEN T. BEALL, OSI PJ Det 8 OL-B, JBSA-Lackland, TX interviewed Dr. ROE ROE, NSA-Texas, Google phone ___, regarding his involvement in the USAF Special Access Program ___ ROE stated he proposed a project to National Security Agency (NSA) leadership in the January to March 2019 timeframe. The response he received was that the project was too advanced for the NSA and that they would not pursue it or fund it. He stated he was encouraged by NSA leadership to present the project to the USAF to see if there was any interest in developing it on their part. In or around March, 2019, ROE conducted two briefings to USAF delegations on his proposed project. ROE recalled DANIEL BROWN, AFLCMC/HNCO, was present during the at least one of the briefings he provided.

(U) ROE's project and expertise was deemed worthy of further development by the USAF and was placed under project Fibonacci within ___ ROE continued his involvement as a subject matter expert consultant to the prime contractor of the project, Global Info Tech, Inc. (GITI). ROE did not recall who within the USAF proposed he continue involvement with the project, but the arrangement proposed was that he consult as an independent entity to GITI and not become a GITI employee. He submitted all timesheets and invoices to GITI who then compensated him and provided an IRS Form 1099 at the end of the tax year.

(U) At no time did ROE claim or purport that the services he was providing to GITI for his work on the ___ project had any connection to his position at the NSA. In April, 2019, before accepting the consulting agreement with GITI, he contacted AMY R___ of the NSA's Office of General Counsel, Administrative Law and Ethics to discuss any potential conflicts of interest between his employment with the NSA and consulting with GITI who was performing work on a USAF contract. ROE believed that as long he was not performing work for GITI during the business hours he was spending at the NSA, and he was not developing a tool or capability which would be presented back for purchase or use at the NSA, he would be permitted to perform "behind the scenes" consulting services to GITI. ROE provided copies of his email correspondence with R___ which he interpreted as tacit approval from the NSA to consult with GITI. ROE provided a printed copy of his correspondence with R___ (see attached emails)

(U) Agent Note: ROE was approved for ___ access and indoctrinated into the program on 4 Jun 2020. The justification used on his Program Access Request (PAR) for ___ stated ___ (see attached PAR)

(U) SA BEALL showed ROE his approved PAR and the justification language used. ROE stated the justification was not correct as he was providing subject matter expert consultation to GITI and ___. No connection, communication or information flow was occurring between project Fibonacci and the NSA, and none ever had been envisioned. He had never seen the justification language used on the PAR and did not provide input for the PAR.

(U) ROE confirmed he had accepted a position with large government contactor and has submitted his letter of resignation to the NSA. ROE preferred not to name his new employer until all of the paperwork was finalized (NFI). He said he may also retain his security clearance through the NSA as he could consult on continuing NSA projects and may return to a senior leadership position with the NSA in the future. ROE claimed his resignation from the NSA had nothing to do with his involvement with project Fibonacci or ___.

| 5. PREPARED BY: | 6. APPROVED BY: | 7. DATE |
|---|---|---|
| SA ALLEN T. BEALL, OSI PJ Det 8 OL-B | | 27 Aug 2020 |

SPECIAL HANDLING REQUIRED: DOCUMENT IS SUBJECT TO A CLAIM OF PRIVILEDGE UNDER MILITARY LAW. HANDLE IN ACCORDANCE WITH AFI 71-101, VOLUME 1, AND APPLICABLE INSTRUCTIONS TO INCLUDE PRIVACY ACTT (5 USC 522a) RESTRICTIONS. THIS DOCUMENT IS NOT TO BE RELEASED OUTSIDE YOUR AGENCY WITHOUT THE EXPRESSED PERMISSSION OF AFOSI.

RELEASABILITY: Access to this ___ OFFICIAL USE ONLY-LAW ENFOR___ filled in. Submit requests for acc___ with the Freedom of Information A___

**DEFENDANT'S EXHIBIT 6**

UNCLASSIFIED/

UNCLASSIFIED

## AIR FORCE OFFICE OF SPECIAL INVESTIGATION
## REPORT OF INVESTIGATIVE ACTIVITY

PRIVACY ACT NOTICE: WHEN FILLED IN, THIS FORM CONTAINS INFORMATION THAT MUST BE PROTECTED UNDER THE PRIVACY ACT OF 1974.

(U▮▮) SA BEALL performed an ▮▮ de-briefing with ROE ▮▮ and ROE ▮▮ signed the debriefing portion of his ▮▮ Program Indoctrination Agreement (PIA). SA BEALL allowed ROE ▮▮ to review the Critical Program Information (CPI) from the ▮▮ Security Classification Guide dated ▮▮ and reminded him he was no longer allowed to discuss any of those topics. ROE ▮▮ expressed concern that some of his ongoing work with the NSA or his new employer may also involve some of the ▮▮ CPI topics. SA BEALL clarified that if there was precedent or history from the NSA or his new employer, and his continued work on some of these topics were reasonable extensions to previous work performed, he would be allowed to continue those efforts. However, SA BEALL reiterated any work related to project Fibonacci or ▮▮ or work based on knowledge gained from project Fibonacci or ▮▮ must cease. SA BEALL told ROE ▮▮ if wanted to continue his work under ▮▮ he would need to be submitted for access again with proper justification and may require a DD254 listing him or his limited liability corporation as part of the access request.

(U▮▮) Agent Note: Program Security Representative JASON OLIVEIRA, OSI PJ Det 8 OL-B de-briefed ROE ▮▮ from ▮▮ in the Joint Access Database Environment (JADE) and uploaded his signed de-brief PIA on 27 Aug 2020. (see attached PIA)

---------Nothing Follows---------

UNCLASSIFIED

PAGE 2 OF 2 PAGES

**ROE**   **NSA FTX12 USA GOV**

**From:** ▓▓▓ Amy ▓ NSA ▓▓ USA GOV
**Sent:** Thursday, August 20, 2020 2:12 PM
**To:** ▓▓▓ NSA ▓▓ USA GOV
**Subject:** RE: (U) Consulting Question

**Classification: UNCLASSIFIED//**▓▓▓▓▓▓▓▓▓▓

▓▓▓, following up on our conversation today, the primary ethics laws and regulations that we have discussed in connection with your outside contracting work for GiTi are:

- 18 U.S.C. § 208 and 5 C.F.R. § 2635.502: Pursuant to this statute and regulation, you may not participate personally and substantially in any official NSA matter that affects the financial interests of your outside employer or to which an entity that you provide consulting services is a party. According to the information you have provided, you are not an employee of Giti, and you do not work on NSA matters affecting GiTi's financial interests or to which GiTi is a party. Based on the facts provided, I previously advised that your participation in this outside employment would not require your disqualification from any NSA matters to which you were assigned.
- 18 U.S.C. § 205: This law prohibits you from personally representing anyone before a Federal department, agency, or employee in a covered matter in which the United States is a party or has a direct and substantial interest. As discussed in my previous email, this law would prohibit you from representing GiTi to the Air Force (or any other Federal agency) on contract matters between GiTi and the Air Force. Providing "behind-the-scenes" services to GiTi in connection with its contract with the Air Force would not violate this law.
- 5 C.F.R. § 2635.703(a): This regulation prohibits you from allowing the use of nonpublic information to further your own financial interests or the financial interests of another. This regulation would prohibit you from using non-public information gained through the course of your employment with NSA the further your private work for GiTi.

I hope the above is helpful.

(U//▓▓▓)
Amy ▓. ▓▓▓
Attorney
Office of the General Counsel
Administrative Law & Ethics

1

Confidential - Subject to Protective Order     US0000047

From: ███████ NSA ██ USA GOV <███████>
Sent: Thursday, August 20, 2020 11:29 AM
To: ███ Amy █ NSA D23 USA GOV <███████>
Subject: RE: (U) Consulting Question

Classification: UNCLASSIFIED//████████████

Amy,

Below is my response to the Air Force program office official that is requesting clarification. Our (you and I) prior communication regarding this matter is at the end of this email.

---

Dan,

In April 2019 I contacted National Security Agency (NSA) Office of General Council (OGC) regarding outside work. OGC did not identify a conflict of interest because of the following:

1. I am employed by NSA as a Data Scientist, tasked with <u>academic engagement (AE) and work-force development (WFD)</u>.
   a. This means that I am a liaison to academia on matters related to data science, and I am tasked at NSA to build, train, and mentor a data science team.
   b. I do not implement data science or machine learning algorithms, but rather advise on their use and application.
   c. During my assignment at Office of the Director of National Intelligence (ODNI), my duties were exactly the same (AE and WFD), but at the IC level. However, at ODNI I was tasked with advising IC partners (not just NSA) on machine learning algorithms and their possible application in a variety of IC mission problems.
2. The proposed work (in April 2019) is a consultant for Global InfoTech (GiTi), not the US Government (USG), and my work is very specific: <u>implement applied mathematics for cyber-physical systems</u>. For nearly 20 years I have performed research, and published both papers and textbooks on this topic.
   a. As a consultant for GiTi, I perform unclassified machine learning research, and provide white papers and implement numerical prototypes for adoption into cyber-physical applications. To my knowledge, GiTi has several sub-contractors that use the result of my work, or provides these results to other USG contractors.
   b. My work for GiTi is "behind the scenes" and strictly task-oriented, and, to my knowledge, any interaction I have had with the USG is a factual presentation of progress updates on research or numerical prototypes.
   c. I have never represented GiTi to the USG for current or future contracts, nor do I have a vested interest in GiTi nor influence in the company or its leadership. Furthermore, to my knowledge, the math solutions that I provide GiTi is not for any contract with NSA.
   d. I have discussed this matter with my NSA leadership, and I have their approval to do this consulting outside of work hours.

Important notes:
- Item 1 and item 2.a are important as they ensure that I do not violate the USG financial conflict of interest statute. If my work at NSA ever includes providing mathematics for cyber-physical systems, I am required to disqualify myself from any consulting work whatsoever.
- Item 2.b & 2.c are important as they ensure that I do not violate criminal law (18 U.S.C. § 205). I can only perform "behind-the-scenes" tasks, and any interaction with the USG must be a factual exchange of information

- regarding the tasks assigned to me from GiTi (not the USG). I am not allowed to represent GiTi or influence a USG official.
- Item 2.c is also important as it ensures that I do not violate criminal law (18 U.S.C. § 203). I cannot, and do not participate in any GiTi profit sharing program. I can only accept a pre-set salary or pre-established contractual fee for tasks performed. Furthermore I have not, and will not, assist GiTi in preparing a response to a Federal RFP.

Very Respectfully,
Dr. ROE

From: ▮ Amy ▮ NSA- ▮ USA CIV <▮>
Sent: Monday, May 13, 2019 7:19 AM
To: ▮ NSA- ▮ USA CIV <▮>
Subject: RE: (U) Consulting Question

Classification: UNCLASSIFIED//▮

Good morning, ▮. Apologies for my delayed response. Unfortunately, there is no way to sign an agreement that takes away your responsibility under federal law, particularly 18 U.S.C. § 205. While it is helpful that the Air Force wants to help you avoid potential problems, the law would still prohibit you from having substantive interactions with Air Force representatives while you are working for NSA, even if the Air Force signs an MOU.

(U//▮)
Amy ▮ ▮
Attorney
Office of the General Counsel
Administrative Law & Ethics

From: ▮ NSA- ▮ USA CIV <▮>
Sent: Monday, May 6, 2019 12:59 PM
To: ▮ Amy ▮ NSA- ▮ USA CIV <▮>
Subject: RE: (U) Consulting Question

Classification: UNCLASSIFIED//▮

3

Hello,

Thank you for the response. I will adhere to the guidelines below.

I have another question: The Air Force representative has offered to write and sign a Memorandum of Understanding (MOU) that any interaction (between them and I) would not be interpreted as official from the government, but rather as a consultant and a subject matter expert in mathematics. Would this be useful or appropriate to avoid misunderstandings, and help me to remain compliant with the guidelines below?

Very Respectfully,
Dr. ▉

From: ▉ Amy ▉ NSA-▉ USA CIV < ▉ >
Sent: Monday, April 15, 2019 10:45 AM
To: ▉ NSA-▉ USA CIV < ▉ >
Subject: RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

,

I am following up our emails and telephone conversation last week regarding your offer of employment outside your position with the NSA. As you indicated last week, you are the Chief/Lead Data Scientist for NSA-Texas in ▉. In that capacity, you are tasked with building a data science team, training and equipping them with the tools they need to solve mission problems in ▉. You further indicated that you have recently received an opportunity from Air Force CyberCom ("CyberCom") to assist with mathematical calculations in furtherance of its cyber-related mission. In this capacity, you would serve as a sub-contractor to the prime CyberCom contractor. You have indicated that your official responsibilities with the NSA are not related to the work that you would be doing for CyberCom. Further, the prime CyberCom contractor is not a business whose interests you could affect in the performance of your official duties with the NSA.

With respect to your outside employment, there are a few areas of concern you should be aware of. Conflict of interest statutes, as well as other criminal statutes, affect your outside employment while you are an Agency employee (and even after you leave the Agency). Below, I have provided much of the pertinent information from our website; however, you should read over all of the information before pursuing any outside employment.

The first statute is the financial conflict of interest statute, which would prohibit you from personally and substantially participating in your official Government duties on any particular matter that may affect an entity with which you have an outside business relationship, such as the CyberCom prime contractor. You have indicated that you do not have current responsibilities with the Agency that would affect the CyberCom prime contractor, but if you did, either now or in the future, you would be required to disqualify yourself in writing from taking any official actions affecting that company. The disqualification requirement would continue as long as you remain in a business relationship with that outside company or seeking employment with that company. You can find the Disqualification Template here: ▉

A second criminal law (18 U.S.C. § 205) prohibits you from personally representing any other person (including companies) -- with or without compensation -- before a Federal department, agency or employee. You may not make representations to any federal officials (not just NSA personnel) on behalf of outside entities. Representation includes any oral or written communications that are intended to influence the official on a specific matter. Working "behind-the-scenes" on matters or strictly task-oriented activities do not violate this rule. Applying this rule to your circumstances, you may not be the individual responsible for communications with Air Force representatives (or any other federal employees) on the contract for which you are providing services. This includes oral or written

4

communications. It does not include ministerial communications, such as requests for factual information. However, if a communication transitions from a factual exchange to a conversation in which differences of opinion may occur, this can create problems under the representation rule. Additionally, if the CyberCom prime contractor submits a product to CyberCom under your name, this would be considered a communication by you to CyberCom. Note that this rule does not prohibit you from identifying yourself as being associated with the CyberCom prime contractor for such things as being able to gain admittance to the facility where the work is to be performed.

In addition to the representation rule discussed immediately above, you are also prohibited by another rule (18 U.S.C. § 203) from receiving compensation that comes from the representation by others before a government department or agency on any matter in which the United States is a party or has a substantial interest. For example, you may not accept part of the profits in a profit-sharing arrangement if those profits come from representations to the Federal Government. Also, you may not work on a contingency fee basis for a private employer on a government contract (i.e., assist in preparing a response to a Federal RFP and receive a fee or payment only if the contractor is the successful bidder). You may accept a pre-set salary or a pre-established contractual fee (such as payment at an hourly rate) in connection with this outside engagement as long as there are no other benefits such as stock options, contingency fees, or profit sharing.

**If this outside arrangement requires you to work in a government facility, please review the below guidance.**

The DoD Standards of Conduct Office (SOCO) provided guidance in 2015 that indicates it is quite difficult, but not necessarily impossible, for a Federal employee to work for a contractor in the federal workplace. The relevant DoD SOCO guidance states:

Few federal personnel are aware that a criminal statute, 18 U.S.C. § 203, prohibits them from:

- receiving compensation for acting as an agent or attorney (e.g. "representing");
- for anyone;
- before any part of the Executive or Judicial branches of the Federal Government;
- in connection with a particular matter;
- in which the United States is a party or has a direct and substantial interest.

While the statute applies to personnel throughout their federal careers, it has particular relevance in two situations: (1) military officers who desire to work in the Federal workplace for a contractor while on terminal leave and (2) personnel who desire to work in the Federal workplace for a contractor during their off-duty time ("moonlighting"). This statute will, in most cases, make such employment impossible. However, because the statute does not bar "communications that are merely ministerial in nature," such as seeking information that is routinely made available to the public or providing purely factual information, some such employment may be possible.

"Section 203 has historically been interpreted by the Department of Justice as prohibiting compensation only for representational services. Such representation must involve communications made with the intent to influence and must concern an issue or controversy. The provision of purely factual information or the submission of documents not intended to influence are not representational acts." Consequently, where communications do not involve a potential for divergent views, or where the employee's actions do not constitute communication, the prohibition does not apply. [See OGE Informal Advisory Memorandum 99 x 25]

While this opens the door for some employment of federal personnel as contractors in the federal workplace, it also places these personnel in positions to inadvertently violate the prohibition. The examples below illustrate application of the statute.

--A federal employee who moonlights as a custodian working for a contractor in a federal agency, may, in theory, perform his or her contractor duties without violating the statute since the employee's contractor duties do not

5

primarily involve communications and most communications by the employee will be ministerial. However, if the employee was accused of not cleaning satisfactorily, the employee is prohibited by the statute from defending the contractor's performance in a discussion with a federal official. Contractor employees who are not government personnel must handle the complaint.

--A federal employee could moonlight as a security guard at a federal facility but would not be able to engage in a discussion with federal employees about the guard's decision to deny admission to a visitor whose identity was in question.

--A military officer on terminal leave, who is employed by a contractor as a consultant for a Federal agency, could not provide advice or consultant services to the federal agency concerning a particular matter if the matter has potential for divergent views.

18 U.S.C. § 205 parallels §203 except that even uncompensated representation is prohibited. Neither § 203 nor § 205 applies to enlisted personnel.

Bottom line: As stated earlier, it is almost impossible for federal personnel to work for a contractor in the federal workplace. In theory, they could perform roles that do not involve communications or that involve only ministerial communications. However, if the quality, quantity, or timeliness of their work is challenged, they may not participate in such discussions. As the Office of Government Ethics warned, "As a general matter, [the employee] should take great care in avoiding any situation in which he may argue a position on behalf of [the organization] in a covered matter before any Federal employee in which there are potentially differing views of conflicting interest." [See OGE Advisory Opinion 96 x 6█

As you can see from the DoD SOCO guidance, even in situations for which it may be possible to avoid violating the representational restrictions, there always remains the possibility that an employee moonlighting for a contractor in federal spaces could inadvertently violate this criminal prohibition.

In addition to the above considerations, please note that the federal law generally prohibits a contracting officer from awarding a contract to a government employee or to a business concern or other organization owned or controlled by a federal employee. This rule would not affect you if you would be joining, as a sub-contractor, an existing contract between CyberCom and the prime contractor. However, if the plan is for the prime contractor to submit a proposal for a new contract with you as a team member, this may create concerns. If that is the case, please follow up with my office for additional guidance.

Once again, please remember that, if you do accept this outside engagement, you must avoid taking any action that creates the appearance that you have lost impartiality in the performance of your official duties, or that even creates the appearance that you are using your public office for the private gain of yourself or others.

Finally, you asked in your original email whether CyberCom would have to sponsor your clearance for any classified work in connection with that engagement. If the level of clearance that you currently have with NSA is a high enough clearance for your work with CyberCom, it would be CyberCOm's responsibility to confirm your active clearance. If the work requires something further, such as a higher level of clearance, it would be CyberCom's responsibility to address.

I hope the above guidance helps you in navigating this offer, but please do not hesitate to contact me anytime with questions.

(U//
Amy█
Attorney

UNCLASSIFIED

JA-20190530-2-448587              (CLASSIFY AS APPROPRIATE WHEN FILLED IN)

## SPECIAL ACCESS PROGRAM INDOCTRINATION AGREEMENT

**ROE**

An Agreement between _____ROE_____ and the United States
(Name – Printed or Typed) (Last, First, Middle Initial)

1. I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or materials protected within Special Access Programs, hereinafter referred to in this Agreement as SAP information (SAPI). I have been advised that SAPI involves or derives from acquisition, intelligence, or operations and support activities, and is classified or is in the process of a classification determination under the standards of Executive Order 12958 or other Executive Order or statute. I understand and accept that by being granted access to SAPI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SAPI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SAPI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SAPI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SAPI or that I know to be SAPI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that authorized my access(es) (identified on the reverse) to SAPI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SAPI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SAPI, or related to or derived from SAPI, is considered by such Department or Agency to be SAPI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SAPI and of being assigned or retained in a position of special confidence and trust requiring access to SAPI, I hereby agree to submit for security review by the Department or Agency that authorized my access(es) (identified on the reverse) to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SAPI or description of activities that produce or relate to SAPI or that I have reason to believe are derived from SAPI, that I contemplate disclosing to any person not authorized to have access to SAPI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SAPI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SAPI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SAPI until I have received written authorization from the Department or Agency that authorized my SAP access(es) (identified on the reverse).

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SAPI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the SAP community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SAPI, removal from a position of special confidence and trust requiring such access, or termination of other relationships with any Department or Agency that provides me with access to SAPI. In addition, I have been advised that any unauthorized disclosure of SAPI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(a), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entitling me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that provided me the access(es) (identified on the reverse) to SAPI, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SAPI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SAPI and does not set forth such other conditions and obligations not related to SAPI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(a) of Title 50, United States Code, and Executive Order 12958, as amended, so that I may read them at this time, if I so choose.

12. I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result ro many disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. These restrictions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by Executive Order 12958; Section 7211 of Title 5, United States Code (governing disclosures to Congress); Section 1034 of Title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); Section 2302 (b)(8) of Title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including Section 641, 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(a) of Title 50, United States Code. The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation, purpose of evasion, and in absence of duress.

16. I further understand that by accepting access to this Special Access Program information I may be required to and I will voluntarily take a polygraph examination, which will be limited to counterintelligence and/or counterespionage questions.

17. I agree to the stipulations contained in the above agreements prior to receiving a program/project specific briefing.

| 18a SIGNATURE **ROE** | | b. DATE (YYYYMMDD) 06/04/19 |
|---|---|---|
| 19. WITNESS AND ACCEPTANCE. The execution of this Agreement was witnessed by me who accepted it on behalf of the United States Government as a prior condition of access to Special Access Program Information. | a. SIGNATURE [signature] | b. DATE (YYYYMMDD) 20190604 |

SAP Format 2, JAFAN Edition "Special Access Program Indoctrination Agreement," December 2007 PREVIOUS EDITIONS ARE OBSOLETE

(CLASSIFY AS APPROPRIATE WHEN FILLED IN)

UNCLASSIFIED

Page 1 of 2

UNCLASSIFIED/

JA-20190530-2-446567

(CLASSIFY AS APPROPRIATE WHEN FILLED IN)

## SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

| | N/A | N/A | N/A | N/A |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

(Special Access Programs by Initials Only)

| SSN (See Notice Below) | Roysdon, Paul Franklin<br>Printed or Typed Name | Organization |
|---|---|---|

**BRIEF**

Date 06/04/19

I hereby acknowledge that I was briefed on the above SAP(s):

_ROE_

Signature of Individual Briefed

**DEBRIEF**

Date 20200826

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SAP(s):

_ROE_

Signature of Individual Debriefed

I certify that the briefing presented by me on the above date was in accordance with relevant SAP procedures.

Signature of Briefing Officer

JOSEPH SOLOMON
Printed or Typed Name

Signature of Debriefing Officer

Allen T. Beall
Printed or Typed Name

SSN (See Notice Below)

AFLCMC/HNC-DOS
Organization (Name and Address)

SSN (See Notice Below)

DS2 PJ Det-8 OL-B JBSA-Lackland, TX
Organization (Name and Address)

**PRIVACY ACT STATEMENT**

**AUTHORITY:** 5 U.S.C. §7311 and applicable DoD Directives / Executive Orders
**PRINCIPAL PURPOSE(S):** To obtain accountability information for managing employee access to special access program (SAP) information and to document individual SAP access briefings and debriefings.
**ROUTINE USE(S):** None
**DISCLOSURE:** Disclosure of the information is voluntary for the individual being briefed or debriefed and the official performing the briefing or debriefing. However, failure of the aforementioned individuals to provide the requested information may delay the briefing or debriefing. In addition, failure of the individual being briefed to provide the requested information may result in his or her being declared ineligible for access to SAP information.

SAP Format 2, JAFAN Edition "Special Access Program Indoctrination Agreement," December 2007 PREVIOUS EDITIONS ARE OBSOLETE

(CLASSIFY AS APPROPRIATE WHEN FILLED IN)

UNCLASSIFIED/

Page 2 of 2

**UNCLASSIFIED/**

Classify as Appropriate When Filled-in

JA-20190326-2-401918

## PROGRAM ACCESS REQUEST

| # | Field | Value |
|---|---|---|
| 1. | Program Name | [redacted] |
| 2. | Access Level | [redacted] |
| 3. | Date Requested (YYMMDD) | 26-Mar-2019 |
| 4. | Last Name, First Name, Middle Initial | ROE |
| 5. | Rank/Grade | Gov't Civilian (DoD) |
| 6. | U.S. Citizen | ☑ Yes ☐ No |
| 7. | SSAN | [redacted] |
| 8. | Date of Birth (YYMMDD) | [redacted] |
| 9. | City/State/Country of Birth | Mission Viejo/California/United States |
| 10. | | ☐ Military ☑ Civilian ☐ Contractor ☐ Consultant |
| 11. | SAP DD-254 / Consultant Agreement | ☐ Yes ☐ No ☑ N/A |
| 12. | Job Title | PhD |
| 13. | | ☑ Full Time ☐ Temporary (Period of access) ☐ Part Time (From: ___ To: ___) |
| 14. | Organization/Company Name | NSA DO |
| 15. | Assignment/Job Location (City & State) | San Antonio |
| 16. | Command/Facility/CAGE Code (if any) | NSA |
| 17. | PSQ Date | 19-Mar-2019 (Some Yes) |
| 18. | Security Clearance | SCI-DCID 6/4 |
| 19. | Granted By | NSA |
| 20. | Date Granted (YYMMDD) | 21-Mar-2017 |
| 21. | Investigation Type | SSBI |
| 22. | Conducted By | NSA |
| 23. | Date Completed (YYMMDD) | 20-May-2015 |

24. Security Investigation Status (Joint Personnel Adjudication System (JPAS) or Scattered Castles (SC) check)
☐ In Progress (Date Initiated/Submitted: _____) (YYMMDD)
☐ Out-of-Scope (Approval: _____) Date _____ (YYMMDD)
☑ Current

25. Security Clearance Database Check
Conducted By: Rinzy Kosty   Date Checked: 27-Mar-2019 (YYMMDD)
☐ Acceptable JPAS results   ☑ Acceptable Scattered Castles results
☐ Unacceptable JPAS results  ☐ Unacceptable Scattered Castles results

26. Justification (UNCLASSIFIED)

Dr. ROE is [redacted]

27. Billet Number (if any): _____

| # | Role | Typed Name/Title/Organization | Signature | Telephone / Status | Date (YYMMDD) |
|---|---|---|---|---|---|
| 28. | Requester (Government/Contractor) (Mandatory) | SAF/AQLE | Signed By | 2027673992 | 26-Mar-2019 |
| 29. | SAP Personnel Security Official (SPO) (Mandatory) | SAF/AQLPJ | Signed By | ☐ Eligible ☑ Needs Additional Review | 27-Mar-2019 |
| 30. | Additional Coordination (As Necessary) | SAF/AAZ | Signed By | ☑ Concur ☐ Non-Concur | 08-May-2019 |
| 31. | Additional Coordination (As Necessary) | OUSD(I) SAPCO | Signed By | ☑ Concur ☐ Non-Concur | 23-Apr-2019 |
| 32. | Government SAP Security Officer/Contractor Program Security Officer (GSSO/CPSO) (As Necessary) | | | ☐ Concur ☐ Non-Concur | |
| 33. | Government/Contractor Program Manager (GPM/CPM) (As Necessary) | SAF/AQLE | Verified By | ☑ Concur ☐ Non-Concur | 03-Apr-2019 |
| 34. | Program Security Officer (PSO) (Mandatory) | AFOSI PJ DET 8/OL-B | Signed By | ☑ Concur ☐ Non-Concur | 28-Mar-2019 |
| 35. | SAP Central Office (SAPCO) (Government Only) (As Necessary) | | | ☐ Approved ☐ Disapproved | |
| 36. | Access Approval Authority (AAA) (Government Only) | SAF/AAZ | Signed By | ☑ Access Approved ☐ Access Disapproved | 08-May-2019 |

37. Remarks/Restrictions (CONTINUE ON SEPARATE SHEET IF NECESSARY)
Supported Org:
RBAN: NSA DO, (Continued in Comments)

Classified By: _____
Derived From: _____
Declassify On: _____ (per RSE dated 20060330)

Program Access Request (PAR) – November 20, 2014 (Previous Editions are Obsolete)

Privacy Sensitive (when filled-in) – Any misuse or unauthorized disclosure may result in either civil or criminal penalties. Information contained is protected by the Privacy Act of 1974, U.S.C.

JA-20190326-2-401918

Classify as Appropriate When Filled-in

**UNCLASSIFIED/**

Page 1 of 2

UNCLASSIFIED//▮

JA-20190326-2-401918

(CLASSIFY AS APPROPRIATE WHEN FILLED IN)

**CONTINUATION OF PAR FOR:** <span style="color:red">**ROE**</span>

**PROGRAM NAME / ACCESS LEVEL:** ▮

**Additional Reviewers -**
**Additional Coordination:** ▮ SAF/AQLPJ   Date: 03-Apr-2019   Concur: [X] Non-Concur: [ ]
**Signed By:** ▮

**Additional Remarks -**

U▮ : On 28-Mar-2019 ▮ said:
  JPAS valid; Justification for SAP access suitable; DCII favorable; PSR concurs. ▮
PSR, AFOSI PJ Det 8 OL-B, 28 Mar 19.

U▮ On 27-Mar-2019 ▮ said:
  PSQ 3/19/19 w/Frn Trvl to France, Switzerland

JA-20190326-2-401918

UNCLASSIFIED//▮

(CLASSIFY AS APPROPRIATE WHEN FILLED IN)

Page 2 of 2