

# Global InfoTek Inc.

## CONSULTING AGREEMENT No. 2019-003

**THIS AGREEMENT**, entered into this 3rd day of June, 2019 effective, by and between Global InfoTek Inc., a corporation organized and existing under the laws of the Commonwealth of Virginia, hereinafter referred to as "GITI", and ▮▮▮▮▮▮▮ hereinafter referred to as "Consultant."

**WITNESSETH:**

**WHEREAS**, GITI desires the Consultant to perform certain work and conditions hereinafter described and the Consultant is ready, willing, and able to perform such work and services,

**NOW THEREFORE**, in consideration of the premises contained herein and the promises each to the other made, the parties do agree as follows:

### ARTICLE I – CATEGORY OF WORK AND SERVICES

The work and services to be performed by the Consultant are defined in Appendix A.

### ARTICLE II – GENERAL

1. In the performance of the work and services thereunder, the Consultant shall act solely as an independent contractor, and nothing herein contained or implied shall at any time be so construed as to create the relationship of employer and employee, partnership, principal and agent, or joint adventurer between GITI and Consultant.

2. This Agreement shall constitute the entire Agreement between the parties, and shall continue in effect upon the issuance by GITI of a task order or task orders, on either a continuous or intermittent basis. Each such order shall reference this Agreement and work and services shall not be performed except as and when authorized by such task orders. This Agreement, together with the task order or orders, contains the entire Agreement of the parties and no modification, alteration, or other provision which is inconsistent with or in addition to the terms and conditions herein contained shall be effective unless reflected by an amendment to this Agreement, or included in a task order accepted by Consultant.

3. Failure of either party to enforce any of its rights hereunder shall not constitute a waiver of such rights or of any other rights hereunder.

### ARTICLE III – PERSONAL SERVICES – ASSIGNMENT

1. The work and services provided for herein shall be performed personally by the Consultant and no other company shall be engaged upon such work or services except with written approval of GITI.
2. Neither this Agreement nor any interest therein, or claim thereunder shall be assigned or transferred by the Consultant to any party or parties, except that the whole, or any part thereof, is assignable to the Government or such person as designated by the Government, provided that, in the event of any such assignment to the Government or such person as designated by the Government, provided that, in the event of any such assignment to the Government or its designee, this Agreement may continue in full force and effect, notwithstanding the termination of a prime Government contract.

### ARTICLE IV – PATENTS

EXHIBIT 2  EMT 5/30/25

PLAINTIFF_00000100

# Global InfoTek Inc.

1. Whenever any invention or discovery is made or conceived by the Consultant in the course of any work under this Agreement, the Consultant shall keep signed, witnessed and dated records of all such information thereon. Consultant agrees to assign to GITI all such inventions and discoveries pertaining to the work under this Agreement, together with such patent or patents as may be obtained thereon, in this and all foreign countries, and, upon request by GITI, will at any time during the life of this Agreement and after the latter's termination for any reason, execute all proper papers for use in applying for, obtaining and maintaining such United States and foreign patents as GITI may desire, and will execute and deliver all proper assignments thereof, when so requested, but at no expense to Consultant. Consultant shall communicate to GITI, its successors, assigns, nominees or other legal representatives, all facts known to Consultant respecting each such invention or discovery, whenever requested, and testify in any legal proceeding, sign all lawful papers, execute all divisional, continuing, and reissue applications, make all rightful oaths and do all lawful acts requisite for the applications for such divisional, continuing or reissue applications, or the procuring thereof, and for the obtaining or enforcing any patent resulting therefrom, but at no expense to Consultant.

2. Except as otherwise authorized in writing by GITI, Consultant will obtain at it's own expense, patent agreements to effectuate the purposes of paragraphs (1) and (2) of this Article from all persons who perform any part of the work under this Agreement except clerical, production, and maintenance employees, and supervisors of such employees.

3. Promptly upon expiration or termination of this Agreement, Consultant guarantees to make complete disclosures of all discoveries and inventions pursuant to the above not previously disclosed and certify in writing that such disclosures are complete.

4. The parties agree that all ideas, know-how, processes, information, drawings, documents, designs, models, inventions, copyrightable material and other tangible and intangible materials authored, prepared, created, made, delivered, conceived or reduced to practice, in whole or in part, by Contractor in the course of providing the Services, including without limitation computer programs, computer systems, data and documentation, (collectively, the "Works") are the sole and exclusive property of GITI. In the event any such Works do not fall within the specifically enumerated works that constitute works made for hire under the United States copyright laws, Contractor hereby irrevocably, expressly and automatically assigns, conveys and transfers all right, title and interest worldwide in and to such Works including, without limitation, all copyrights, patent rights, trade secrets, trademarks, moral rights and all other applicable proprietary and intellectual property rights to GITI.

## ARTICLE V – CONSULTANT PROPRIETARY DATA

As used in this Article, Proprietary Data is defined as: all special techniques, methods, computer programs, software, and related items used or employed for GITI's benefit under a Contract, which were developed solely at the time and expense of Consultant, and are considered by Consultant to be proprietary.

Consultant shall use its best efforts to identify and provide reasonable written notice to GITI of any Proprietary Data Consultant intends to use in performance of proposed work, prior to the issuance of a purchase order by GITI but in no event later than the use of such data. All Consultant Proprietary Data must be clearly marked as proprietary by Consultant.

GITI may disclose or otherwise make available Consultant's Proprietary Data to a third party with whom GITI contracts for maintenance, operation, training, modification, repair, or consultation, provided the said third party agrees to be bound in writing by the limitations on use and disclosure of such data as contained herein. GITI

PLAINTIFF_00000101

# Global InfoTek Inc.

agrees to take all reasonable action by instruction or agreement with its employees who are permitted access to Consultant's Proprietary Data to satisfy its obligations under this Article.

Notwithstanding the preceding, this Article and the restrictions on GITI contained therein shall not apply to any data or documentation:

1. which is in the public domain at the time it was disclosed by Consultant to GITI or at any time thereafter; or
2. which was already known to GITI at time of disclosure to GITI by Consultant; or
3. after ten (10) years from the date of execution of any contract unless Consultant is subject to a longer restriction by a third party and GITI has agreed in writing to such longer restriction prior to use of such data or documentation; or
4. which is independently developed by GITI; or
5. which becomes known to GITI from a source other than Consultant without breach of a contract by the source or GITI; or
6. which is not identified by Consultant to GITI in writing prior to use of such data or documentation on the work.

In the event of any inconsistency between the stamp or legend imprinted on information or data delivered by Consultant pursuant to a contract and the terms and conditions of the contract, the contract shall take precedence.

## ARTICLE VI – INVOICING

The Subcontractor shall create one PDF file with the following in the order shown below:
1. Monthly Invoice that will include the following information:
   a. Consultant's name and business address;
   b. Date of invoice;
   c. Period covered by invoice;
   d. Total number of hours worked, and
   e. Total labor charge (current and cumulative per Phase).
   f. Constraints: The total labor charges for the period of performance shall not exceed the ceiling amount quoted in the task order.
   g. No Travel is anticipated in the performance of duties.
2. If any Travel related cost is included in the Monthly Invoice, then a copy of the written Travel Authorization shall be included.

Email the PDF file to invoice@globalinfotek.com.

Subcontractor shall be paid within ten (10) business days after GITI receives payment from the government on any invoice containing Consultant costs incurred under this agreement provided that Consultant's invoices are acceptable by GITI and the Government.

## ARTICLE VII – TERMINATION OF AGREEMENT

GITI shall have the right to terminate this Agreement at any time by written notice to Consultant whenever such termination is determined to be in the best interests of GITI, or whenever the Consultant fails to properly perform the work and services undertaken. Notwithstanding any other provisions of this Agreement, the work and services contemplated hereunder shall be automatically and instantly terminated without recourse by the parties hereto in the event Consultant dies or becomes incapacitated for a period in excess of thirty days or in the

PLAINTIFF_00000102

## Global InfoTek Inc.

event Consultant is not given the necessary clearance by the cognizant Government agency or in the event such a clearance is withdrawn.

### ARTICLE VIII – CLASSIFIED MATERIAL

1. It is understood that disclosure of information relating to the work and services contracted for hereunder to any person not entitled to receive it, or failure to safeguard all classified matter that may come to the Consultant, or any person under Consultant's control in connection with the work under this Agreement, may subject the Consultant, Consultant's agents, employees and subcontractors to criminal liability under the laws of the United States including Title I of an Act approved June 15, 1917 (Public No. 24, 65th Congress; 40 Stat. 217), as amended by an Act approved March 28, 1940 (Public No. 443, 76th Congress; 54 Stat. 79) 50 U.S. Code (1940 ed.) (Chap. 4), and the provisions of an Act approved January 12, 1938 (Public No. 418, 75th Congress; 52 Stat. 3; 50 U.S. Code (1920 ed.)(45-45d), as supplemented by Executive Order No. 10104, dated February 1, 1959.

2. Consultant agrees to conform to all military security regulations and requirements. Except as authorized, Consultant agrees not to permit any individual to have access to classified data until the proper Government agency completes an investigation and favorable report on the character, associations, and loyalty of such individual and determines that permitting access to such person will not endanger the common defense or security.

### ARTICLE IX – DRAWINGS, DESIGNS, SPECIFICATIONS, ETC.

1. All drawings, designs, specifications, notebooks, tracings, photographs, negatives, reports, findings, recommendations, data and memoranda of every description relating to the work and services or any part thereof are to become the property of the Government upon the completion thereof if the work or services are being performed under a Government contract; otherwise such articles are to become the property of GITI. The Government and GITI shall have full rights to use such materials in any manner when and where either of them may designate without any claim on the part of Consultant for additional compensation. No duplicate copies of such materials shall be retained by Consultant for record or any other purpose without the specific written authorization of GITI.

2. In cases where Consultant is authorized to retain copies of such materials, retention shall be in accordance with applicable Government security requirements.

3. Consultant shall not apply for a copyright in any of the drawings, designs, specifications, notebooks, tracings, photographs, negatives, reports, findings, recommendations, data, and memoranda of every description relating to the work and services covered by this Agreement; and the original and all copies of all such materials shall be delivered to GITI when requested by GITI. Furthermore, access to matter that may contain classified information shall be restricted to trusted and duly authorized representatives of GITI and the Consultant, except as otherwise specifically authorized in writing by GITI.

### ARTICLE X – RELEASE OF INFORMATION

Consultant shall not, disclose to others, publish, or authorize anyone to publish any technical or confidential information acquired in the course of performing work or rendering services under this Agreement.

### ARTICLE XI – FURNISHED INFORMATION

Drawings, specifications, photographs, and other engineering and manufacturing information furnished by GITI to the Consultant shall remain the property of GITI, shall be duplicated only as authorized in writing by GITI

PLAINTIFF_00000103

## Global InfoTek Inc.

and shall be returned upon request or when no longer needed for performance. Except as may be necessary for authorized performance, and to the extent not generally known or available to the industry, Consultant shall not use or disclose information concerning GITI products without prior consent.

### ARTICLE XII – SAFETY AND HEALTH REGULATIONS

Consultant agrees to comply with all safety and health regulations prescribed by GITI when performing work or services on GITI premises.

### ARTICLE XIII – INSURANCE PROTECTION, INDEMNIFICATION, AND SECURITY REQUIREMENTS

1. The work to be performed by the Consultant under this Agreement will be performed entirely at the Consultant's risk. The Consultant will carry liability insurance and agrees to indemnify GITI for any and all liability or loss arising in any way out of the Consultant's performance of this Agreement.

2. Consultant agrees to waive any rights of subrogation which Consultant may have against GITI under applicable Worker's Compensation Statutes.

3. Notwithstanding the foregoing requirements, Consultant shall indemnify and hold harmless GITI, its officers, employees, agents, and invitees from and against all claims, judgments, liabilities, losses, injuries, and damages of every nature (including costs and expenses incident thereto) caused by the acts or omissions of Consultant, its officers, employees, agents, invitees, or vendors, directly or indirectly arising out of the performance of this Agreement or any act or failure to act by Consultant's subcontractors or suppliers. Consultant agrees that its employees shall work at Consultant's risk, except as to damages or injuries caused directly by GITI's agents or employees.

4. Consultant and its employees shall comply with all applicable State and local laws, ordinance codes and regulations, and all applicable Federal Laws, Executive Orders and Government Regulations; and Consultant hereby indemnifies and agrees to hold GITI harmless from and against all liabilities and penalties imposed for failure to do so.

5. Notwithstanding the terms presented herein the limits of liability for the Consultant will not exceed the value of this agreement.

### ARTICLE XIV – GOVERNMENT CONTRACTS

The parties acknowledge that GITI is performing work under Government prime contracts and subcontracts. The work and services to be performed by Consultant may or may not be a part of such contracts and subcontracts. If a Government contract number or other indication of Government work is included in an authorizing purchase order, the purchase order will include a separate attachment of applicable Government regulations that will also be binding on Consultant. Where necessary to make the Government regulations applicable to this Agreement, the term "Contractor" shall be deemed to refer to Consultant and "Contracting Officer" shall refer to the Government or GITI official having cognizance over the GITI prime contract or subcontract. There shall be no change in the meaning of the term "Government." The term "Contract" shall be deemed to refer to the particular purchase order under which Consultant is authorized to perform work and services.

### ARTICLE XV – NON-COMPETITION AND NON-SOLICITATION OF CUSTOMERS

The Consultant and its employees agree that during the period of active consulting under this agreement and for one year

PLAINTIFF_00000104

## Global InfoTek Inc.

thereafter, they will not

- (i) directly or indirectly, for himself or on behalf of any other person, partnership, company, corporation, or other entity, solicit or attempt to solicit, for the purpose engaging in competition with GTTI:

  - a. any person or entity with whom the Consultant and its employees had contact on behalf of GITI;

- (ii) For purposes of this paragraph, "directly or indirectly" shall mean actions performed personally by the Consultant and its employees in an effort to engage in the prohibited behavior, or the provision of assistance or information, such as informal consulting services, to other parties for the purpose of, or to facilitate, the prohibited behavior by the other party.

- (iii) The Consultant and its employees agree that these restrictions are necessary to protect the Company's legitimate business interests and the Consultant and its employees agree that these restrictions will not prevent the Consultant and its employees from earning a livelihood.

- (iv) For the purposes of this paragraph, "competition" shall mean providing services similar to those GITI provides to its customers.

### ARTICLE XVI – Non-Solicitation of Employees

It is mutually agreed that neither Party will not solicit for hire any employee of the other Party that is associated with this Agreement nor shall either Party make offers to hire the others' employees for a period of two (2) years from the expiration or termination of this Agreement.

### ARTICLE XVII – INTERPRETATION

The interpretation of this Agreement shall be governed by the laws of the Commonwealth of Virginia.

Paul Roysdon

Tel
Fax [redacted]

By [redacted]

Title: Consultant
Date: 06/02/19

EIN: _____

GLOBAL INFOTEK, INC.
1920 Association Dr., Suite 100
Reston, VA 20191

Tel: 703 919-8524
Fax: 703 652-1699

By: Poovalai Jayachandran:A01097C00000169FE28241C0000FEA
Date: 2019.06.04 14:23:53 -04'00'

Poovalai Jayachandran

Title: Executive Vice president
Date: _____

# Global InfoTek Inc.

## ATTACHMENT A

Provide computational and mathematical analysis for a classified project. No details can be provided due to the classification.

## Attachment B

PLAINTIFF_00000106