▮▮▮▮ F NSA FTX12 USA GOV

**From:** R▮▮ Amy ▮ NSA ▮▮▮▮
**Sent:** Thursday, August 20, 2020 2:12 PM
**To:** ▮▮▮▮ F NSA FTX12 USA GOV
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

▮▮ following up on our conversation today, the primary ethics laws and regulations that we have discussed in connection with your outside contracting work for GiTi are:

- 18 U.S.C. § 208 and 5 C.F.R. § 2635.502: Pursuant to this statute and regulation, you may not participate personally and substantially in any official NSA matter that affects the financial interests of your outside employer or to which an entity that you provide consulting services is a party. According to the information you have provided, you are not an employee of Giti, and you do not work on NSA matters affecting GiTi's financial interests or to which GiTi is a party. Based on the facts provided, I previously advised that your participation in this outside employment would not require your disqualification from any NSA matters to which you were assigned.
- 18 U.S.C. § 205: This law prohibits you from personally representing anyone before a Federal department, agency, or employee in a covered matter in which the United States is a party or has a direct and substantial interest. As discussed in my previous email, this law would prohibit you from representing GiTi to the Air Force (or any other Federal agency) on contract matters between GiTi and the Air Force. Providing "behind-the-scenes" services to GiTi in connection with its contract with the Air Force would not violate this law.
- 5 C.F.R. § 2635.703(a): This regulation prohibits you from allowing the use of nonpublic information to further your own financial interests or the financial interests of another. This regulation would prohibit you from using non-public information gained through the course of your employment with NSA the further your private work for GiTi.

I hope the above is helpful.

(U//FOUO)
Amy ▮ R▮
Attorney
Office of the General Counsel
Administrative Law & Ethics
▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮

ATTORNEY CONFIDENTIALITY NOTICE:
The information contained in this email and any accompanying attachments constitute attorney work product and/or client advice, which are legally privileged.
NOT TO BE RELEASED WITHOUT OGC APPROVAL.



EXHIBIT
1
EMT 5/30/25



DEFENDANT'S EXHIBIT
9

PLAINTIFF_00000015

**From:** [redacted] F NSA FTX12 USA GOV [redacted] >
**Sent:** Thursday, August 20, 2020 11:29 AM
**To:** R[redacted] Amy [redacted] NSA D23 USA GOV [redacted]
**Subject:** RE: (U) Consulting Question

## Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Amy,

Below is my response to the Air Force program office official that is requesting clarification. Our (you and I) prior communication regarding this matter is at the end of this email.

---

Dan,

In April 2019 I contacted National Security Agency (NSA) Office of General Council (OGC) regarding outside work. OGC did not identify a conflict of interest because of the following:

1. I am employed by NSA as a Data Scientist, tasked with <u>academic engagement (AE) and work-force development (WFD)</u>.
   a. This means that I am a liaison to academia on matters related to data science, and I am tasked at NSA to build, train, and mentor a data science team.
   b. I do not implement data science or machine learning algorithms, but rather advise on their use and application.
   c. During my assignment at Office of the Director of National Intelligence (ODNI), my duties were exactly the same (AE and WFD), but at the IC level. However, at ODNI I was tasked with advising IC partners (not just NSA) on machine learning algorithms and their possible application in a variety of IC mission problems.
2. The proposed work (in April 2019) is a consultant for Global InfoTech (GiTi), not the US Government (USG), and my work is very specific: <u>implement applied mathematics for cyber-physical systems</u>. For nearly 20 years I have performed research, and published both papers and textbooks on this topic.
   a. As a consultant for GiTi, I perform unclassified machine learning research, and provide white papers and implement numerical prototypes for adoption into cyber-physical applications. To my knowledge, GiTi has several sub-contractors that use the result of my work, or provides these results to other USG contractors.
   b. My work for GiTi is "behind the scenes" and strictly task-oriented, and, to my knowledge, any interaction I have had with the USG is a factual presentation of progress updates on research or numerical prototypes.
   c. I have never represented GiTi to the USG for current or future contracts, nor do I have a vested interest in GiTi nor influence in the company or its leadership. Furthermore, to my knowledge, the math solutions that I provide GiTi is not for any contract with NSA.
   d. I have discussed this matter with my NSA leadership, and I have their approval to do this consulting outside of work hours.

Important notes:
- Item 1 and item 2.a are important as they ensure that I do not violate the USG financial conflict of interest statute. If my work at NSA ever includes providing mathematics for cyber-physical systems, I am required to disqualify myself from any consulting work whatsoever.
- Item 2.b & 2.c are important as they ensure that I do not violate criminal law (18 U.S.C. § 205). I can only perform "behind-the-scenes" tasks, and any interaction with the USG must be a factual exchange of information

- regarding the tasks assigned to me from GiTi (not the USG). I am not allowed to represent GiTi or influence a USG official.
- Item 2.c is also important as it ensures that I do not violate criminal law (18 U.S.C. § 203). I cannot, and do not participate in any GiTi profit sharing program. I can only accept a pre-set salary or pre-established contractual fee for tasks performed. Furthermore I have not, and will not, assist GiTi in preparing a response to a Federal RFP.

Very Respectfully,
Dr. ███

**From:** R███ Amy ███ NSA-D23 USA CIV ███
**Sent:** Monday, May 13, 2019 7:19 AM
**To:** ███ NSA-FTX1 USA CIV ███
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Good morning, ███ Apologies for my delayed response. Unfortunately, there is no way to sign an agreement that takes away your responsibility under federal law, particularly 18 U.S.C. § 205. While it is helpful that the Air Force wants to help you avoid potential problems, the law would still prohibit you from having substantive interactions with Air Force representatives while you are working for NSA, even if the Air Force signs an MOU.

(U//FOUO)
Amy ███ R███
Attorney
Office of the General Counsel
Administrative Law & Ethics

ATTORNEY CONFIDENTIALITY NOTICE:
*The information contained in this email and any accompanying attachments constitute attorney work product and/or client advice, which are legally privileged.*
*NOT TO BE RELEASED WITHOUT OGC APPROVAL.*

**From:** ███ F NSA-FTX1 USA CIV ███
**Sent:** Monday, May 6, 2019 12:59 PM
**To:** R███ Amy ███ NSA-D23 USA CIV ███
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

3

Hello,

Thank you for the response. I will adhere to the guidelines below.

I have another question: The Air Force representative has offered to write and sign a Memorandum of Understanding (MOU) that any interaction (between them and I) would not be interpreted as official from the government, but rather as a consultant and a subject matter expert in mathematics. Would this be useful or appropriate to avoid misunderstandings, and help me to remain compliant with the guidelines below?

Very Respectfully,
Dr. ▮

**From:** R▮ Amy▮ NSA-D23 USA CIV ▮
**Sent:** Monday, April 15, 2019 10:45 AM
**To:** ▮ NSA-FTX1 USA CIV ▮
**Subject:** RE: (U) Consulting Question

## Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

▮

I am following up our emails and telephone conversation last week regarding your offer of employment outside your position with the NSA. As you indicated last week, you are the Chief/Lead Data Scientist for NSA-Texas in FTX1. In that capacity, you are tasked with building a data science team, training and equipping them with the tools they need to solve mission problems in Enterprise Discovery Operations. You further indicated that you have recently received an opportunity from Air Force CyberCom ("CyberCom") to assist with mathematical calculations in furtherance of its cyber-related mission. In this capacity, you would serve as a sub-contractor to the prime CyberCom contractor. You have indicated that your official responsibilities with the NSA are not related to the work that you would be doing for CyberCom. Further, the prime CyberCom contractor is not a business whose interests you could affect in the performance of your official duties with the NSA.

With respect to your outside employment, there are a few areas of concern you should be aware of. Conflict of interest statutes, as well as other criminal statutes, affect your outside employment while you are an Agency employee (and even after you leave the Agency). Below, I have provided much of the pertinent information from our website; however, you should read over all of the information before pursuing any outside employment.

The first statute is the financial conflict of interest statute, which would prohibit you from personally and substantially participating in your official Government duties on any particular matter that may affect an entity with which you have an outside business relationship, such as the CyberCom prime contractor. You have indicated that you do not have current responsibilities with the Agency that would affect the CyberCom prime contractor, but if you did, either now or in the future, you would be required to disqualify yourself in writing from taking any official actions affecting that company. The disqualification requirement would continue as long as you remain in a business relationship with that outside company or seeking employment with that company. You can find the Disqualification Template here: https://siteworks.web.nsa.ic.gov/files/736/pdf/Disqualification.pdf.

A second criminal law (18 U.S.C. § 205) prohibits you from personally representing any other person (including companies) -- with or without compensation -- before a Federal department, agency or employee. You may not make representations to any federal officials (not just NSA personnel) on behalf of outside entities. Representation includes any oral or written communications that are intended to influence the official on a specific matter. Working "behind-the-scenes" on matters or strictly task-oriented activities do not violate this rule. Applying this rule to your circumstances, you may not be the individual responsible for communications with Air Force representatives (or any other federal employees) on the contract for which you are providing services. This includes oral or written

4

communications. It does not include ministerial communications, such as requests for factual information. However, if a communication transitions from a factual exchange to a conversation in which differences of opinion may occur, this can create problems under the representation rule. Additionally, if the CyberCom prime contractor submits a product to CyberCom under your name, this would be considered a communication by you to CyberCom. Note that this rule does not prohibit you from identifying yourself as being associated with the CyberCom prime contractor for such things as being able to gain admittance to the facility where the work is to be performed.

In addition to the representation rule discussed immediately above, you are also prohibited by another rule (18 U.S.C. § 203) from receiving compensation that comes from the representation by others before a government department or agency on any matter in which the United States is a party or has a substantial interest. For example, you may not accept part of the profits in a profit-sharing arrangement if those profits come from representations to the Federal Government. Also, you may not work on a contingency fee basis for a private employer on a government contract (i.e., assist in preparing a response to a Federal RFP and receive a fee or payment only if the contractor is the successful bidder). You may accept a pre-set salary or a pre-established contractual fee (such as payment at an hourly rate) in connection with this outside engagement as long as there are no other benefits such as stock options, contingency fees, or profit sharing.

### If this outside arrangement requires you to work in a government facility, please review the below guidance.

The DoD Standards of Conduct Office (SOCO) provided guidance in 2015 that indicates it is quite difficult, but not necessarily impossible, for a Federal employee to work for a contractor in the federal workplace. The relevant DoD SOCO guidance states:

Few federal personnel are aware that a criminal statute, 18 U.S.C. § 203, prohibits them from:

- -receiving compensation for acting as an agent or attorney (e.g. "representing");
- -for anyone;
- -before any part of the Executive or Judicial branches of the Federal Government;
- -in connection with a particular matter;
- -in which the United States is a party or has a direct and substantial interest.

While the statute applies to personnel throughout their federal careers, it has particular relevance in two situations: (1) military officers who desire to work in the Federal workplace for a contractor while on terminal leave and (2) personnel who desire to work in the Federal workplace for a contractor during their off-duty time ("moonlighting"). This statute will, in most cases, make such employment impossible. However, because the statute does not bar "communications that are merely ministerial in nature," such as seeking information that is routinely made available to the public or providing purely factual information, some such employment may be possible.

"Section 203 has historically been interpreted by the Department of Justice as prohibiting compensation only for representational services. Such representation must involve communications made with the intent to influence and must concern an issue or controversy. The provision of purely factual information or the submission of documents not intended to influence are not representational acts." Consequently, where communications do not involve a potential for divergent views, or where the employee's actions do not constitute communication, the prohibition does not apply. [See OGE Informal Advisory Memorandum 99 x 25 (http://www.oge.gov/OGE-Advisories/Legal-Advisories/Assets-non-searchable/99x25--Clarification-of-Interpretation-of-18-U-S-C--§-203-(PDF)/).]

While this opens the door for some employment of federal personnel as contractors in the federal workplace, it also places these personnel in positions to inadvertently violate the prohibition. The examples below illustrate application of the statute.

--A federal employee who moonlights as a custodian working for a contractor in a federal agency, may, in theory, perform his or her contractor duties without violating the statute since the employee's contractor duties do not

PLAINTIFF_00000020

primarily involve communications and most communications by the employee will be ministerial. However, if the employee was accused of not cleaning satisfactorily, the employee is prohibited by the statute from defending the contractor's performance in a discussion with a federal official. Contractor employees who are not government personnel must handle the complaint.

--A federal employee could moonlight as a security guard at a federal facility but would not be able to engage in a discussion with federal employees about the guard's decision to deny admission to a visitor whose identity was in question.

--A military officer on terminal leave, who is employed by a contractor as a consultant for a Federal agency, could not provide advice or consultant services to the federal agency concerning a particular matter if the matter has potential for divergent views.

18 U.S.C. § 205 parallels §203 except that even uncompensated representation is prohibited. Neither § 203 nor § 205 applies to enlisted personnel.

Bottom line: As stated earlier, it is almost impossible for federal personnel to work for a contractor in the federal workplace. In theory, they could perform roles that do not involve communications or that involve only ministerial communications. However, if the quality, quantity, or timeliness of their work is challenged, they may not participate in such discussions. As the Office of Government Ethics warned, "As a general matter, [the employee] should take great care in avoiding any situation in which he may argue a position on behalf of [the organization] in a covered matter before any Federal employee in which there are potentially differing views of conflicting interest." [See OGE Advisory Opinion 96 x 6 (http//www.oge.gov/OGE-Advisories/Legal-Advisories/Assets-non-searchable/96x6—Position-with-Private-Partisan-Organization-(PDF)/).]

As you can see from the DoD SOCO guidance, even in situations for which it may be possible to avoid violating the representational restrictions, there always remains the possibility that an employee moonlighting for a contractor in federal spaces could inadvertently violate this criminal prohibition.

In addition to the above considerations, please note that the federal law generally prohibits a contracting officer from awarding a contract to a government employee or to a business concern or other organization owned or controlled by a federal employee. This rule would not affect you if you would be joining, as a sub-contractor, an existing contract between CyberCom and the prime contractor. However, if the plan is for the prime contractor to submit a proposal for a new contract with you as a team member, this may create concerns. If that is the case, please follow up with my office for additional guidance.

Once again, please remember that, if you do accept this outside engagement, you must avoid taking any action that creates the appearance that you have lost impartiality in the performance of your official duties, or that even creates the appearance that you are using your public office for the private gain of yourself or others.

Finally, you asked in your original email whether CyberCom would have to sponsor your clearance for any classified work in connection with that engagement. If the level of clearance that you currently have with NSA is a high enough clearance for your work with CyberCom, it would be CyberCOm's responsibility to confirm your active clearance. If the work requires something further, such as a higher level of clearance, it would be CyberCom's responsibility to address.

I hope the above guidance helps you in navigating this offer, but please do not hesitate to contact me anytime with questions.

(U//FOUO)
Amy█ R█
Attorney

PLAINTIFF_00000019

Office of the General Counsel
Administrative Law & Ethics



ATTORNEY CONFIDENTIALITY NOTICE:
The information contained in this email and any accompanying attachments constitute
attorney work product and/or client advice, which are legally privileged.
NOT TO BE RELEASED WITHOUT OGC APPROVAL.

**From:** F NSA-FTX1 USA CIV
**Sent:** Wednesday, April 10, 2019 8:17 AM
**To:** R Amy NSA-D23 USA CIV
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Amy,

Thank you for the response. Neither of the two conditions apply.

Very Respectfully,
Dr.

**From:** R Amy NSA-D23 USA CIV
**Sent:** Tuesday, April 9, 2019 2:18 PM
**To:** NSA-FTX1 USA CIV
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Thank you again for the clarification. I will follow up as soon as I can with written guidance.

Also, please note that, if the following 2 conditions are met, you are required to complete this form, obtain your supervisor's signature, and send it to me:

1. You are a financial disclosure filer (either the OGE Form 278e or the OGE Form 450); and
2. The contractor that you will be working with as a sub-contractor either does business with NSA or seeks to do business with NSA (In other words, is the Air Force contractor also an NSA contractor?)

If you have any questions about whether this applies to you or any other questions, feel free to contact me.

7

PLAINTIFF_00000021

(U//FOUO)
Amy R
Attorney
Office of the General Counsel
Administrative Law & Ethics

**ATTORNEY CONFIDENTIALITY NOTICE:**
*The information contained in this email and any accompanying attachments constitute attorney work product and/or client advice, which are legally privileged.*
*NOT TO BE RELEASED WITHOUT OGC APPROVAL.*

**From:** NSA-FTX1 USA CIV
**Sent:** Tuesday, April 9, 2019 2:51 PM
**To:** R Amy NSA-D23 USA CIV
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Amy,

I think I need to further clarify. You asked if I would be "required" to have direct contact with anyone at the Air Force. No I will not be required. In fact, all of my work can be provided "behind-the-scenes". Personally, I am not comfortable blurring the line between my appointment to the Agency, and any potential outside work. Personal integrity and professional ethics are very important to me and my continued work in applied maths research.

Very Respectfully,
Dr.

**From:** Amy NSA-D23 USA CIV
April 9, 2019 9:45 AM
**To:** F NSA-FTX1 USA CIV
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Thanks so much for this clarification; this is very helpful. In connection with this outside work, would you be required to have direct contact and communications with anyone at the Air Force? Or would your work be considered "behind-the-scenes" without requiring any direct involvement with Air Force representatives?

(U//FOUO)
Amy R

PLAINTIFF_00000022

Attorney
Office of the General Counsel
Administrative Law & Ethics



ATTORNEY CONFIDENTIALITY NOTICE:
The information contained in this email and any accompanying attachments constitute
attorney work product and/or client advice, which are legally privileged.
NOT TO BE RELEASED WITHOUT OGC APPROVAL.

**From:** ▮▮▮ F NSA-FTX1 USA CIV ▮▮▮
**Sent:** Tuesday, April 9, 2019 10:41 AM
**To:** R▮▮ Amy ▮ NSA-D23 USA CIV ▮▮▮
**Subject:** RE: (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Good morning,

Thank you for the follow-up. Yesterday I sent the following email to clarify my misunderstanding of the organization that I would be consulting with. Sorry for any confusion.

---

I misunderstood the consultant work, and I received clarification last week. I have provided clarification below:
- I have been asked to consult for a private sector company.
- This company works on an Air Force contract that has applications to CyberCom.
- I will not be employed by the US Government in this consulting capacity, and I have no influence in the company or its leadership (I have no ownership nor vested interest in this company).
- The mathematics consulting work is different from my current NSA responsibilities.
- I have discussed this matter with my leadership, and I have their approval to do this consulting outside of work hours.

Does OGC see any conflict?

---

Very Respectfully,
Dr. ▮▮▮

**From:** R▮▮ Amy ▮ NSA-D23 USA CIV ▮▮▮
**Sent:** Tuesday, April 9, 2019 8:48 AM
**To:** ▮▮▮ F NSA-FTX1 USA CIV ▮▮▮
**Subject:** RE: (U) Consulting Question

PLAINTIFF_00000023

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Dr. ▇

I apologize for the delay in responding to your below inquiry. I will be working on this matter over the next few days and will follow up if we need additional information. I hope this works with your schedule, but please let me know if there are any immediate concerns.

(U//FOUO)
Amy ▇ R ▇
Attorney
Office of the General Counsel
Administrative Law & Ethics
▇

ATTORNEY CONFIDENTIALITY NOTICE:
The information contained in this email and any accompanying attachments constitute
attorney work product and/or client advice, which are legally privileged.
NOT TO BE RELEASED WITHOUT OGC APPROVAL.

**From:** ▇ F NSA-FTX1 USA CIV ▇
**Sent:** Thursday, March 21, 2019 1:25 PM
**To:** OGC_AdminEthics <OGC_AdminEthics@nsa.ic.gov>
**Subject:** (U) Consulting Question

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Hello,

I am an applied mathematician, and I recently joined the agency (Sept 2017). I came from industry, where I worked for 15 years on projects unrelated to my current mission. Prior to joining the agency I had a consulting company, wherein I provided subject matter expertise on autopilot and sat-nav algorithm design.

During the past year I worked occasionally with folks in Computer Network Operations (CNO), identifying possible mathematical solutions to cyber mission issues. Recently I was asked to present mathematical ideas to some folks in Air Force CyberCom. The math is not unique, and is well documented in outside literature, however the application to cyber is unique. At the time I was not aware that they would want me to work on those ideas. From my perspective, I was simply in a position where I saw a security gap that could be solved by a very advanced algorithm. Furthermore, we are seeing examples in literature that indicate our adversaries will employ them in the next 3-5 years, and I want our country to be ready to combat that threat.

I am currently the Chief/Lead Data Scientist for NSA-Texas in FTX1, where I am tasked with building a data science team; training and equipping them with the tools they need to solve mission problems in Enterprise Discovery Operations

PLAINTIFF_00000024

(EDO). My NSA mission requirements are not aligned with the ideas that I proposed for CyberCom to pursue, nor do I have extra time in my work week to pursue these projects.

I have the following concerns:
1. I was asked if I would consider working the math problems as a part-time (evenings and weekends) consultant to CyberCom. I want to be sure that there is no conflict of interest. From my perspective, my NSA mission-set is a different problem, so there is no obvious conflict. Fortunately (or unfortunately) I am one of only a handful of people with the right skillset to work on this problem, and I would like help, but only if there isn't something that prohibits me to do so.
2. This will be cleared work, due to the sensitivity of the application. While algorithm development will be (U), the application will be (S//NF) or above. Would CyberCom have to sponsor my clearance for that work?

I want to do what is right in service of our national security mission. Please advise.

Very Respectfully,
Dr. █████

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

PLAINTIFF_00000025

Classification: UNCLASSIFIED//FOR OFFICIAL USE ONLY

PLAINTIFF_00000026