**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| DR. PAUL ROYSDON,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Civil Action No. 5:22-CV-00869-JKP-HJB |

## JOINT PRETRIAL ORDER

Under the Court's Amended Bench Trial Scheduling Order (ECF No. 99), Local Rule

CV-16(f), and the Federal Rules of Civil Procedure, the parties have conferred and submit this

Joint Pretrial Order.

**I.**    **Parties and Counsel**

Plaintiff:
Dr. Paul Roysdon, PhD

Plaintiff's Counsel:
Jason Wareham
Lance Henry
Allen Vellone, Wolf, Helfrich & Factor, P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202

JWareham@allen-vellone.com
LHenry@allen-vellone.com

John Hodges
Hendley & Hodges Law PLLC
4594 US Hwy 281 North
Spring Branch, Texas 78070
john@hhtx.law

Defendants:
United States of America
Department of the Air Force

Defendants' Counsel:
Joseph Gonzalez
Katrina Seeman
United States Department of Justice

1

*Official Capacity Defendants*
Joseph Daniel Burghard
Colonel Jared Ekholm
Major William McVeigh
Secretary Troy E. Meink
Lt. Gen. Thomas K. Hensley,
    Commander, Sixteenth Air Force
Lt. Gen. Donna D. Shipton,
    Commander, Air Force Life Cycle
    Management Center

Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 598-3888; (202) 598-5655
joseph.a.gonzalez@usdoj.gov;
katrina.m.seeman@usdoj.gov

Robert D. Green
Assistant United States Attorney
U.S. Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7362
robert.green3@usdoj.gov

## II.    <u>Jurisdiction of the Court</u>

Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 (Federal question) and

1346(b)(1) (United States as defendant).

Defendants contend Plaintiff's Claims in Count I and IV are moot.

## III.    <u>Statement of the Case</u>

<u>Plaintiff:</u>

Plaintiff is a mathematician that develops advanced Artificial Intelligence (AI) and

Machine Learning (ML) cyber tools, and in 2019, he was employed as a data scientist with the

National Security Agency (NSA).  A small Air Force division known as HNCO recruited

Plaintiff to consult on a part-time basis on a classified offensive cyberwarfare project.  Plaintiff

held a security clearance in his capacity as an NSA employee but was "read on" to the HNCO

classified programs by HNCO as a subcontractor.

Some personnel at HNCO were unaware initially that Plaintiff was working there in a

subcontractor position and assumed he was there on behalf of his NSA role. His contracting

posture later became a focus of inquiry and HNCO initiated a security inquiry that later

concluded that no compromise of classified material had occurred.  Additionally, some Air Force

officials also became concerned that Plaintiff may have violated conflict of interest rules by possibly holding a financial interest (as a subcontractor) in the program on which he was advising HNCO.  HNCO's contracting chain was consulted on this issue and determined that no violations had occurred.  The Air Force did not do any other formal inquiry into any potential conflict of interest.  Plaintiff alleges that the security inquiry stop work order on his contract, and his read out from the programs was pretextual and retaliatory for his criticisms of another Air Force project.

Plaintiff resigned from his NSA employment after he accepted an executive-level position with Leidos. No finding of wrongdoing was ever made against Plaintiff. Yet, Plaintiff further alleges that, beginning August 2020, he was effectively barred from association with HNCO or its programs through statements from government officials stating he could never work at HNCO again, or words to that effect, and other actions including exclusion from meetings and demonstrations and removal of his name from documentation in his Leidos role. Further, Plaintiff alleges for his interference with employment claims that the events at HNCO has attached a growing stigma to how people view him independently as a contractor. Plaintiff also alleges that HNCO officials improperly disclosed personal information about him in violation of the Privacy Act.

<u>Defendants:</u>

Plaintiff is a mathematician that develops advanced Artificial Intelligence (AI) and Machine Learning (ML) cyber tools, and in 2019, he was employed as a data scientist with the National Security Agency (NSA).  A small Air Force division known as HNCO recruited Plaintiff to consult on a part-time basis on a classified cyberwarfare project.  Plaintiff was given access to the classified program and a security clearance strictly in his capacity as an NSA

employee.  It subsequently came to light that Plaintiff had formed a limited liability company and was performing his work on the classified project as a subcontractor to Global Infotek, Inc. (GITI), which held a prime contract with HNCO.  Plaintiff had never been cleared to work on the classified project as a subcontractor, so this gave rise to concerns about the potential disclosure of classified information outside of approved channels. Additionally, some Air Force officials became concerned that Plaintiff may have violated conflict of interest rules by possibly holding a financial interest (as a subcontractor) in the program on which he was advising HNCO.  HNCO initiated a security inquiry into the concern about possible improper access to classified information, which ultimately resulted in a finding that there was no violation.  Because Plaintiff had informed HNCO that he was planning to resign from his NSA position, the Air Force did not do any formal inquiry into any potential conflict of interest.  Plaintiff alleges that the security inquiry was pretextual and retaliatory for his criticisms of another Air Force project.  Plaintiff resigned from his NSA employment after he accepted an executive-level position with Leidos. No finding of wrongdoing was ever made against Plaintiff.  However, Plaintiff alleges that the security inquiry created a stigma that prevents him from bidding on contracts with HNCO. Plaintiff also alleges that HNCO officials improperly disclosed personal information about him in violation of the Privacy Act.

**IV.**     **Claims and Defenses**

Count I: De facto debarment in violation of the Fifth Amendment's Due Process Clause. Plaintiff alleges that HNCO unofficially barred him from all HNCO contracts.

Plaintiff alleges the Air Force effectuated a constructive (de facto) debarment: either by explicit statements or by agency conduct demonstrating he would not receive future HNCO/Air Force work.  Plaintiff will prove that HNCO officials stated he could "never work in HNCO

4

again," and repeatedly directed that his name could not appear or be associated with work presented to the agency—conduct that systemically excluded him from the offensive-cyber work for which he was uniquely qualified.

Plaintiff will also show there was no formal suspension/debarment process and no SAM entry—confirming the exclusion was informal and outside the FAR scheme.

Relief sought: a declaration and injunction terminating the de facto debarment (and, if necessary, a name-clearing or debarment-process hearing).

**Defenses**: (1) Plaintiff never bid on or competed for government contracts in his personal capacity; (2) Plaintiff was ineligible to bid on or compete for government contracts due to his employers' restrictions; (3) the claim is speculative; (4) Plaintiff cannot prove broad preclusion from government work; and (5) there is no final agency action to review.

Counts II and III: Violation of the Privacy Act, 5 U.S.C. § 552a(g)(1)(D) and 5 U.S.C.

§ 552a(a)(3), alleging improper disclosure and maintenance of Privacy Act-protected information by the Air Force Office of Special Investigations and the Air Force. Plaintiff alleges that OSI and HNCO improperly disclosed information and records Protected by the Privacy Act about him and that it caused him actual damages. Plaintiff seeks damages and equitable relief.

**Defenses**: (1) the NSA OGC emails are not from a "System of Records"; (2) there was no inter-agency disclosure of Privacy Act Material; (3) Plaintiff was not adversely affected by any disclosure of privacy act material; (4) Plaintiff cannot establish a willful violation of the Privacy Act; (5) Plaintiff cannot show disclosure beyond the "Need to Know" exception of  5 U.S.C. § 552a(b)(1); (6) Plaintiff cannot prove any actual damages; (8) Plaintiff did not bring a claim under 5 U.S.C. § 552a(g)(1)(C) in the Second Amended Complaint against Defendants and has not sought leave for doing so.   *See* SAC ¶¶ 193–246, ECF No. 65 at 34–42.

<u>Count IV</u>: Plaintiff alleges a "stigma-plus" violation: concrete, false assertions by government actors coupled with an alteration of legal status/opportunities, here culminating in de facto debarment and loss of the ability to contract in his field.

At trial, Plaintiff will prove that Defendants accused him of violations related to security clearance and access as well as improper contracting with the Government and shared these accusations and adverse positions regarding Plaintiff within and without HNCO, and read him out without charges or a clearance revocation—followed by continuing directives that he could not appear or be named on work for HNCO—resulting in systemic exclusion without any notice or hearing.

Plaintiff seeks declaratory and injunctive relief restoring his liberty interest to pursue his chosen profession free from unlawful government interference.

***Defenses***: (1) Plaintiff has not experienced preclusion from his chosen field; (2) Plaintiff was never a participant in his characterization of the field for which he claims exclusion; and (3) Plaintiff's routine read-out from the HNCO classified program did not violate due process standards under *Bledsoe v. City of Horn Lake, Mississippi*, 449 F.3d 650 (5th Cir. 2006).

## V.    <u>Stipulated Facts</u>

The facts agreed to by counsel are attached hereto as Exhibit 1.

## VI.    <u>Contested Facts</u>

<u>Plaintiff:</u>

1.    **Who Plaintiff is and how he came to HNCO.**
Plaintiff is a cleared AI/ML scientist who, while employed at NSA, was invited to consult through Global InfoTek, Inc. ("GITI") on an Air Force SAP project (nicknamed "Fibonacci") sponsored through HNCO; he kept his NSA employment separate and contends he followed ethics guidance in doing so.

2.    **Retaliatory motive—McVeigh targeted Plaintiff after technical criticism.**
Plaintiff contends that after he agreed on August 13, 2020 with Dan Brown's critique that Captain McVeigh's "Project B" was technically unsound, McVeigh reacted with anger and the

next business days saw a sudden push to remove Plaintiff from the program. Brown had previously warned Plaintiff that McVeigh retaliated against perceived threats to his programs.

3.      **Abrupt stop-work and removal tied to that criticism—not performance.**
On or about August 18, 2020, HNCO issued an abrupt stop-work/removal for Plaintiff without citing performance issues, which Plaintiff contends was retaliatory and pretextual.

4.      **OSI involvement was irregular and accusatory.**
Within days, OSI SA Allen Beall summoned Plaintiff, treated him as an "insider threat," threatened incarceration, and demanded attorney–client privileged NSA ethics emails—even though Plaintiff had previously sought and followed ethics guidance about after-hours consulting. Plaintiff contends the "PAR justification" Beall confronted him with contained false language implying he acted as an NSA representative on the contract.

5.      **Read-out preceded any resignation; "insider threat" stigma lingered.**
Plaintiff contends he was debriefed/read-out of the SAP by OSI on or about **August 26–27, 2020**, **before** he submitted any formal NSA resignation, and that OSI/HNCO communications treated him as a threat despite the absence of a security violation.

6.      **No compromise finding and administrative closure.**
The Air Force's follow-up Inquiry of Security Incident (Bremer report) closed the matter in September 2020 with a determination that **"no compromise of classified information occurred,"** undermining any suggestion that Plaintiff was removed for an actual security breach.

7.      **McVeigh's supporting "statement" was late and irrelevant to the security inquiry.**
HNCO's Rule 30(b)(6) designee (Bremer) testified that McVeigh's written "statement" (Bates US0000703) was produced only after follow-ups and "was not relevant" to the specific security inquiry Bremer conducted—supporting Plaintiff's position that security justifications were pretextual.

8.      **HNCO officials said Plaintiff would never work there again.**
Plaintiff contends that on September 1, 2020, Dan Brown told him he would "never work in HNCO again," and thereafter HNCO personnel acted consistently with a continuing exclusion/blacklist.

9.      **Contracting fallout and immediate financial loss.**
GITI terminated Plaintiff's subcontract at the Air Force's direction based on assertions he was under investigation and ineligible for future work, costing him at least ~$750,000 in anticipated earnings on the task order.

10.     **Replacement effort underscores that removal was not performance-based.**
HNCO reallocated funding to replace Plaintiff, but his replacement lacked comparable qualifications and performed "busy work"—supporting Plaintiff's contention that removal was not due to performance or need.

11.     **Continuing exclusion through 2023—"no-go" on Plaintiff's name.**
In 2023, Brown told Leidos's Todd Jaspers that listing Plaintiff or having him appear in HNCO-facing materials would be an "absolute no-go" and "not good optically," requiring Leidos to remove Plaintiff's name from slide decks and have others present Plaintiff's work—consistent with a sustained de facto ban.

12.     **Publication/dissemination of stigmatizing information.**
Plaintiff contends OSI generated a Privacy-Act-covered ROI and disseminated it via CORE to non-investigative HNCO personnel; HNCO also communicated to GITI and others that Plaintiff

was under investigation/ineligible—facts that Plaintiff contends stigmatized him and were false or misleading in light of the "no compromise" result.

    13.    **Denied process—no name-clearing or correction despite closure.**
Despite the favorable closure of the security inquiry, Plaintiff was never afforded a name-clearing hearing, formal correction, or notice that would allow him to rebut and remove the stigma and contracting exclusion.

    14.    **De facto debarment is unauthorized and unethical under Air Force practice; yet it occurred here.**
HNCO's 30(b)(6) designee admitted that only the Air Force Debarring Official (General Counsel) can debar; "de facto debarment" (blackballing from contracts) has no process and is "unethical." He identified no formal debarment/suspension process ever initiated against Plaintiff and confirmed there is no SAM.gov entry for him—supporting Plaintiff's contention that HNCO officials nonetheless effectuated a de facto, extra-procedural ban.

    15.    **Misuse of the "PAR justification" and pretextual conflict narrative.**
Plaintiff contends HNCO/OSI misused a Program Access Request (PAR) "justification" he never saw or approved—language that falsely tied his SAP access to an official NSA role—then leaned on that document to justify removal, even though the later inquiry found no compromise and Plaintiff had sought and followed NSA ethics guidance on after-hours consulting.

    16.    **Government continued to promote a misconduct narrative after the inquiry closed.**
Plaintiff contends HNCO personnel revived the same accusations in 2022 without new facts (e.g., referral talk for "procurement fraud"), and that this sustained narrative contributed to his continued exclusion from Air-Force-sponsored offensive cyber-AI work.

    17.    **Scope of the exclusion—the highly specialized sector at issue.**
Plaintiff will prove he was excluded from a narrow, specialized sector—Air-Force/HNCO offensive cyber-AI SAP work—for which HNCO personnel and contractors recognized only a couple of individuals (including Plaintiff) had the unique expertise, and that this exclusion persisted even while Plaintiff was compelled to contribute "behind the scenes."

    18.    **Bottom-line factual theory.**
Plaintiff will prove that: (a) HNCO officials—spurred by McVeigh's retaliatory motive—precipitated an irregular OSI intervention; (b) OSI/HNCO removed Plaintiff before any resignation and branded him a risk; (c) the Air Force then **found no security compromise**, yet HNCO personnel **continued** to treat Plaintiff as persona non grata, communicating and enforcing a **de facto**, extra-procedural exclusion that denied Plaintiff work, reputation, and process.

    <u>Defendants:</u>

    Defendants' pending Motion for Summary Judgment (ECF No. 113) demonstrates that

there are no genuine disputes of material fact as to Plaintiff's Privacy Act, due process, and de

facto debarment claims, such that Defendants are entitled to judgment as a matter of law.

## VII.    Uncontested Legal Issues

1.    <u>Damages – Counts I (Debarment) and Count IV (Stigma).</u>  The parties agree that the remedy for these claims is non-monetary. The remedy includes injunctive relief, a name-clearing hearing or similar procedural remedy.

2.    <u>Damages – Counts II and III.</u> The parties agree that the Privacy Act claim is limited to "actual damages," which Plaintiff must prove. 5 U.S.C. § 552a(g)(4).

## VIII.    Contested Legal Issues

The primary contested legal issues are set forth under the Claims and Defenses section and the briefing for Defendants' Motion for Summary Judgment (ECF No. 113), Plaintiff's Opposition (ECF No. 126), and Defendants' Reply (ECF No. 130).

The parties also contest damages including whether Plaintiff can prove or recover any actual monetary damages under the Privacy Act and whether contract damages are recoverable at all.

## X.    Exhibit Lists

Defendants' Exhibit List is attached as Exhibit 2.

## XI.    Witnesses with Summary of Anticipated Testimony

| Plaintiff Witnesses Expected to Testify[1] | | |
|---|---|---|
| **Witness Name/ Contact Info** | **Estimated Time of Examination** | **Summary of Testimony** |
| Dr. Paul Roysdon, Ph.D. | 3 hours Will call this witness. | Plaintiff , Dr. Roysdon will testify regarding all material allegations contained in the Complaint as well as the contractor market and values relevant to damages consistent with Judge Bemporad's order. |

---

[1] Including any Defendants list that Plaintiff may also call in their Case in Chief.

| | | |
|---|---|---|
| Dan Brown<br><br>San Antonio, TX<br><br>210-884-0106 | 2 hours<br>**Will call this witness. | Mr. Brown will testify to statements he and others made as well as actions taken that demonstrate the de facto debarment, interference with employment, and the Privacy Act violations alleged. |
| Todd Jaspers<br><br>Lithia, FL<br><br>954-895-5162 | 1 hour<br>**Will call this witness. | Mr. Jaspers will testify to statements and observations relevant to Plaintiff's allegations of de facto debarment, interference with employment, and Privacy Act claims. Additionally, he will testify to his opinion for character and reputation of Mr. Brown and individual defendants. |
| Alexandria McDonald<br><br>Quantico, VA<br><br>(Phone info is in Defendant's Possession) | 1 hour<br>**May call this witness. | Ms. McDonald will testify as a 30b6 witness to the systems of record relevant to the Privacy Act claims. |
| **Plaintiff will call each of the Defendants' witnesses listed below. | | |

| Defense Witnesses Expected to Testify | | |
|---|---|---|
| **Witness Name/ Contact Info** | **Estimated Time of Examination** | **Summary of Testimony** |
| Major William McVeigh<br>U.S. Air Force<br><br>Pentagon, Washington D.C.<br>202-616-0674 | 2.0 hours | Major McVeigh will testify regarding his job responsibilities, his interactions and observations of Plaintiff, Plaintiff's role at HNCO, HNCO's operations overall, Cyber AI customers, the inquiry into Plaintiff and associated concerns, and the absence of any debarment or negative consequence with respect to Plaintiff. |

| | | |
|---|---|---|
| J. Daniel Burghard<br>U.S. Air Force<br><br>Pentagon, Washington D.C.<br>202-616-0674 | 2.0 hours | Mr. Burghard will testify regarding his job responsibilities, his interactions and observations of Plaintiff, Plaintiff's role at HNCO, the inquiry into Plaintiff and associated concerns, Cyber AI customers and the market, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| Colonel Jared Ekholm<br>U.S. Air Force<br><br>CYBERCOM ICC<br>9230 Cyber Rd<br>Fort Meade, MD 20755<br>202-616-0674 | 1.0 hour | Colonel Ekholm will testify regarding his job responsibilities, HNCO's operations overall, the inquiry into Plaintiff and associated concerns, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| Richard Bremer, Chief of the Cyber Contracting Branch<br><br>San Antonio, TX<br>202-616-0674 | 1.0 hour | Mr. Bremer will testify regarding the inquiry into Plaintiff and associated concerns, contracting rules and processes, contracting authority and solicitations, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| Special Agent Michael Crunk<br>Air Force OSI<br><br>Palmdale, CA<br>202-616-0674 | 1.0 hour | Special Agent Crunk will testify regarding OSI's role with respect to the inquiry into Plaintiff, security practices and associated clearance issues, security officer role, Plaintiff's read-out from HNCO programs, and the absence of any debarment or negative consequence with respect to Plaintiff.<br><br>Special Agent Crunk will need to testify out of order on September 8, 2025. |
| William Rowe, HNCO Security Officer<br><br>San Antonio, TX<br>202-616-0674 | 1.0 hour | Mr. Rowe will testify regarding the security inquiry into Plaintiff and associated concerns, and the absence of any debarment or negative consequence with respect to Plaintiff. |

| Allen Rabayda, Contractor U.S. Air Force  *Counsel of Record* Andy Liu 202-846-9802 | 1.0 hour | Mr. Rabayda will testify regarding his job responsibilities, his interactions and observations of Plaintiff, Plaintiff's role at HNCO, and the associated concerns. |
|---|---|---|

Defendants reserve the right to call any witness for impeachment purposes. Defendants also object to Plaintiff's footnote reserving calling all Defense Witnesses in their case in chief without the appropriate notification and information as required under Local Rule CV-16(f)(4).

**XII.    Witnesses Expected to be Presented by Deposition**

Plaintiff: Todd Jaspers will be presented by video de bene esse deposition.

Plaintiff does not object to

- Parisi

- Bremer

- Rowe

- McDonald

- Crunk

Defendants' Objection: Defendants object to the de bene esse deposition of Todd Jaspers.  He is Plaintiff's sole corroborating witness and, as made clear in the summary judgment briefing, Plaintiff seeks to elevate his importance. However, much of Mr. Jasper's proposed testimony rests on admissible hearsay, lacks foundation, is speculative, and otherwise inadmissible.  His deposition demonstrated as much.  Defendants will need the Court to make rulings on their anticipated objections at trial and believe they have a right to insist on his appearance given his purported relevance to the claims.

Defendants:

J. Daniel Burghard will be presented by video de bene esse deposition because he is unavailable during the week of trial.

Plaintiff's Objection:  [not available at the time of filing]

**XIV.**   **Proposed Findings of Fact and Conclusions of Law.**

Defendants' Proposed Findings of Fact and Conclusions of Law are attached as Exhibit 3.

**XV.**   **Motions in Limine.**

None.

Magistrate Judge Bemporad issued an order on Defendants' Opposed Motion to Exclude Plaintiff's Expert Testimony, that precludes Plaintiff from testifying on his proposed expert damages calculation.  Order, ECF No. 125.

**IX.**   **Estimated Length of Trial**

The parties estimate that the trial will last three to four days.


Dated: August 25, 2025                    Respectfully Submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General
                                          Civil Division

                                          C. SALVATORE D'ALESSIO, JR.
                                          Director, Torts Branch


                                          REGINALD M. SKINNER
                                          Senior Trial Attorney

                                          */s/ Joseph A. Gonzalez*
                                          Joseph A. Gonzalez
                                          D.C. Bar No. 995057
                                          Trial Attorney
                                          Torts Branch, Civil Division

United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 598-3888
joseph.a.gonzalez@usdoj.gov

*/s/ Katrina M. Seeman*
KATRINA M. SEEMAN
D.C. Bar No. 1671729
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-0674
katrina.m.seeman@usdoj.gov

-and-

JUSTIN R. SIMMONS
United States Attorney

*/s/ Robert D. Green*
ROBERT D. GREEN
Texas Bar No. 24087626
Assistant United States Attorney
U.S. Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7362 (phone)
(210) 384-7312 (fax)
robert.green3@usdoj.gov

*Counsel for Defendants*