UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. PAUL ROYSDON,

    *Plaintiff*,

v.

UNITED STATES, *et al.*,

    *Defendants*.

No. 5:22-cv-00869-JKP-HJB

## **JOINT PRETRIAL ORDER**

Under the Court's Amended Bench Trial Scheduling Order (ECF No. 99), Local Rule CV-16(f), and the Federal Rules of Civil Procedure, the parties have conferred and submit this Joint Pretrial Order.

**I.    Parties and Counsel**

| Plaintiff: | Plaintiff's Counsel: |
|---|---|
| Dr. Paul Roysdon, PhD | Jason Wareham |
| | Lance Henry |
| | Allen Vellone, Wolf, Helfrich & Factor, P.C. |
| | 1600 Stout Street, Suite 1900 |
| | Denver, CO 80202 |
| | |
| | JWareham@allen-vellone.com |
| | LHenry@allen-vellone.com |
| | |
| | John Hodges |
| | Hendley & Hodges Law PLLC |
| | 4594 US Hwy 281 North |
| | Spring Branch, Texas 78070 |
| | john@hhtx.law |
| | |
| Defendants: | Defendants' Counsel: |
| United States of America | Joseph Gonzalez |
| Department of the Air Force | Katrina Seeman |
| | United States Department of Justice |

| | |
|---|---|
| *Official Capacity Defendants* | Torts Branch, Civil Division |
| Joseph Daniel Burghard | P.O. Box 7146, Ben Franklin Station |
| Colonel Jared Ekholm | Washington, D.C. 20044 |
| Major William McVeigh | (202) 598-3888; (202) 598-5655 |
| Secretary Troy E. Meink | joseph.a.gonzalez@usdoj.gov; |
| Lt. Gen. Thomas K. Hensley, | katrina.m.seeman@usdoj.gov |
|    Commander, Sixteenth Air Force | |
| Lt. Gen. Donna D. Shipton, | Robert D. Green |
|    Commander, Air Force Life Cycle | Assistant United States Attorney |
|    Management Center | U.S. Attorney's Office |
| | 601 NW Loop 410, Suite 600 |
| | San Antonio, Texas 78216 |
| | (210) 384-7362 |
| | robert.green3@usdoj.gov |

## II.   Jurisdiction of the Court

Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 (Federal question) and 1346(b)(1) (United States as defendant).

Defendants contend Plaintiff's Claims in Count I and IV are moot.

## III.   Statement of the Case

Plaintiff is a mathematician that develops advanced Artificial Intelligence (AI) and Machine Learning (ML) cyber tools, and in 2019, he was employed as a data scientist with the National Security Agency (NSA). A small Air Force division known as HNCO recruited Plaintiff to consult on a part-time basis on a classified offensive cyberwarfare project. Plaintiff performed this work in his capacity as a consultant for a contractor that held a contract with the Air Force. In August 2020, HNCO officials became concerned that Plaintiff did not have appropriate clearance on the classified project and had misled them about his subcontractor status. Plaintiff disputes both concerns as pretext. Plaintiff alleges that HNCO's subsequent inquiry and related communications give rise to Due Process violations that have stigmatized Plaintiff and damaged his career. Additionally, Plaintiff alleges that Air Force employees violated the Privacy Act in the course of their internal discussions by improperly sharing

2

information. Defendants dispute the claims and aver that the Air Force acted lawfully at all times.

IV. **Claims and Defenses**

Count I: De facto debarment in violation of the Fifth Amendment's Due Process Clause. Plaintiff alleges that HNCO unofficially barred him from all HNCO contracts.

Plaintiff alleges the Air Force effectuated a constructive (de facto) debarment: either by explicit statements or by agency conduct demonstrating he would not receive future HNCO/Air Force work. Plaintiff will prove that HNCO officials stated he could "never work in HNCO again," and repeatedly directed that his name could not appear or be associated with work presented to the agency—conduct that systemically excluded him from the offensive-cyber work for which he was uniquely qualified.

Plaintiff will also show there was no formal suspension/debarment process and no SAM entry—confirming the exclusion was informal and outside the FAR scheme.

Relief sought: a declaration and injunction terminating the de facto debarment (and, if necessary, a name-clearing or debarment-process hearing).

*Defenses*: (1) Plaintiff never bid on or competed for government contracts in his personal capacity; (2) Plaintiff was ineligible to bid on or compete for government contracts due to his employers' restrictions; (3) the claim is speculative; (4) Plaintiff cannot prove broad preclusion from government work; and (5) there is no final agency action to review.

Counts II and III: Violation of the Privacy Act, 5 U.S.C. § 552a(g)(1)(D) and 5 U.S.C. § 552a(a)(3), alleging improper disclosure and maintenance of Privacy Act-protected information by the Air Force Office of Special Investigations and the Air Force. Plaintiff alleges that OSI and

3

HNCO improperly disclosed information and records Protected by the Privacy Act about him and that it caused him actual damages. Plaintiff seeks damages and equitable relief.

***Defenses***: (1) the NSA OGC emails are not from a "System of Records"; (2) there was no inter-agency disclosure of Privacy Act Material; (3) Plaintiff was not adversely affected by any disclosure of privacy act material; (4) Plaintiff cannot establish a willful violation of the Privacy Act; (5) Plaintiff cannot show disclosure beyond the "Need to Know" exception of 5 U.S.C. § 552a(b)(1); (6) Plaintiff cannot prove any actual damages; (8) Plaintiff did not bring a claim under 5 U.S.C. § 552a(g)(1)(C) in the Second Amended Complaint against Defendants and has not sought leave for doing so, *see* SAC ¶¶ 193–246, ECF No. 65 at 34–42; (9) Plaintiff fails to state a claim under 5 U.S.C. § 552a(g)(1)(C); (10) Plaintiff failed to exhaust his administrative remedies.

Count IV: Plaintiff alleges a "stigma-plus" violation: concrete, false assertions by government actors coupled with an alteration of legal status/opportunities, here culminating in de facto debarment and loss of the ability to contract in his field.

At trial, Plaintiff will prove that Defendants accused him of violations related to security clearance and access as well as improper contracting with the Government and shared these accusations and adverse positions regarding Plaintiff within and without HNCO, and read him out without charges or a clearance revocation—followed by continuing directives that he could not appear or be named on work for HNCO—resulting in systemic exclusion without any notice or hearing.

Plaintiff seeks declaratory and injunctive relief restoring his liberty interest to pursue his chosen profession free from unlawful government interference.

*Defenses*: (1) Plaintiff has not experienced preclusion from his chosen field; (2) Plaintiff was never a participant in his characterization of the field for which he claims exclusion; and (3) Plaintiff's routine read-out from the HNCO classified program did not violate due process standards under *Bledsoe v. City of Horn Lake, Mississippi*, 449 F.3d 650 (5th Cir. 2006).

## V. Stipulated Facts

The facts agreed to by counsel are attached as Exhibit 1.

## VI. Contested Facts

Plaintiff:

1. **Who Plaintiff is and how he came to HNCO.**
Plaintiff is a cleared AI/ML scientist who, while employed at NSA, was invited to consult through Global InfoTek, Inc. ("GITI") on an Air Force SAP project (nicknamed "Fibonacci") sponsored through HNCO; he kept his NSA employment separate and contends he followed ethics guidance in doing so.

2. **Retaliatory motive—McVeigh targeted Plaintiff after technical criticism.**
Plaintiff contends that after he agreed on August 13, 2020 with Dan Brown's critique that Captain McVeigh's "Project B" was technically unsound, McVeigh reacted with anger and the next business days saw a sudden push to remove Plaintiff from the program. Brown had previously warned Plaintiff that McVeigh retaliated against perceived threats to his programs.

3. **Abrupt stop-work and removal tied to that criticism—not performance.**
On or about August 18, 2020, HNCO issued an abrupt stop-work/removal for Plaintiff without citing performance issues, which Plaintiff contends was retaliatory and pretextual.

4. **OSI involvement was irregular and accusatory.**
Within days, OSI SA Allen Beall summoned Plaintiff, treated him as an "insider threat," threatened incarceration, and demanded attorney–client privileged NSA ethics emails—even though Plaintiff had previously sought and followed ethics guidance about after-hours consulting. Plaintiff contends the "PAR justification" Beall confronted him with contained false language implying he acted as an NSA representative on the contract.

5. **Read-out preceded any resignation; "insider threat" stigma lingered.**
Plaintiff contends he was debriefed/read-out of the SAP by OSI on or about **August 26–27, 2020**, **before** he submitted any formal NSA resignation, and that OSI/HNCO communications treated him as a threat despite the absence of a security violation.

6. **No compromise finding and administrative closure.**
The Air Force's follow-up Inquiry of Security Incident (Bremer report) closed the matter in September 2020 with a determination that **"no compromise of classified information occurred,"** undermining any suggestion that Plaintiff was removed for an actual security breach.

7. **McVeigh's supporting "statement" was late and irrelevant to the security inquiry.**
HNCO's Rule 30(b)(6) designee (Bremer) testified that McVeigh's written "statement" (Bates

5

US0000703) was produced only after follow-ups and "was not relevant" to the specific security inquiry Bremer conducted—supporting Plaintiff's position that security justifications were pretextual.

8. **HNCO officials said Plaintiff would never work there again.**

Plaintiff contends that on September 1, 2020, Dan Brown told him he would "never work in HNCO again," and thereafter HNCO personnel acted consistently with a continuing exclusion/blacklist.

9. **Contracting fallout and immediate financial loss.**

GITI terminated Plaintiff's subcontract at the Air Force's direction based on assertions he was under investigation and ineligible for future work, costing him at least ~$750,000 in anticipated earnings on the task order.

10. **Replacement effort underscores that removal was not performance-based.**

HNCO reallocated funding to replace Plaintiff, but his replacement lacked comparable qualifications and performed "busy work"—supporting Plaintiff's contention that removal was not due to performance or need.

11. **Continuing exclusion through 2023—"no-go" on Plaintiff's name.**

In 2023, Brown told Leidos's Todd Jaspers that listing Plaintiff or having him appear in HNCO-facing materials would be an "absolute no-go" and "not good optically," requiring Leidos to remove Plaintiff's name from slide decks and have others present Plaintiff's work—consistent with a sustained de facto ban.

12. **Publication/dissemination of stigmatizing information.**

Plaintiff contends OSI generated a Privacy-Act-covered ROI and disseminated it via CORE to non-investigative HNCO personnel; HNCO also communicated to GITI and others that Plaintiff was under investigation/ineligible—facts that Plaintiff contends stigmatized him and were false or misleading in light of the "no compromise" result.

13. **Denied process—no name-clearing or correction despite closure.**

Despite the favorable closure of the security inquiry, Plaintiff was never afforded a name-clearing hearing, formal correction, or notice that would allow him to rebut and remove the stigma and contracting exclusion.

14. **De facto debarment is unauthorized and unethical under Air Force practice; yet it occurred here.**

HNCO's 30(b)(6) designee admitted that only the Air Force Debarring Official (General Counsel) can debar; "de facto debarment" (blackballing from contracts) has no process and is "unethical." He identified no formal debarment/suspension process ever initiated against Plaintiff and confirmed there is no SAM.gov entry for him—supporting Plaintiff's contention that HNCO officials nonetheless effectuated a de facto, extra-procedural ban.

15. **Misuse of the "PAR justification" and pretextual conflict narrative.**

Plaintiff contends HNCO/OSI misused a Program Access Request (PAR) "justification" he never saw or approved—language that falsely tied his SAP access to an official NSA role—then leaned on that document to justify removal, even though the later inquiry found no compromise and Plaintiff had sought and followed NSA ethics guidance on after-hours consulting.

16. **Government continued to promote a misconduct narrative after the inquiry closed.**

Plaintiff contends HNCO personnel revived the same accusations in 2022 without new facts (e.g., referral talk for "procurement fraud"), and that this sustained narrative contributed to his continued exclusion from Air-Force-sponsored offensive cyber-AI work.

17. **Scope of the exclusion—the highly specialized sector at issue.** Plaintiff will prove he was excluded from a narrow, specialized sector—Air-Force/HNCO offensive cyber-AI SAP work—for which HNCO personnel and contractors recognized only a couple of individuals (including Plaintiff) had the unique expertise, and that this exclusion persisted even while Plaintiff was compelled to contribute "behind the scenes."

18. **Bottom-line factual theory.** Plaintiff will prove that: (a) HNCO officials—spurred by McVeigh's retaliatory motive—precipitated an irregular OSI intervention; (b) OSI/HNCO removed Plaintiff before any resignation and branded him a risk; (c) the Air Force then **found no security compromise**, yet HNCO personnel **continued** to treat Plaintiff as persona non grata, communicating and enforcing a **de facto**, extra-procedural exclusion that denied Plaintiff work, reputation, and process.

Defendants:

Defendants' pending Motion for Summary Judgment (ECF No. 113) demonstrates that there are no genuine disputes of material fact as to Plaintiff's Privacy Act, due process, and de facto debarment claims, such that Defendants are entitled to judgment as a matter of law.

## VII. Uncontested Legal Issues

1. Damages – Counts I (Debarment) and Count IV (Stigma). The parties agree that the remedy for these claims is non-monetary. The remedy includes injunctive relief, a name-clearing hearing or similar procedural remedy.

2. Damages – Counts II and III. The parties agree that the Privacy Act claim is limited to "actual damages," which Plaintiff must prove. 5 U.S.C. § 552a(g)(4).

## VIII. Contested Legal Issues

The primary contested legal issues are set forth under the Claims and Defenses section and the briefing for Defendants' Motion for Summary Judgment (ECF No. 113), Plaintiff's Opposition (ECF No. 126), and Defendants' Reply (ECF No. 130).

The parties also contest damages including whether Plaintiff can prove or recover any actual monetary damages under the Privacy Act and whether contract damages are recoverable at all.

7

## X. Exhibit Lists

The exhibit lists are attached as Exhibit 2 (Joint Exhibit List), Exhibit 3 (Plaintiff's Exhibit List), and Exhibit 4 (Defendants' Exhibit List).

## XI. Witnesses with Summary of Anticipated Testimony

| Plaintiff Witnesses Expected to Testify[1] | | |
|---|---|---|
| **Witness Name/ Contact Info** | **Estimated Time of Examination** | **Summary of Testimony** |
| Dr. Paul Roysdon, Ph.D. | 3 hours<br>Will call this witness. | Plaintiff, Dr. Roysdon will testify regarding all material allegations contained in the Complaint as well as the contractor market and values relevant to damages consistent with Judge Bemporad's order. |
| Dan Brown<br><br>San Antonio, TX<br><br>210-884-0106 | 2 hours<br>**Will call this witness. | Mr. Brown will testify to statements he and others made as well as actions taken that demonstrate the de facto debarment, interference with employment, and the Privacy Act violations alleged. |
| Todd Jaspers<br><br>Lithia, FL<br><br>954-895-5162 | 1 hour<br>**Will call this witness.<br><br>This will be presented by designation and submission of his deposition given he is located outside of 100 miles. | Mr. Jaspers will testify to statements and observations relevant to Plaintiff's allegations of de facto debarment, interference with employment, and Privacy Act claims. Additionally, he will testify to his opinion for character and reputation of Mr. Brown and individual defendants. |
| Thomas Parisi<br><br>Clay, NY<br><br>(Phone info is in Defendant's Possession) | 1 hour<br>**Will call this witness.<br><br>This will be presented by designation and | Mr. Parisi will testify to statements and observations relevant to Plaintiff's allegations of de facto debarment and the chain of contract. |

---

[1] Including any Defendants list that Plaintiff may also call in their Case in Chief.

| | | |
|---|---|---|
| | submission of his deposition given he is located outside of 100 miles. | |
| Alexandria McDonald<br><br>Quantico, VA<br><br>(Phone info is in Defendant's Possession) | 1 hour<br>**May call this witness. | Ms. McDonald will testify as a 30b6 witness to the systems of record relevant to the Privacy Act claims. |
| **Plaintiff will call each of the Defendants' witnesses listed below. | | |

| Defense Witnesses Expected to Testify | | |
|---|---|---|
| **Witness Name/ Contact Info** | **Estimated Time of Examination** | **Summary of Testimony** |
| Major William McVeigh<br>U.S. Air Force<br><br>Pentagon, Washington D.C.<br>202-616-0674 | 2.0 hours | Major McVeigh will testify regarding his job responsibilities, his interactions and observations of Plaintiff, Plaintiff's role at HNCO, HNCO's operations overall, Cyber AI customers, the inquiry into Plaintiff and associated concerns, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| J. Daniel Burghard<br>U.S. Air Force<br><br>Pentagon, Washington D.C.<br>202-616-0674 | 2.0 hours | Mr. Burghard will testify regarding his job responsibilities, his interactions and observations of Plaintiff, Plaintiff's role at HNCO, the inquiry into Plaintiff and associated concerns, Cyber AI customers and the market, and the absence of any debarment or negative consequence with respect to Plaintiff. |

| | | |
|---|---|---|
| Colonel Jared Ekholm<br>U.S. Air Force<br><br>CYBERCOM ICC<br>9230 Cyber Rd<br>Fort Meade, MD 20755<br>202-616-0674 | 1.0 hour | Colonel Ekholm will testify regarding his job responsibilities, HNCO's operations overall, the inquiry into Plaintiff and associated concerns, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| Richard Bremer, Chief of the Cyber Contracting Branch<br><br>San Antonio, TX<br>202-616-0674 | 1.0 hour | Mr. Bremer will testify regarding the inquiry into Plaintiff and associated concerns, contracting rules and processes, contracting authority and solicitations, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| Special Agent Michael Crunk<br>Air Force OSI<br><br>Palmdale, CA<br>202-616-0674 | 1.0 hour | Special Agent Crunk will testify regarding OSI's role with respect to the inquiry into Plaintiff, security practices and associated clearance issues, security officer role, Plaintiff's read-out from HNCO programs, and the absence of any debarment or negative consequence with respect to Plaintiff.<br><br>Special Agent Crunk will need to testify out of order on September 8, 2025. |
| William Rowe, HNCO Security Officer<br><br>San Antonio, TX<br>202-616-0674 | 1.0 hour | Mr. Rowe will testify regarding the security inquiry into Plaintiff and associated concerns, and the absence of any debarment or negative consequence with respect to Plaintiff. |
| Allen Rabayda, Contractor<br>U.S. Air Force<br><br>*Counsel of Record*<br>Andy Liu<br>202-846-9802 | 1.0 hour | Mr. Rabayda will testify regarding his job responsibilities, his interactions and observations of Plaintiff, Plaintiff's role at HNCO, and the associated concerns. |

Defendants reserve the right to call any witness for impeachment purposes. Defendants object to Plaintiff's footnote reserving calling all Defense Witnesses in his case in chief without the appropriate notification and information as required under Local Rule CV-16(f)(4).

## XII. Witnesses Expected to be Presented by Deposition

Plaintiff:

Todd Jaspers will be presented by video deposition designation.

Plaintiff's designations of Mr. Jaspers's deposition testimony is attached as Exhibit 5.

Thomas Parisi will be presented by video deposition designation.

Plaintiff's designations of Mr. Parisi's deposition testimony is attached as Exhibit 6.

Defendants' Objection: Defendants have conferred with Plaintiff's counsel regarding Mr. Jaspers's testimony. Plaintiff has explained that that he no longer plans on calling Mr. Jaspers at trial or via de bene esse deposition. Rather, he will be designating testimony from his discovery deposition. Defendants object to this approach for a number of reasons and will provide a fulsome basis for the objection on Thursday (8/28) in accordance with the Court's deadline for designation objections. Defendants will also provide objections to Plaintiff's designations for Mr. Parisi's deposition testimony.

Defendants:

J. Daniel Burghard will be presented by video de bene esse deposition because he is unavailable during the week of trial.

Plaintiff's Objection: Plaintiff does not object.

### XIV. Proposed Findings of Fact and Conclusions of Law.

Plaintiff's Proposed Findings of Fact and Conclusions of Law are attached as Exhibit 7.

Defendants' Proposed Findings of Fact and Conclusions of Law are attached as Exhibit 8.

### XV. Motions in Limine.

None.

Magistrate Judge Bemporad issued an order on Defendants' Opposed Motion to Exclude Plaintiff's Expert Testimony, that precludes Plaintiff from testifying on his proposed expert damages calculation. Order, ECF No. 125.

### IX. Estimated Length of Trial

The parties estimate that the trial will last three to four days.

Dated: August 26, 2025                                Respectfully Submitted,

| | |
|---|---|
| **HENDLEY & HODGES LAW PLLC**<br>4594 US Hwy 281 N<br>Spring Branch, Texas 78070<br>Tel: (210) 714-0924<br>Fax: (210) 640-3398<br><br>John W. Hodges Jr.<br>TX Bar No. 24090167<br>Email: john@hhtx.law<br><br>-AND-<br><br>**ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.**<br>1600 Stout Street, Suite 1900<br>Denver, Colorado 80202<br>Tel:(303) 534-4499<br><br>By: */s/ Jason R. Wareham (with permission)*<br>Jason R. Wareham<br>Colorado Bar No. 56974<br>*Pro Hac Vice*<br>jwareham@allen-vellone.com | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division<br><br>C. SALVATORE D'ALESSIO, JR.<br>Director, Torts Branch<br><br>REGINALD M. SKINNER<br>Senior Trial Attorney<br><br>*/s/ Joseph A. Gonzalez*<br>Joseph A. Gonzalez<br>D.C. Bar No. 995057<br>Trial Attorney<br>Torts Branch, Civil Division<br>United States Department of Justice<br>P.O. Box 7146, Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 598-3888<br>joseph.a.gonzalez@usdoj.gov<br><br>*/s/ Katrina M. Seeman*<br>KATRINA M. SEEMAN<br>D.C. Bar No. 1671729 |

Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
(202) 616-0674
katrina.m.seeman@usdoj.gov

-and-

JUSTIN R. SIMMONS
United States Attorney

*/s/ Robert D. Green*
ROBERT D. GREEN
Texas Bar No. 24087626
Assistant United States Attorney
U.S. Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7362 (phone)
(210) 384-7312 (fax)
robert.green3@usdoj.gov

*Counsel for Defendants*